UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Katie Wood *et al.*,

        *Plaintiffs*,

v.     No. 4:23-cv-00526-MW-MAF

Florida Department of Education *et al.*,

        *Defendants*.

_____/

## PLAINTIFF JANE DOE'S MOTION FOR LEAVE TO PROCEED UNDER PSEUDONYM

Plaintiff Jane Doe respectfully moves for leave to use the pseudonym Jane Doe in public filings and hearings in this case.

Plaintiff is a transgender teacher challenging subsection 3 of § 1000.071, Florida Statutes (2023), which prohibits her from referring to herself in front of students by the titles and pronouns that express her gender identity, namely Ms. and she/her pronouns, at the risk of losing her teaching license and job.

Ms. Doe seeks leave to proceed under a pseudonym to protect her from undue harassment, violence, and retaliation, as well as to protect her privacy interests.[1] Ms. Doe's privacy rights outweigh the presumption of openness in federal courts because

---

[1] Plaintiffs Katie Wood and AV Schwandes are not moving for leave to use a pseudonym; they have chosen to accept the additional risks involved in being publicly associated with this case.

1

of the danger Ms. Doe would face should her name or other personally identifying information be made public. Moreover, Defendants will face no prejudice if Ms. Doe is permitted to use a pseudonym in public filings and hearings.

## MEMORANDUM OF LAW

Federal Rule of Civil Procedure 26(c)(1) permits a court to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense[.]" Parties that establish "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings'" may proceed under pseudonym. *Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981)). This analysis begins with the three *SMU* factors. *See In Re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020) (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe* ("*SMU*"), 599 F.2d 707, 713 (5th Cir. 1979)). Those are whether the party seeking anonymity "(1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of the utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution." *Id.* (citing *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011)).

The Eleventh Circuit has made clear that the *SMU* factors are only the "first step" and that a court "should carefully review all the circumstances of a given case

and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Id.* (quoting *Francis*, 631 F.3d at 1316). Among those, courts should consider whether the party "faces a real threat of physical harm absent anonymity" and whether the party requesting a pseudonym "poses a unique threat of fundamental unfairness" to the adverse party. *Id.* Whether a party's right to privacy outweighs the presumption of openness is a "totality-of-the-circumstances question." *Id.* at 1247 n.5.

## I.    The challenged government activity, enforcement of subsection 3, weighs in favor of granting Ms. Doe pseudonymity.

Only two of the three factors from the *SMU* test are relevant to this proceeding and both weigh in favor of Ms. Doe. First, Ms. Doe is "challenging government activity." *In re Chiquita Brands*, 965 F.3d at 1247. Suits against the government "involve no injury to the Government's 'reputation[.]'" *Frank*, 951 F.3d at 323 (quoting *SMU*, 599 F.2d at 713)). "[W]hether the defendants are governmental entities is significant because a challenge to governmental policy ordinarily implicates a public interest and the government has less of a concern with protecting its reputation than a private individual." *Doe No. 2 v. Kolko*, 242 F.R.D. 193, 195 (E.D.N.Y. 2006); *see also EW v. N.Y. Blood Ctr.*, 213 F.R.D. 108, 111 (E.D.N.Y. 2003) (finding plaintiff's interest in proceeding anonymously "particularly strong" when proceeding against governmental entity because they typically represent "a minority interest (and may be subject to stigmatization)").

3

This factor weighs in Ms. Doe's favor. Ms. Doe is, as a transgender person, a member of a minority group challenging government activity that regulates that minority group. Moreover, Ms. Doe is not challenging the actions of an individual government agent. Rather, she is challenging a state law that, in part, commands her to remain silent or to suppress a core part of her identity.

"The importance of ensuring all citizens have a voice with which to challenge governmental actions, and the reluctance of many to do so for fear of reprisal, warrants liberal permission by the courts to permit plaintiffs to proceed pseudonymously when suing governmental agencies[.]" Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. Kan. L. Rev. 195, 245 (2004). Ms. Doe has avoided speaking out publicly against subsection 3 or Defendants for fear of reprisal. She avoids going to the school district office or speaking out at school board meetings for fear that such actions would put a target on her back and invite reprisal or retaliation. Ex. 1, Declaration of Jane Doe ("Doe Decl."), ¶ 7. Allowing Ms. Doe to proceed pseudonymously protects her interest in challenging the law without concern that doing so will unfairly injure Defendants' reputation. *See, e.g.*, *Eknes-Tucker v. Ivey*, No. 22-cv-0184-LCB-SRW, 2022 WL 19983530 at *2 (M.D. Ala. May 3, 2022) ("This case challenges governmental activity as opposed to alleging wrongdoing by a particular defendant. So, there is no fundamental unfairness in naming Defendants while

4

allowing Dr. Koe to remain anonymous.").

## II. Public disclosure of Ms. Doe's transgender status is information of the utmost intimacy and weighs in favor of granting her pseudonymity.

The second factor, that absent pseudonymity, Ms. Doe would be compelled to "disclose information of the utmost intimacy," namely her transgender status, also weighs in her favor. Courts have long recognized that transgender status is information of the utmost intimacy, *Frank*, 951 F.2d at 324 (citing *Doe v. McConn*, 489 F. Supp. 76 (S.D. Tex. 1980), and allowed transgender parties to use pseudonyms. *See, e.g.*, *Doe v. Ladapo*, No. 23-cv-00114-RH-MAF (N.D. Fla. filed Mar. 23, 2023); *Dekker v. Weida*, No. 22-cv-00325-RH-MAF (N.D. Fla. filed Sep. 7, 2022); *Koe v. Noggle*, No. 23-cv-02904-SEG (N.D. Ga. filed June 29, 2023); *Eknes-Tucker*, 2022 WL 19983530 at *2; *Doe v. Blue Cross & Blue Shield of R.I.*, 794 F. Supp. 72, 75 (D.R.I. 1992); *McConn*, 489 F. Supp. at 77; *see also Powell v. Schriver*, 175 F.3d 107, 111 (2d Cir. 1999) ("The excruciatingly private and intimate nature of [transgenderism], for persons who wish to preserve privacy in the matter is really beyond debate.").

Along with recognizing that transgender status is information of the utmost intimacy, "[c]ourts have long recognized that the harms arising from disclosing a person's transgender status are among those that make protection by pseudonym appropriate." *Doe v. Penn. Dep't of Corr.*, No. 19-cv-01584, 2019 WL 5683437 at *2 & n.12 (M.D. Pa. 2019) (collecting cases). There is a categorical difference

5

between, on the one hand, Ms. Doe being openly transgender in her private life and, on the other hand, forcing Ms. Doe to litigate under her real name "out[ing] [her] transgender status to the world." *Id.* at *3; *see Doe v. City of Detroit*, No. 18-cv-11295, 2018 WL 3434345 at *2 (E.D. Mich. July 17, 2018) ("While she publicly identifies as female, the fact that she previously presented as male, and had a procedure to reassign her gender, certainly qualifies as information 'of the utmost intimacy.'" (citing *Stegall*, 635 F.2d at 186)).

### III. Ms. Doe's reasonable fears of threats of violence, harassment, and stigmatization weigh in favor of granting her pseudonymity.

Beyond the *SMU* test, it is also relevant that transgender people in the United States regularly face threats of violence, discrimination, and stigmatization, Ms. Doe among them. *See Frank*, 951 F.2d at 324 (citing threat of "physical harm" as factor to consider); *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F3d 1034, 1051 (7th Cir. 2017) ("There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity."). As a protective measure to insulate transgender parties from targeted and generalized threats, many courts have allowed them to proceed under pseudonym. *See, e.g.*, *Foster v. Andersen*, No. 18-2552-DDC-KGG, 2019 WL 329548 at *2 (D. Kan. 2019) ("[Plaintiff] alleges that disclosing his transgender status will subject him to discrimination, harassment, and violence. The court finds [plaintiff]'s fears are justified."); *Doe v. Genesis HealthCare*, 535 F. Supp. 3d 335, 340 (E.D. Pa. 2021)

6

(granting use of pseudonym to plaintiff in employment discrimination suit seeking to avoid "additional threats or future harmful interactions with co-workers based on her transgender status"); *Doe v. Triangle Doughnuts, LLC*, No. 19-cv-5275, 2020 WL 3425150 at *5 (E.D. Pa. June 23, 2020) (granting use of pseudonym in employment discrimination case where transgender plaintiff sought to avoid "additional threats or another violent interaction" in the workplace).

In *Eknes-Tucker*, the court allowed an adult plaintiff—a doctor providing healthcare to transgender patients—to proceed under a pseudonym where the doctor had previously been threatened after expressing her views on a different controversial topic. *See Eknes-Tucker*, 2022 WL 19983530 at *2 ("Further, and most importantly for this analysis, Dr. Koe alleged that she has been threatened with violence in the past when expressing her views on controversial issues and reasonably expects the same to happen should she be named here.").

Like the doctor in *Eknes-Tucker*, Ms. Doe reasonably fears, based upon threats of violence received in the recent past, that if her identity were to become public, she would face a serious risk of physical violence. In the past year, Ms. Doe has been the target of threats directed at her simply for existing as a transgender woman. Doe Decl. ¶¶ 4–6. At the end of last school year, a student walked past her and said, "I want to kill him, that thing." *Id.* ¶ 4. This school year, another student threatened to physically attack her. *Id.* ¶ 5. Neither were students that she taught or

7

was even familiar with, but by virtue of Ms. Doe being herself at work, they had become familiar with her as a transgender teacher. *Id.* ¶ 6.

Requiring Ms. Doe to proceed under her own name would likely subject her to more threats and risk of violence once her name is connected to the litigation. It is likely that Ms. Doe will receive additional harassment from people hostile to her gender identity if it is disclosed because she will be known not only as a transgender teacher, but also as one openly seeking to challenge the state's policies towards transgender people. And Ms. Doe's fear of threats from the public is warranted. For example, in response to a tweet sharing news coverage[2] of the filing of the complaint, an X user posted a reply[3] equating transgender people with "Satan[']s disciples" and warning that "Americans need to stay armed and vigilant against these disgusting groomers":

---

[2] Jim Thomas, *Florida Teachers Challenge Pronoun Law in Federal Suit*, (Dec. 13, 2023), https://www.newsmax.com/newsfront/florida-teachers-challenge/2023/12/13/id/1145849/.

[3] TheBigOne (@bigtunastop), X (Dec. 13, 2023, 9:17 PM), https://twitter.com/bigtunastop/status/1735121903809941793.



Prior to the filing of the complaint, comments from a New York Post article[4] discussing the firing of a fellow plaintiff in this case owing to the challenged policy are rife with threats of physical violence:



---

[4] Isabel Keane, *Florida teacher fired after breaking so-called 'Don't Say Gay' law by using gender-neutral honorific 'Mx.'*, (Nov. 13, 2023), https://nypost.com/2023/11/13/news/florida-teacher-fired-after-using-gender-neutral-honorific-mx/.



One user commented, "I love how these pedophiles and sexual predators now call themselves 'a safe adult to talk to.' These [people] need to be physically beaten." Another user commented, "They should fire the sleazeball twice – just to make sure and put him in the stocks." Ms. Doe's identity should be protected because she faces a real risk of ridicule, harassment, and even violence if she is not permitted to proceed anonymously. *See Doe v. Neverson*, 820 Fed. App'x 984, 988 (11th Cir. 2020) (citing *Stegall*, 653 F.2d at 186) (considering threatening and harassing comments made in response to news article about lawsuit as evidence of the "extensive harassment and perhaps even violent reprisals" facing plaintiff were she required to proceed under her real name); *Eknes-Tucker*, 2022 WL 19983530 at *2 (citing "media attention this case has garnered" as reason in support of granting motion).[5]

What is more, for transgender people, "this history of persecution and

---

[5] The complaint received local and national media coverage. *See, e.g.*, Kathryn Varn, *Scoop: Florida teachers sue state over law restricting pronouns*, (Dec. 13, 2023), https://www.axios.com/2023/12/13/florida-pronouns-ban-transgender-lawsuit; Lauren Sforza, *Florida teachers sue over preferred pronouns law*, (Dec. 14, 2023), https://thehill.com/homenews/state-watch/4360014-florida-teachers-sue-over-preferred-pronouns-law/; Leslie Postal, *3 teachers challenge Florida pronoun law in federal lawsuit*, (Dec. 13, 2023), https://www.orlandosentinel.com/2023/12/13/teachers-florida-pronouns-lawsuit/.

discrimination is not yet history." *Adkins v. City of N.Y.*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015). A 2015 study revealed that nearly half (48%) of transgender people have been denied equal treatment, verbally harassed, or physically attacked because of being transgender. *See* S. E. James et al., *The Report of the 2015 U.S. Transgender Survey*, Nat'l Ctr. for Transgender Equality 198 (2016), https://transequality.org/sites/default/files/docs/usts/USTS-Full-Report-Dec17.pdf.[6] Specifically, nearly half (46%) of transgender people have been verbally harassed and almost one in ten (9%) have been physically attacked because of being transgender. *Id.*

Further, Ms. Doe's identity should be protected because being publicly identified nationwide as a transgender teacher who wishes to use the pronouns associated with her gender poses a threat of reputational harm. Courts have permitted transgender plaintiffs to proceed anonymously "due to the social stigma associated with their gender identity." *Bd. of Educ. of the Highland Loc. Sch. Dist. v. U.S. Dep't of Educ.*, No. 16-cv-524, 2016 WL 4269080 at *5 (S.D. Ohio Aug. 15, 2016) (citing *Blue Cross & Blue Shield of R.I.*, 794 F. Supp. at 72–73). When coupled with other factors, "the threat of hostile public reaction to a lawsuit" can "tip the balance against the customary practice of judicial openness." *Stegall*, 653 F.2d at 186; *see Ladapo*,

---

[6] The 2015 report included responses from nearly 28,000 transgender people and is the largest survey to date of transgender people in the United States. James, *supra*, at 4.

No. 23-cv-00114-RH-MAF, ECF No. 51 at 1 (order granting motion for pseudonym for doctor-witness treating transgender patients who expressed fear that public disclosure of their name would lead to reputational harm).

Given that the statute already prevents Ms. Doe from introducing herself using the title Ms. or referring to herself using she/her pronouns without risking losing her teaching license, she worries that calling attention to her transgender status will invite additional scrutiny. Ms. Doe reasonably fears that if she is not able to proceed under a pseudonym, parents may discover she is transgender and file complaints against her presumably for violating subsection 3. Doe Decl. ¶ 8. That, in turn, could cause her school to terminate her or alter the conditions of her employment. *See Doe v. Lieberman*, No. 20-cv-02148, 2020 WL 13260569, at *3 (D.D.C. Aug. 5, 2020) (recognizing that revealing plaintiff's identity subjected her to the risk of losing "employment opportunities" and "freedom to pursue the occupation of her choice," not merely "annoyance" or "criticism"). Ms. Doe reasonably fears that the public disclosure of her name would lead to professional harm. Doe Decl. ¶¶ 7–8.

It is because of this stigma placed upon transgender people and the real risks of discrimination, harassment, and violence transgender people face on account of their identity that courts have allowed transgender plaintiffs like Ms. Doe to proceed under pseudonyms. *See, e.g.*, *Triangle Doughnuts, LLC*, 2020 WL 3425150, at *4 (collecting cases); *Blue Cross & Blue Shield of R.I.*, 794 F. Supp. at 73 (noting that

"in this era of seemingly increased societal intolerance," the court "will not strip plaintiff of the cloak of privacy which shields him from the stigmatization he might otherwise endure"); *McConn*, 489 F. Supp. at 77 ("The [Plaintiffs], in various stages of sexual transition, are suing under fictitious names to insulate themselves from possible harassment, to protect their privacy, and to protect themselves from prosecution resulting from this action."). The risk of harm Ms. Doe faces from threats of violence, harassment, and stigmatization weighs strongly in favor of allowing her to proceeding pseudonymously.

**IV.     Ms. Doe's privacy interests outweigh the public interest and any prejudice to Defendants, in favor of granting Ms. Doe pseudonymity.**

Ms. Doe's privacy interest in resisting disclosure of her identity outweighs any public interest favoring disclosure. "[C]ourts have the power to insure that their records are not 'used to gratify private spite or promote public scandal[.]'" *United States v. Amodeo*, 71 F. 3d 1044, 1051 (2d Cir. 1995) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). The public's understanding of the issues and facts in this case will not be affected by Ms. Doe's use of a pseudonym. The risk of stigmatization, discrimination, and even violence against Ms. Doe would only increase if her name were to be made public in this suit. Requiring Ms. Doe to disclose her identity would paint a target on her back for harassment by the public. Moreover, some courts have found that the public interest at stake in the litigation itself weighs in favor of confidentiality. *See Triangle Doughnuts, LLC*, 2020 WL

13

3425150 at *6 ("[E]mployment discrimination cases based on gender identity deal with important societal issues of equity and personal value," thus, "the public interest for maintaining the confidentiality of the litigant's identity outweighs the need for a public judicial proceeding."). Here, the public interest at stake concerns an "important societal issue[]" that is also highly personal, warranting protection of Ms. Doe's identity.

Finally, permitting Ms. Doe to proceed under a pseudonym will not prejudice Defendants. Ms. Doe is only asking to use a pseudonym in public filings. She will provide her real name to Defendants under a protective order, so that they will have a meaningful opportunity to defend against Ms. Doe's claims. *See Francis*, 631 F.3d at 1318–19.

## CONCLUSION

For these reasons, Plaintiff Ms. Doe respectfully requests that the Court enter an order:

1. Granting Plaintiff leave to proceed in this matter using the pseudonym Ms. Doe;

2. Ordering that Defendants refrain from publicly disclosing Ms. Doe's real name and personally identifying information that Defendants might learn; and

3. Ordering that all parties, when filing anything on the public docket, must use Ms. Doe's pseudonym instead of her real name and redact Ms. Doe's real

name and other personally identifying information.

## LOCAL RULE 7.B CONFERENCE

Pursuant to Local Rule 7.1(B), counsel for Plaintiffs conferred with counsel for all Defendants on December 19th, 20th, and 21st. Counsel for Defendant Lee County School Board indicated that they oppose the relief sought. Counsel for Hillsborough County School Board and Florida Virtual School Board of Trustees indicated that they do not object to the relief requested. Counsel for the State Defendants indicated that they take no position.

Respectfully submitted.

December 21, 2023

/s/ *Carli Raben*
Sam Boyd, Fla. Bar No. 1012141
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher[§†]
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
[†] *Not admitted to practice law in DC*

Diego A. Soto[§‡]
Jessica L. Stone[§]

15

SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 521-6700
(404) 377-0708 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org
‡ *Admission to GA pending*

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg*
James Baltzer*
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

* Pro hac vice *motion forthcoming*
§ *Admitted* pro hac vice

16

## CERTIFICATE OF WORD COUNT

According to Microsoft Word, the word-processing system used to prepare this Motion and Memorandum, there are 220 total words contained within the Motion, and there are 2,936 words contained within the Memorandum of Law.