UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Wood, *et al.*,

        *Plaintiffs*,

        v.

Florida Department of Education, *et al.*,

        *Defendants*.

Case No. 4:23-cv-00526-MW-MAF

### DEFENDANTS' JOINT MOTION TO STAY DISCOVERY

All Defendants seek a stay of discovery and the Court's schedule pending the outcome of the U.S. Equal Employment Opportunity Commission's (EEOC) investigation, and the Defendants' upcoming motions to dismiss. Plaintiffs oppose a stay.

### BACKGROUND

1. This case is about the legality of a statute governing the workplace in Florida's public schools. *See* Fla. Stat. §1000.071(3) ("Subsection 3"). That law is one-line long: "An employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex."

Plaintiffs have sued the state agencies that have a role in enforcing Subsection 3: the Florida Department of Education, the State Board of Education, and the Education Practices Commission. Plaintiffs have also sued the three local school boards that have

no choice but to enforce Subsection 3 against Plaintiffs: Hillsborough County School Board, Lee County School Board, and Florida Virtual School Board of Trustees. Those three school boards are little more than necessary defendants for purposes of redressability under the Eleventh Circuit's law on standing. *See Support for Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021).

Among other things, the Plaintiffs assert six Title VII claims against Subsection 3. Compl. ¶¶111-158. "A plaintiff with a Title VII discrimination or retaliation claim," however, "must proceed through a number of steps before he can raise the claim in a federal district court." *Gonzalez v. Nat'l Settlement Sols., Inc.*, 2014 WL 4206812, at *2 (S.D. Fla. Aug. 25, 2014). Most notably, "[b]efore instituting a Title VII action in federal district court, a private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehand v. Fla. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996). "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Georgia Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004). The investigation also allows the government to decide whether to sue the employer on behalf of the employee. *See* 42 U.S.C. §2000e-5(f)(1).

Title VII has special rules for when, as here, the employer is "a government, governmental agency, or political subdivision." *Id.*; *see, e.g.*, *Fouche v. Jekyll Island-State*

2

*Park Auth.*, 713 F.2d 1518, 1524 (11th Cir. 1983). If the EEOC is "unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court." 42 U.S.C. §2000e-5(f)(1). "Following a charge referral from EEOC," the Department of Justice's Civil Rights Division "makes a determination whether to bring a lawsuit based on the charge." EEOC-DOJ Memorandum of Understanding (Dec. 21, 2018), http://tinyurl.com/2rwwkxwe.

At that stage there are two possible outcomes. First, if DOJ files a civil action, then it takes the lead on the dispute and "[t]he person or persons aggrieved" by the allegedly unlawful employment practice "shall have the right to intervene" in that matter. 42 U.S.C. §2000e-5(f)(1). Second, if DOJ "decides not to bring a lawsuit, it issues to the charging party a notice of right to sue." EEOC-DOJ MOU, *supra*. Only at that point can the plaintiff pursue his or her Title VII claim in federal court.

2. That process is playing out right now in this dispute. The three plaintiffs in this case just filed their EEOC charges last month shortly before filing their complaint here, *see* Compl. ¶¶92, 102, 110, and the Defendants' initial responses to those charges were due just two weeks ago. EEOC also sent the Defendants various requests for information asking about Subsection 3's implementation. *See, e.g.*, Ex. A. Responses to those requests were due last week. But EEOC has said those initial requests will "not neces-

3

sarily represent the entire body of evidence which we need to obtain from your organization in order that a proper determination as to the merits of the charge can be made." *Id.*

3. The Court held a telephonic scheduling conference in this matter on January 5. Ahead of that conference, as directed by the Court, the parties met and conferred on a schedule going forward. The parties ultimately agreed on a schedule for the pending motion for preliminary injunction and Defendants' upcoming motions to dismiss. They filed that proposed schedule on January 4. Dkt. 30. That proposed schedule did not anticipate discovery opening.

The Court issued its standard scheduling order a few hours before the January 5 telephonic conference. Dkt. 31. Among other things, that order stated that "[t]he parties must begin discovery immediately," and that "[t]he parties are further directed to conduct discovery so that the due date of any discovery requested shall be not later than **May 3, 2024**." *Id.* at 1. During the conference, counsel for the State Defendants (Bryan Weir) noted that opening discovery would be inappropriate because of Title VII's exhaustion requirements and the pending EEOC investigation. The Court responded that the parties could confer to see if they could reach an agreement on an alternative schedule. They did so by phone and email between January 5 and 18 during which Defendants asked Plaintiffs that discovery be stayed pending completion of the EEOC's investigation and the upcoming motions to dismiss. Plaintiffs oppose a stay.

## ARGUMENT

1. Discovery should be stayed for three independent reasons. First, discovery is premature because it undermines the comprehensive statutory scheme for asserting Title VII claims. It is black-letter law that before even "*instituting* a Title VII action in federal district court, a private plaintiff *must* … receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehand*, 89 F.3d at 1567 (emphasis added). For that reason, Plaintiffs' Title VII claims are subject to *dismissal* until they obtain their right-to-sue letter. *See, e.g.*, *Cute v. ICC Cap. Mgmt., Inc.*, 2010 WL 11626589, at *2 (M.D. Fla. Mar. 18, 2010). Courts typically do one of two things when plaintiffs file Title VII claims without a right-to-sue letter. "Some have dismissed the case without prejudice, allowing the complaint to be refiled, if necessary, following the exhaustion of administrative remedies." *Ward v. Wal-Mart Stores, Inc.*, 2000 WL 36739742, at *2 (D.N.M. July 11, 2000). "Others have held the plaintiff's case in abeyance pending exhaustion of the EEOC process." *Id.*; *see Cute*, 2010 WL 11626589 (dismissing); *Barnett v. City of Opa-Locka, Fla.*, 2022 WL 604072, at *1 (S.D. Fla. Mar. 1, 2022) (staying). Pressing forward now is not the right path.

To be sure, Plaintiffs could hold off on Title VII-specific discovery until they get their letters. But that doesn't solve the exhaustion requirement. Moving this case along—even with Title VII discovery stayed—would still undermine Title VII's policy of "preventing concurrent proceedings in the EEOC and the courts." *Cute*, 2010 WL 11626589, at *2. Yet that is not the only point of Title VII's exhaustion requirement.

Congress also requires Title VII plaintiffs to wait so the government has time to determine whether DOJ *itself* will lead the litigation against Defendants (with Plaintiffs having a right to intervene in that suit). *Supra* 2-3. That process is in its nascent stages and its outcome could materially change the complexion of this dispute.

Plaintiffs may highlight that this case does not include *only* Title VII claims. They assert additional claims under Title IX and the federal Constitution. *See* Compl. ¶¶223-242. But those claims do not change the calculus. Plaintiffs' Title IX claims are duplicative of their Title VII claims. And "district courts within the Eleventh Circuit and federal circuit courts of appeals have held that Title VII preempts Title IX and provides the exclusive remedy for employment discrimination claims against federally funded education programs." *Schultz v. Bd. of Trustees of Univ. of W. Fla.*, 2007 WL 1490714, at *2 (N.D. Fla. May 21, 2007). "[T]he 'precisely drawn, detailed enforcement structure' and 'comprehensive remedial scheme' that is Title VII preempts the more general remedy under Title IX" in these circumstances. *Id.* at *3. "Title IX was not intended to enable employees of educational institutions complaining of gender discrimination to bypass the remedial scheme Congress established in Title VII." *Drisin v. Fla. Int'l Univ. Bd. of Trustees*, 2017 WL 3505299, at *5 (S.D. Fla. June 27, 2017) (collecting cases). So Plaintiffs' Title IX claims are no reason to allow discovery to proceed.

Nor are Plaintiffs' constitutional claims. Their First Amendment claims (Compl. ¶¶159-193) turn on whether their speech as government employees is protected under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). This Court recently explained that analysis "is a

question of law for the court to decide." *Burt v. Fuchs*, 2023 WL 4103942, at *8 (N.D. Fla. June 21, 2023) (Walker, J.). That "question of law" is currently pending before the Court in the motion for preliminary injunction. *See* Dkt. 11, at 21-22. The Plaintiffs' Equal Protection Clause claims (Compl. ¶¶194-222) are also "a question of law" for the court to decide. *United States v. Johns*, 984 F.2d 1162, 1163 (11th Cir. 1993). In any event, it is also appropriate "to enter a stay to allow the EEOC to complete its investigation… because all of [Plaintiffs'] claims against Defendant[s] arise out of the same body of facts." *Atkins v. HCA-HealthONE, LLC*, 2015 WL 1298507, at *3 (D. Colo. Mar. 19, 2015) (internal quotation marks omitted). And "it would be more efficient for the Court to hear all of [their] claims" at the same time. *Id.*

Indeed, Plaintiffs' sudden insistence on moving forward makes them an outlier. "Plaintiffs in the same situation … —seeking relief under § 1983 and Title VII or other federal employment discrimination statutes for the same adverse employment action—routinely ask district courts to stay the first lawsuit until they obtain a right-to-sue letter." *Czarniecki v. City of Chicago*, 633 F.3d 545, 550 (7th Cir. 2011). They do so for multiple reasons. One is to get their §1983 claims on file ahead of the limitations period expiring while EEOC investigates the Title VII claim. *Id.* Another is to make sure discovery does not end before a plaintiff can pursue his or her Title VII claim. *See, e.g.*, *Keener v. Antinoro*, 2019 WL 2192121, at *3 (D. Nev. May 21, 2019). Here, in fact, the Court's current discovery deadline ends on May 3. Because EEOC's investigation can take up to six months, Plaintiffs' path could lead to them obtaining *no* Title VII-specific

7

discovery at all in this case. *Id.* (collecting cases) (faulting the plaintiff for not seeking a stay and refusing to allow Title VII claim to proceed after discovery closed). At a minimum, the Court would need to modify the existing schedule to accommodate Title VII discovery once Plaintiffs obtain their right-to-sue letters. It is easier just to stay discovery now and enter a new scheduling order once all the claims can proceed together. And though Plaintiffs have asserted they expect to have their right-to-sue letters soon, they've provided nor evidence that's the case; the evidence points in the other direction—the EEOC is actively investigating their claims.

2. Discovery is also inappropriate right now because the meat of this case are legal issues that are already teed up in the motion for preliminary injunction. *See* Dkt. 11. Plaintiffs assert that Subsection 3, on its face, violates Title VII after *Bostock* and the First Amendment. *Id.* at 3-5. And the School Board Defendants are obligated to follow that law as long as it is in place, which is why they are necessary defendants—plaintiffs cannot obtain full redressability for their claims if the school boards were absent. *Support for Working Animals*, 8 F.4th at 1205. It is far more efficient to have those primary legal issues addressed before the parties move into discovery.[1]

---

[1] The Court can address the motion for preliminary injunction even though the Title VII claims cannot proceed yet. In a "limited class of cases" an "individual employee may bring her own suit to maintain the status quo pending the action of the Commission on the basic charge of discrimination." *Drew v. Liberty Mut. Ins.*, 480 F.2d 69, 72 (5th Cir.1973); *see Creger v. United Launch All. LLC*, 571 F. Supp. 3d 1256, 1263 n.2 (N.D. Ala. 2021). But that exception to exhaustion does not permit discovery; it is limited to trying to obtain "temporary relief to prevent irreparable injury while the Commission carrie[s] on its function." *Drew*, 480 F.2d at 73.

3. Defendants are also filing motions to dismiss on February 12, 2024, which is an additional reason to stay discovery. "Facial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should … be resolved before discovery begins." *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997). "Such a dispute always presents a purely legal question; there are no issues of fact because the allegations contained in the pleading are presumed to be true." *Id.* "Therefore, neither the parties nor the court have any need for discovery before the court rules on the motion." *Id.* In addition, "[d]iscovery imposes several costs on the litigant from whom discovery is sought." *Id.* And "[i]f the district court dismisses a nonmeritorious claim before discovery has begun, unnecessary costs to the litigants and to the court system can be avoided." *Id.* at 1368. This Court has stayed discovery in this posture time and again. *See, e.g.*, *Smith v. City of Springfield*, No. 5:21-cv-178-MW-MJF (N.D. Fla. Oct. 7, 2021), ECF No. 11; *Salters v. Leon County Schools*, No. 4:21-cv-241-MW-MJF (N.D. Fla. Aug. 16, 2021), ECF No. 13; *Rodriguez v. Maxim Healthcare Services, Inc.*, No. 4:19-cv-66-MW-MAF (N.D. Fla. Nov. 1, 2019), ECF No. 35; *Shands Teaching Hospital & Clinics, Inc. v. Azar*, No. 1:17-cv-245-RH-CAS (N.D. Fla. Apr. 14, 2018), ECF No. 22. It appropriate to do so in this case as well.

There are serious defects with many aspects of Plaintiffs' claims. As already outlined, the Title VII claims are subject to dismissal because Plaintiffs do not have their right-to-sue letters, and the Title IX claims are preempted. *See supra* 6-8. But the problems run deeper than just those. Plaintiffs' First Amendment claim, for example, asserts

9

that Subsection 3 affects only government-employee speech pursuant to official duties; so it is subject to dismissal under *Garcetti v. Ceballos*, 547 U.S. 410 (2006). This is not the place to raise all the Complaint's defects. Suffice it to say there are, significant legal issues that should be sorted before any discovery proceeds. Discovery should thus be stayed until resolution of the motions to dismiss.

Dated: January 24, 2024                  Respectfully submitted,

/s/ Bryan Weir
Bryan Weir*
Daniel Shapiro
Daniel M. Vitagliano*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: 703.243.9423 bryan@consovoymccarthy.com
daniel@consovoymccarthy.com
dvitagliano@consovoymccarthy.com

*Counsel for the State Defendants*

*Admitted pro hac vice

*Counsel for the State Defendants*

/s/ Eric J. Holshouser

Eric J. Holshouser
Florida Bar No.: 307734
Email: eholshouser@rtlaw.com
ROGERS TOWERS, P.A.
1301 Riverplace Boulevard, Suite 1500
Jacksonville, FL 32207

(904) 398-3911 – Telephone
(904) 396-0663 – Facsimile

J. David Marsey
Florida Bar No.: 0010212
E-mail: dmarsey@rumberger.com (primary)
docketingorlando@rumberger.com and
dmarseysecy@rumberger.com (secondary)
Jeffrey J. Grosholz
Florida Bar No.: 1018568
E-mail: jgrosholz@rumberger.com (primary)
docketingorlando@rumberger.com and
jgrosholzsecy@rumberger.com (secondary)
RUMBERGER, KIRK & CALDWELL, P.A.
101 North Monroe Street, Suite 1050
Tallahassee, Florida 32301
Tel: 850.222.6550
Fax: 850.222.8783

*Counsel for Florida Virtual School Board of Trustees*

*/s/* Jason L. Margolin

Jason L. Margolin, Esq. (FBN 69881)
Email: jason.margolin@akerman.com
AKERMAN LLP
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 209-5009
Facsimile: (813) 218-5488

*Counsel for Defendant School Board of Hillsborough County, Florida*

*/s/* James D. Fox

James D. Fox
Roetzel & Andress, LPA
999 Vanderbilt Beach Road
Suite 401
Naples, FL 34108
Direct Phone No.: 239.649.2705
Main Phone No.: 239.649.6200

11

Fax No.: 239.261.3659
Email: jfox@ralaw.com

*Counsel for Defendant Lee County School Board*

## CERTIFICATE OF CONFERRAL

Consistent with Local Rule 7.1(B), counsel for Defendants conferred in good faith with counsel for Plaintiffs, who oppose the relief requested in this motion.

## CERTIFICATE OF WORD COUNT

Consistent with Local Rule 7.1(F), this motion contains 34 words and the memorandum contains 2,453 words.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of January, 2024, a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ Bryan Weir*