UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KATIE WOOD, et al.,

    Plaintiffs,                        Case No. 4:23-cv-526-MW/MAF

v.

FLORIDA DEPARTMENT OF
EDUCATION, et al.,

    Defendants.

_____/

## SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant the School Board of Hillsborough County, Florida ("HCSB"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff Katie Wood's causes of action against HCSB in counts 3, 8, 11, and 14 of Plaintiffs' Amended Complaint (Doc. 56). Plaintiff Wood alleges HCSB violated Title VII, 42 U.S.C. § 1983, as well as Title IX, when HCSB advised Plaintiff Wood that pursuant to the amended Florida Statute § 1000.071(3), Plaintiff Wood would no longer be allowed to use she/her pronouns while teaching. Yet accepting all well pleaded facts as true and drawing all permissible inferences in Plaintiff Wood's favor results in but one inescapable conclusion: Plaintiff Wood has not, and cannot, plead causation between any HCSB action or policy and her claimed harms.

74908995;4

Rather, the Amended Complaint makes abundantly clear that section 1000.071(3) passed by Florida's legislature, and the State Defendants' enforcement of same, is the moving force behind Plaintiff Wood's pleaded constitutional violations. And because HCSB has no discretion in following what is otherwise a presumptively valid law, Plaintiff Wood's claims against HCSB are due to be dismissed.

## BACKGROUND[1]

Plaintiff Wood, a transgender woman using "the title Ms. and she/her pronouns," is an HCSB teacher. (Doc. 56 at ¶¶ 76–77.) Prior to the enactment of section 1000.071(3), "Ms. Wood was permitted to provide to students her Ms. Title and she/her pronouns." (*Id.* at ¶ 79.) In fact, when Plaintiff Wood first started working for HCSB, HCSB "was supportive of her transgender status and female

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)). To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," and "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (citation omitted).

gender identity and expression. It allowed her to go by Ms. Wood and she/her pronouns." (*Id.* at ¶ 78.)

"But earlier this year, Florida enacted a new law . . . prohibiting [transgender teachers] from using the titles and pronouns that express who they are," and otherwise requiring said teachers to use the pronouns corresponding with their biological sex. (*See* Doc. 56 at ¶ 1.) HCSB "**must** file in writing with Defendant Florida Department of Education all complaints that a teacher has violated subsection 3 within 30 days after the date on which subject matter of the complaint comes to its attention." (*Id.* at ¶ 40 (citing Fla. Stat. § 1012.796(1)(d)(1) (emphasis added)).) Otherwise, HCSB is subject to punitive measures from the State by, for example, its "superintendent [being] subject to withholding of salary for up to one year." (*See id.*)

Similarly, "[i]t is the responsibility of all employees of [HCSB] to promptly report to the superintendent any complaint against a teacher" and the "willful failure by an employee of [HCSB] to promptly report a complaint constitutes cause for discipline of the employee **as provided by Florida Statutes**." (Doc. 56 at ¶¶ 60, 61 (emphasis added).) These reporting requirements are codified in Hillsborough County School Board Policy 3139, which merely restates HCSB and its employees'

3

obligations under Florida law.  *See* Hillsborough Cnty. Sch. Bd. Pol'y 3139; (*see also* Doc. 56 at ¶¶ 59–61).[2]

Plaintiff Wood alleges that "[s]ince subsection 3 became law and [HCSB's] policy, [the principal of the school where Plaintiff Wood teaches] and [HCSB] advised Ms. Wood that she was no longer allowed to go by Ms. because her sex is deemed male and that she instead could go by Mr., Teacher, or Coach." (Doc. 56 at ¶ 82.) Plaintiff Wood thus "opted to go by Teacher," though "**[m]ost students still call her Ms. Wood**, while others call her Teacher Wood." (*Id.* at ¶ 84, 88 (emphasis added).)

On these facts, Plaintiff Wood raises four causes of action against HCSB: (a) Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 ("Title VII") on grounds of sex discrimination (Count 3); (b) Violation of the First and Fourteenth Amendments to the U.S. Constitution pursuant to 42 U.S.C. § 1983 based on free speech (Count 8); (c) Violation of the Fourteenth Amendment to the U.S. Constitution also based on equal protection and § 1983 (Count 11); and (d) Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 ("Title IX") on grounds of sex discrimination (Count 14). (Doc. 56 at pp. 39, 45, 51, 56.)

---

[2] The policy is a public record of which the Court may take judicial notice. *See, e.g.*, *Ambrose v. St. Johns Cnty. Sch. Bd.*, 664 F. Supp. 3d 1322, 1327 (M.D. Fla. 2023).

Across all counts, Plaintiff Wood alleges, that "[b]y enforcing or threatening to enforce subsection 3," HCSB either discriminated in violation of Title VII & Title IX, or deprived Plaintiff Wood of her rights to free speech and equal protection in violation of § 1983. (*See* Doc. 56 at ¶¶ 137, 182, 213, 233.)

## APPLICABLE LEGAL STANDARD

Plaintiff Wood's legal theories all require a causal connection between some HCSB action and Plaintiff's pleaded harms.

Indeed, "[t]o prove intentional discrimination [under Title VII]," Plaintiff Wood "must establish (1) [HCSB's] discriminatory animus towards [her] based on [Plaintiff Wood's] protected characteristic; (2) a discharge or other significant change in the terms or conditions of employment; and (3) **a causal link between the two**." *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999) (emphasis added) (citing *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236 (11th Cir. 1998)). The same is true for Plaintiff Wood's Title IX theory given that the Eleventh Circuit applies "Title VII case law to assess [a plaintiff's] Title IX claim." *Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, 509 F. App'x 906, 910 (11th Cir. 2013).

For § 1983 claims, Plaintiff Wood must identify a municipal policy causing injury, while also alleging the specific policy was the **moving force** of the alleged constitutional deprivations. *See Davis v. DeKalb Cnty. School Dist.*, 233 F.3d 1367,

5

1375 (11th Cir. 2000); *see also Cuesta v. School Bd. of Miami-Dade Cnty., Fla.*, 285 F.3d 962, 967 (11th Cir. 2002). "[M]unicipal liability under § 1983," to be certain, "attaches where—and **only** where—a deliberate choice to follow a course of action is made **from among various alternatives** by [officials] responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (emphasis added).

## DISCUSSION

Plaintiff Wood's Amended Complaint fails to state any claim against HCSB, and must therefore be dismissed, for at least one simple reason: Plaintiff fails to identify any **HCSB**-specific action that violated Plaintiff's rights. First, with respect to the Title VII & Title IX claims, Plaintiff Wood does not identify a discriminatory animus on behalf of HCSB resulting in Plaintiff Wood no longer being allowed to use she/her pronouns. Plaintiff cannot do so because prior to the Florida legislatures enactment of the challenged law *sub judice*, Plaintiff admits HCSB supported Plaintiff Wood's gender identity; the antithesis of discrimination. Likewise, Plaintiff Wood has, at most, cited to a single HCSB policy **of general applicability** which HCSB has no discretion but to enact given that it is so compelled by Florida law. Accordingly, there is but one inescapable conclusion before the Court, Plaintiff Wood fails to state any cause of action against HCSB and there is no redress available from HCSB.

I. **Plaintiff Wood's Title VII & Title IX claims fail because Plaintiff alleges neither a discriminatory animus on the part of HCSB nor a causal link between any ostensible animus and alleged harm**.

Even a cursory reading of the Amended Complaint is sufficient to reveal that any alleged animus towards Plaintiff Wood's gender identity arises solely from section 1000.071 itself; not any action by HCSB. Plaintiff Wood, at length, charges **Florida** with enacting "a new law that . . . threatens . . . plaintiffs." (Doc. 56 at ¶ 1.) In five (5) paragraphs spanning three (3) pages, Plaintiff Wood sets out the allegedly invidious discrimination underscoring section 1000.071—yet such discrimination is charged only ever to arise from the actions of Florida's Governor and legislature. (*Id.* at ¶¶ 29–33.)

For example, Plaintiff Wood asserts "[s]ubsection 3's **drafters**," not HCSB, "ignored Supreme Court case law" and "[s]ubsection 3 is just one of a number of **laws** that **Florida** has recently enacted at least in part because of . . . the adverse effects they would have . . . on LGBTQ+ people." (*Id.* at ¶¶ 30, 31 (emphasis added).) Any discriminatory animus therefore arises from the State, not HCSB. To the contrary, before section 1000.071 became law, which HCSB is obligated to follow, HCSB "was supportive of [Plaintiff Wood's] transgender status and female gender identity and expression. It allowed her to go by Ms. Wood and she/her pronouns." (*Id.* at ¶ 80.)

74908995;4

Plaintiff Wood also alleges "[s]ince subsection 3 became law and [HCSB's] policy [sic], . . . [HCSB] advised Ms. Wood that she was no longer allowed to go by Ms." (*Id.* at ¶ 82.) Again, Plaintiff alleges the enactment of the law is the driving (and only) force of any animus. Plaintiff Wood does not otherwise, beyond a cursory identification, attempt to explain how HCSB Policy 3139 results in her claimed harms. To the contrary, HCSB even attempted, to the best of its ability and within the confines of the law, to accommodate Plaintiff Wood with alternate titles like "Teacher" or "Coach." (*Id.*) Simply put, there is no plausible inference of animus by and on behalf of HCSB against Plaintiff Wood that the Court can draw on these alleged facts.

Dismissal would still be appropriate even if, assuming solely for the sake of argument, Plaintiff Wood identified some animus attributable to HCSB. As pleaded, it is not HCSB who investigates violations of section 1000.71, but "Defendant Florida Department of Education's Office of Professional Practice Services [who] conducts such investigations." (Doc. 56 at ¶ 39.) HCSB does not determine whether a violation of HCSB occurred, rather "Defendant Commissioner of Education determines whether there is probable cause of a violation of subsection 3." (*Id.* at ¶ 41.) And once a complaint is made, it is not HCSB who determines how that complaint is handled, instead "Defendant Education Practices Commission must

8

either dismiss the complaint or impose penalties on a teacher for violating subsection 3." (*Id.* at 45.)

Only a single, conclusory, threadbare allegation places any power with HCSB: "School Board Defendants have the power to suspend or dismiss a teacher for violating subsection 3." (Doc. 56 at ¶ 54.) First, however, this is a **hypothetical**, forward facing allegation. Second, Plaintiff Wood also alleges that HCSB will **report**, not act upon, violations of section 1000.71 to "Defendant Florida Department of Education." (*Id.* at ¶ 59.) This is all to say, "the causal link between [any animus from HCSB] and [discrimination alleged by Plaintiff Wood] is broken by the [State Defendants'] hearing[s] and independent decision to" act pursuant to section 1000.71. *Stimpson*, 186 F.3d at 1331. Any report by HCSB that Plaintiff Wood violated section 1000.71 "does not, itself, constitute" actionable discrimination under Title VII or Title IX. *See id.*

## II. Plaintiff Wood fails to identify any HCSB policy supporting § 1983 liability.

Plaintiff Wood's § 1983 claims fail for similar reasons. Plaintiff Wood identified only a single policy upon which Counts 8 and 11 rest—HCSB Policy 3139.[3] It is telling that the only references Plaintiff Wood makes to Policy 3139 are

---

[3] Ordinarily, a court's 12(b)(6) analysis is limited to the face of the complaint. "However, where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the

9

all preceded first by "subsection 3." (Doc. 56 at ¶¶ 79–82.) Policy 3139 does nothing but restate HCSB's legal obligations to follow binding Florida law. It is not a specific policy that HCSB crafted to enforce subsection 3. And courts routinely reject § 1983 liability when the alleged policy is in all reality a defendant merely following state law.

This is because, "a municipality's policy of 'enforcing state law' cannot be the cause or the 'moving force' of a constitutional violation because it is the state's law that is the cause in that circumstance." *N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 936 (W.D. Wis. 2009). "*Monell*," after all, "is a case about responsibility." *Pembaur*, 475 U.S. at 478.[4] As then-Chief Judge Posner of the Seventh Circuit aptly explained in analyzing a § 1983 claim under analogous facts:

> The plaintiff who wants a judgment against the municipality under that statute must be able to trace the action of the employees who actually injured him to a policy or other action of the municipality itself. **When the municipality is acting under compulsion of state or federal law, it is the policy contained in that state or federal law, rather than anything devised or adopted by the municipality, that is responsible for the injury**. Apart from this rather formalistic point, our position has the virtue of minimizing the occasions on which federal constitutional law, enforced through section 1983, puts local government at war with state government.

---

defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

[4] *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658 (1978).

*Bethesda Lutheran Homes & Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) (emphasis added).

The Eleventh Circuit also applies this reasoning in that, when determining whether "an actionable policy or custom under § 1983" exists, this Circuit looks to see whether the defendant has any choice in carrying out a policy. *See generally McKusick v. City of Melbourne, Fla.*, 96 F.3d 478 (11th Cir. 1996). For example, in *McKusick*, the Eleventh Circuit vacated the district court's dismissal of a § 1983 claim for failure to state a cause of action based on the lower court's finding that a city had no choice in following a judicial injunction. *See id.* at 483–84. Specifically, the Eleventh Circuit opined on various alternatives the city could have pursued and held that "the development and implementation of an administrative enforcement procedure, **going beyond the terms of the injunction itself**," was actionable under § 1983. *Id.* at 484 (emphasis added).

That is not the case here. Rather, as Plaintiff Wood herself alleges, "Defendant State Board of Education amended two administrative rules" requiring "teachers to comply with subsection 3 and to subject teachers who violate subsection 3" to punitive measures. (Doc. 56 at ¶ 34.) HCSB, by contrast, "**must** file in writing with Defendant Florida Department of Education all complaints that a teacher has violated subsection 3 within 30 days after the date on which subject matter of the complaint comes to its attention." (*Id.* at ¶ 40 (emphasis added) (citing Fla. Stat. §

11

1012.796(1)(d)(1)).) "Defendant State Board of Education must oversee the performance of [HCSB's] enforcement of subsection 3 and enforce [HCSB's] compliance with subsection 3." (*Id.* at ¶ 47 (emphasis added) (citing Fla. Stat. §§ 1001.03(8), 1008.32).) Plaintiff Wood even expressly states that, if HCSB "is unwilling or unable to comply with subsection 3, Defendant State Board of education has the power to report that to the Legislature, withhold funds, declare the School Board Defendant ineligible for competitive grants, and require periodic reporting." (*Id.* at ¶ 49 (citing Fla. Stat. § 1008.32(4)).) This is in addition to withholding the HCSB superintendent's salary "for up to one year." (*Id.* at ¶ 40.)

Nothing in Policy 3139 goes beyond the mandates of these statutes, as pleaded by Plaintiff Wood. The reality before the Court is that HCSB has no more discretion than Plaintiff Wood in complying with section 1000.71, and the rest of the mandates of Florida law set forth in the Amended Complaint.

"In short, even assuming that the allegations in the complaint are true, there is no plausible basis for imposing § 1983 liability on the School District." *Files v. DeKalb Cnty. Sch. Dist.*, No. 1:11-CV-1798-JEC, 2012 WL 716055, at *4 (N.D. Ga. Mar. 5, 2012) (Carnes, J.). Plaintiff Wood "fail[s] to allege any discriminatory motive or action on the part of [HCSB] . . .. And [HCSB] cannot, as a matter of law, be held accountable under § 1983 for the discriminatory actions of" the State Defendants as alleged in the Amended Complaint. *Id.*

12

## CONCLUSION

Based on the foregoing, HCSB respectfully requests the Court dismiss Counts 3, 8, 11, and 14 of the Amended Complaint. (Doc. 56.) Plaintiff Wood fails to show any of the alleged grievances arise from a discriminatory animus flowing from HCSB; Plaintiff alleges the opposite. And even if Plaintiff could demonstrate such animus, it is ultimately the State Defendants and the law itself which proscribe any punitive sanction for Plaintiff Wood's complained of deprivations and thus there is no causal link as required by Title VII or Title IX. Last, far from identifying any actionable HCSB policy, Plaintiff Wood has—at most—alleged that HCSB is following an otherwise valid and binding state law. This is not enough to state a claim under § 1983. Accordingly, the Complaint as to HCSB is due to be dismissed.

## CERTIFICATE OF WORD COUNT

The Undersigned certifies that this Response, inclusive of footnotes, does not exceed 3,010 words per the word-processing system used to prepare the memorandum.

Dated: February 12, 2024

*/s/ Jason L. Margolin*
**JASON L. MARGOLIN, ESQ.** (FBN 69881)
Email: jason.margolin@akerman.com
**Neema M. Monfared, Esq.** (FBN 1035991)
Email: neema.monfared@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 209-5009
Facsimile: (813) 218-5488
*Attorneys for Defendant School Board of Hillsborough County, Florida*

## CERTIFICATE OF SERVICE

I certify a true and correct copy of the foregoing was served upon all counsel of record via CM/ECF on February 12, 2024.

*/s/ Jason L. Margolin*
Attorney