UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KATIE WOOD, JANE DOE, AND AV
SCHWANDES,

        Plaintiffs,

vs.

FLORIDA DEPARTMENT OF
EDUCATION, *et al.,*

        Defendants.

_____

CASE NO. 4:23-cv-00526-MW-MAF

**LEE COUNTY SCHOOL BOARD'S MOTION TO DISMISS
AMENDED COMPLAINT AND NOTICE OF JOINING STATE
DEFENDANTS AND HILLSBOROUGH COUNTY'S MOTION TO
DISMISS**

      Defendant, Lee County School Board ("LCSB"), pursuant to Federal Rule of Civil Procedure 12(b)(6), moves to dismiss Plaintiff Jane Doe's causes of action against LCSB in Counts 4, 9, 12, and 15 of Plaintiffs' Amended Complaint (Doc. 56). Additionally, LCSB files this notice of joining State Defendants' (Dkt. 62), School Board of Hillsborough County's (Dkt. 62) Motions to Dismiss.

# BACKGROUND[1]

Plaintiff Jane Doe ("Doe") has been a teacher in Lee County since 2017. Am. Compl. ¶94. Doe is a biological male who "socially transitioned as a woman after Thanksgiving 2021." *Id.* ¶94. Doe concedes that LCSB "was supportive of her transgender status and female gender identity and expressions" and allowed Doe to "go by Ms. Doe and she/her pronouns." *Id.* at ¶96.

Despite LCSB's support, Doe brings this action against LCSB, alleging discrimination based on Doe's transgender status, simply by the enactment of a new Florida Statute that governs the workplace in Florida's public schools. See Fla. Stat. §1000.071(3) ("Subsection 3"). Subsection 3 states:

> An employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex.

Subsection 3 only applies when Doe is acting within the scope of her employment duties. Fla. Stat. §1000.071(6). Yet, Doe does not allege that LCSB has taken any action to enforce Subsection 3 and merely alleges that LCSB *must report* violations of Subsection 3. Id. ¶65. Doe alleges a hypothetical future injury that *if* Subsection 3 was enforced, Doe "*may* no longer provide to students" a "Ms. title and she/her pronouns." Id. ¶99 (emphasis added).

---

[1] LCSB does not admit to the allegations in the Complaint and reserves the right to dispute them at the appropriate time. LCSB recites the allegations only for the purposes of this Motion.

LCSB has no choice but to *report* violations of Subsection 3. AM. COMPL. ¶ 41; SEE *Support for Working Animals, Inc. v. Gov. of Fla.*, 8 F.4th 1198, 1205 (11th Cir. 2021). The Florida State Board of Education oversees enforcement of LCSB's compliance with subsection 3. Id. ¶ 47. LCSB risks the Florida Legislature withholding funds or declaring LCSB ineligible for competitive grants if it does not comply with Subsection 3. Id. ¶ 49.

However, Doe admits it is ultimately the Commissioner of Education that *determines* whether there is probable cause of a violation of subsection 3 occurred and that the Florida Department of Education's Office of Professional Practice Services that *pursues* any disciplinary actions. Am. Compl. ¶ ¶ 41. Furthermore, Doe acknowledges that the Education Practices Commission imposes penalties on a teacher for violating subsection 3. Id. ¶ 45. Thus, LCSB does not have the ultimate decision-making authority regarding the enforcement and penalties imposed for violating Subsection 3.

Despite no action by LCSB, Doe alleges four counts against LCSB for (i) Discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, 42, U.S.C. s. 2000e-2 (Count 4), (ii) Deprivation of Speech in violation of the First and Fourteenth Amendments of the U.S. Constitution (Count 9), (iii) Deprivation of Equation Protection in violation of the Fourteenth Amendments of the U.S.

Constitution (Count 12), and (iv) Discrimination based on sex in violation of Title IX of the Education Amended of 1972, 20 U.S.C. s. 1681 (Count 15).

Each count is a reiteration of the same allegations that by LCSB carrying out state law, LCSB would be discriminating against Doe in violation of Title VII & Title IX or would deprive Doe of her First Amendment rights and to equal protection in violation of § 1983. *See* Am. Compl. ¶¶ See Doc. 56 at ¶¶ 145, 194, 223, 238. Each of Doe's claims and legal theories all require the same legal element, that some action by LCSB caused Doe's harm, and all fail accordingly.

## ARGUMENT

I. **Plaintiff Doe fails to sufficiently allege under section 1983 a LCSB policy that deprived Doe's Constitutional rights**.

Doe fails to identify a single independent LCSB-policy or action that deliberately infringes on Doe's constitutional rights. Doe merely points to LCSB Policy 3139,[2] which requires *employees* to report to the Department of Education any matter that has potential "grounds for discipline or dismissal set forth in *Florida statutes*." Doe attempts to use this broad mandatory reporting rule to draw the unreasonable inference that – because LCSB must report Subsection 3 violations and

---

[2] "All legally sufficient complaints against a member of the instructional staff *shall be reported* to the Department of Education within thirty (30) days after the date on which the subject matter of the complaint comes to the attention of the School Board or the office of the Superintendent. A complaint is legally sufficient for reporting if the subject matter of the complaint includes any of the grounds for discipline or dismissal set forth in Florida statutes.

Subsection 3 allegedly violates Doe's rights - then LCSB, as an intermediary, violated Doe's rights.

It is not enough to impose liability on a school district under § 1983 by merely identifying some board action was taken. A municipality can only be sued directly under § 1983 when one of *its* customs, practices, or policies *causes a constitutional injury*. *Barnett v. MacArthur,* 956 F.3d 1291, 1296 (11th Cir. 2020); *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691 (1978); *and Bradberry v. Pinellas County*, 789 F.2d 1513, 1515 (11th Cir. 1986). A plaintiff must also show that the action was taken with *deliberate indifference* to its known or obvious consequences. *Davis v. DeKalb Cty. Sch. Dist*., 233 F.3d 1367, 1375 (11th Cir. 2000). And a plaintiff must allege that a "policy or custom" of the *local government* was the "moving force" behind any alleged constitutional deprivation. *Id*.

Subsection 3 was drafted by the Florida Legislator, enacted by the Florida Governor, and would be enforced by the Florida Board of Education. The mere action of an LCSB employee reporting a potential violation of Subsection 3 is insufficient to impose liability. A municipal body is only liable for its *own* violations of constitutional rights and is not vicariously liable for the injuries caused by those acting on its behalf. *Monell v. Dep't of Soc. Services of City of New York,* 436 U.S. 658, 691 (1978). It is not enough to impose liability on a school district under § 1983 to identify conduct properly attributable to a board employee; nor merely that some

board action was taken without the requisite degree of culpability, i.e., that board action was taken with deliberate indifference to its known or obvious consequences. *Davis,* 233 F.3d at 1375 (holding that a plaintiff must specifically identify the policy or custom causing the injury).

LCSB does not determine whether a violation occurs. As Doe admitted, the Florida Department of Education is the ultimate authority determining whether a violation occurred and the penalty it will impose. LCSB can not be liable under § 1983, where the Florida Department of Education, not LCSB, is the final policymaker. *See Eisenberg v. City of Miami Beach*, 13-23620-CIV, 2014 WL 12513594, at *3 (S.D. Fla. Dec. 16, 2014)( Plaintiffs did not allege nor show the existence of a City policy or custom of enforcing fire safety regulations in retaliation for persons exercising their First Amendment freedom of expression.).

The Eleventh Circuit has "consistently recognized and given effect to the principle that a municipal official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Scala v. City of Winter Park*, 116 F.3d 1396, 1401 (11th Cir. 1997) (citations omitted); see also *Maschmeier v. Scott*, 269 Fed.Appx. 941, 944 (11th Cir. 2008) ("[T]he existence of a reviewing board has generally been sufficient to find that the official in question did not have final policymaking authority." (alteration added; citations omitted)). Accordingly, Doe fails to allege sufficient

facts that LCSB Policy 3139 would be enforced by LCSB with deliberate indifference to Doe's rights and caused Doe's alleged injuries to impose liability on LCSB.

Furthermore, Subsection 3 only applies when Doe is acting within the scope of her employment duties, despite Doe alleging that Subsection 3 restricts Doe's private speech. *See* Am. Comp. ¶187; Fla. Stat. §1000.071(6). Doe's assertion that she enjoys unfettered "free speech rights while at work, including in the classroom and during work hours" (Am. Compl. ¶185) contradicts well-established law. "While it is true that rights protected by the First Amendment are not magically lost when one steps upon school property, neither teachers, students, nor anyone else has an absolute constitutional right to use all parts of a school building for unlimited expressive purposes." *McCall v. State*, 354 So. 2d 869 (Fla. 1978).

Public school teachers voluntarily waive certain Constitutional rights when acting in their educational capacity. Teachers are government employees paid in part to speak on the government's behalf and convey its intended messages, and an employee may not "deliver any message to anyone anytime they wish." *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. 507, 527 (2022) Thus, if a public employee speaks pursuant to their official duties, the "Free Speech Clause generally will not shield the individual from an employer's control and discipline because that kind of speech is— for constitutional purposes at least—the government's own speech." *Id*. 951. "In

matters pertaining to the curriculum, educators have been accorded greater control over expression than they may enjoy in other spheres of activity." *Virgil v. Sch. Bd. of Columbia Cnty.*, Fla., 862 F.2d 1517, 1520 (11th Cir. 1989). This is particularly true when it comes to School's ability to reasonably control the *content* of its curriculum. *See Bishop v. Aronov*, 926 F.2d 1066, 1074 (11th Cir. 1991)(saying, "Dr. Bishop's interest in academic freedom and free speech do not displace the University's interest inside the classroom… [w]e find that the University's interests in the classroom conduct of its professors are sufficient.").

Thus, Doe fails to allege a violation of her free speech rights because "restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a *private citizen.*" *See Burt v. Fuchs,* 1:22CV75-MW/HTC, 2023 WL 4103942, at *5 (N.D. Fla. June 21, 2023)( quoting *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006)) (emphasis added). It simply "reflects the exercise of employer control over what the employer itself has commissioned or created." *Id*. Doe fails to allege any connection between using her preferred pronouns and speaking on a *public matter. See Pickering v. Bd. of Ed. of Tp. High Sch. Dist.* 205, Will Cnty., Illinois, 391 U.S. 563 (1968).

> II. **Plaintiff Doe fails to state a claim that LCSB violated her rights under Title VII & Title IX because no discriminatory animus by LCSB is alleged.**

Title VII prohibits discrimination with respect to terms and conditions of a person's employment based on the employee's sex. *Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999). Absent from Doe's claims are any allegations that LCSB took any action to enforce Subsection 3 or otherwise held any animus against Doe. In fact, Doe concedes that before the enactment of Subsection 3, LCSB was 'supportive of her transgender status and female gender identity and expression. It updated its records to reflect her new name and female gender. It allowed her to go by Ms. Doe and she/her pronouns.' Am. Compl. ¶96. Instead, merely points to Subsection 3 to support her Title VII & Title IX[3] claims against LCSB.

In other words, Doe wants to impose liability on LCSB by attributing any alleged discriminatory animus by the drafters of Subsection 3 to LCSB but does not point to any action by LCSB. See Am. Compl. ¶¶ 30, 31. Doe relies on unreasonable factual deductions and legal conclusions masquerading as facts to derive that LCSB held an animus purely from the enactment of Subsection 3. However, to establish a Title VII violation, Doe must allege sufficient facts that show a causal link between the *LCSB's* discriminatory animus towards her and significant change in the terms or conditions of employment. *Stimpson*, 186 F.3d at 1331.[4] As Doe fails to make such allegation, no reasonable inferences can be drawn that any discriminatory

---

[3] Title VII preempts Doe's Title IX claims. *See Schultz v. Bd. of Trs. Of Univ. of W. Fla.*, 2007 WL 1490714, at *2 (N.D. Fla. May 21, 2007).
[4] The Eleventh Circuit applies Title VII case law to assess Title IX claims. *See Bowers v. Bd. of Regents of Univ. Sys. of Georgia*, 509 F. App'x 906, 910 (11th Cir. 2013).

animus by LCSB was the causal link to a significant change to the terms or conditions of Doe's employment.

Nor has Doe suffered an adverse employment action. Doe is still employed with LCSB. Doe does not allege that LCSB disciplined her for violating Subsection 3 or has otherwise taken action to make Doe comply with Subsection 3. Doe claims an adverse employment action she may experience (but not from LSCB) from the enforcement of Subsection 3, which she says would "disrupt her classroom and her ability to do her job" but fails to explain how this could be. Am. Compl. ¶100.

Adverse employment actions are those actions that affect *continued employment or pay*. *Davis v. Legal Servs. Ala., Inc.,* 19 F.4th 1261, 1266 (11th Cir. 2021) (per curiam). Doe alleges neither a change in employment nor pay by the LCSB in her Complaint. While Subsection 3 may cause Doe to be "emotionally" harmed (Am. Compl. ¶100), it does not affect her employment. Regardless, "not everything that makes an employee unhappy is an actionable adverse action," *Doe v. Dekalb Cnty. Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir. 1998), and Doe's "subjective view of the significance and adversity of the employer's action is not controlling," *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1204 (11th Cir. 2013).

Doe's bare allegations against LCSB rely on some uncertain future report by an unknown LCSB employee of potential violations of Subsection 3 causing a hypothetical injury to Doe. Nevertheless, the causal link between any alleged animus

and Doe's hypothetical future injuries is broken by the Department of Education's independent decision to find Doe violated Subsection 3. *See Stimpson*, 186 F.3d at 1331. Again, LCSB does not determine whether a violation occurs or its penalty.

The mere reporting of potential violations of Subsection 3 by LCSB members and employees "does not constitute" actionable discrimination under Title VII or Title IX. *Id.* (finding that a City's recommendation that the Board terminate the plaintiff employee did not constitute a change in the terms or conditions of employment absent a sufficient causal link between the termination and the discriminatory animus behind the recommendation.). No causal link is alleged, nor does Doe attempt to justify how any LCSB action caused her harm to support her Title VII & Title IX claims.

## **CONCLUSION**

Even accepting all well-pleaded facts as true and drawing all reasonable inferences, Doe failed to plead that an LCSB action or policy caused any redressable injury. Doe's allegations unambiguously contend that Subsection 3, drafted and passed by the Florida legislature and enforced by the Department of Education, is the moving force for Doe's alleged deprivation of constitutional rights. For all the foregoing reasons, Lee County School Board requests that this Court dismiss Counts 4, 9, 12, and 15 of the Amended Complaint with prejudice and grant such other and further relief this Court deems just and proper.

## CERTIFICATE OF WORD COUNT

The undersigned certifies that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 2,375 words, excluding the parts exempted by said Local Rule.

        Respectfully submitted,

        *s/ James D. Fox*
James D. Fox
Florida Bar No. 689289
Roetzel & Andress, LPA
999 Vanderbilt Beach Rd., Suite 401
Naples, FL  34108
(239) 649-6200
jfox@ralaw.com
serve.jfox@ralaw.com
*Attorneys for Defendant, Lee County School Board*

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2024 this document was electronically transmitted to the Clerk of Court via the CM/ECF system, which will send notice of electronic filing to all counsel of record.

        *s/ James D. Fox*
James D. Fox