# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

Katie Wood *et al.*,

       *Plaintiffs*,

v.          No. 4:23-cv-00526-MW-MAF

Florida Department of Education *et al.*,

       *Defendants*.

_____/

### PLAINTIFF KATIE WOOD'S RESPONSE IN OPPOSITION TO DEFENDANT SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Defendant School Board of Hillsborough County, Florida's ("Hillsborough") Motion to Dismiss, Doc. 62, Plaintiff Katie Wood's claims against it in the First Amended Complaint, Doc. 56, takes the extraordinary and legally unsupported position that it is immune from suit for violating federal law if it is following contrary state law. But federal law and the federal constitution are the supreme law of the land. U.S. Const. art. VI cl. 2 (Supremacy Clause). "[A] state law at odds with a valid Act of Congress is no law at all." *Barber ex rel. Barber v. Colorado Dep't of Revenue*, 562 F.3d 1222, 1234 (10th Cir. 2009) (Gorsuch, J. Concurring) (citing *M'Culloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819)). Hillsborough's "rel[iance] on [its] compliance with discriminatory state laws … prov[es its] own liability,

1

[instead of] … shielding [itself] from it." *Id.* It also argues that it is not liable on Ms. Wood's constitutional claims under 42 U.S.C. § 1983 because its decision to enforce subsection 3 by forbidding Ms. Wood from providing students her pronouns and title was not discretionary under state law and hence does not constitute a municipal policy. But subsection 3 does not require Hillsborough to do so. Instead, subsection 3 requires it only to relay complaints about her failure to comply to the state. Hillsborough is responsible under § 1983 for its discretionary policy decision to proactively enforce the law.[1]

## **ARGUMENT**

## I.     **Hillsborough is liable for violating Title VII and Title IX, even if it does so in compliance with state law.**

Hillsborough does not deny Ms. Wood has alleged that it forbade her, unlike teachers whose sex Florida deems to be female, from providing students with the title "Ms." and she/her pronouns. Doc. 62 at 7–8; *see also* Doc. 56 ¶¶ 81–82. Instead, it argues that it was only following a policy set by state law and that even if subsection 3 violates federal law it cannot be sued. Doc. 62 at 7–9. This theory deeply misapprehends what courts do:

> [A]n argument of this stripe reflects a serious misunderstanding. A person aggrieved by the application of a legal rule does not sue the rule

---

[1] Hillsborough has not joined or raised any of the substantive arguments for dismissal in other Defendants' motion to dismiss and therefore Ms. Wood does not address the merits of her claims here. To the extent those arguments are nonetheless relevant to this motion, Plaintiffs incorporate by reference their opposition to those motions.

> maker—Congress, the President, the United States, a state, a state's
> legislature, the judge who announced the principle of common law. He
> sues the person whose acts hurt him …. Every day courts consider the
> validity and application of statutes in cases between private parties; that
> is why 28 U.S.C. § 2403 and Fed. R. Civ. P. 24(c) provide for notice to
> state and federal governments, so that they may intervene or appear as
> amici curiae to defend their handiwork.

*Quinones v. City of Evanston*, 58 F.3d 275, 277 (7th Cir. 1995). Indeed, as the court

went on to note, if Hillsborough's logic were correct, *Brown v. Board of Education*

*of Topeka,* 347 U.S. 483 (1954), should have been captioned "*Brown v. State of*

*Kansas*—for state rather than local law required segregation of the races." *Id.* The

Eleventh Circuit has held the same: "A discriminatory state law is not a defense to

liability under federal law; it is a source of liability under federal law." *Campbell v.*

*Universal City Dev. Partners, Ltd.*, 72 F.4th 1245, 1258 (11th Cir. 2023) (citing

*Quinones*, 58 F.3d at 277; *see also Richardson v. Alabama State Bd. of Educ.*, 935

F.2d 1240, 1246–47 (11th Cir. 1991) (title VII defense under state law not valid if it

conflicts with federal law (citing *Int'l Union, United Auto., Aerospace & Agr.*

*Implement Workers of Am., UAW v. Johnson Controls, Inc.*, 499 U.S. 187, 209

(1991) ("When it is impossible for an employer to comply with both state and federal

requirements, this Court has ruled that federal law pre-empts that of the States."))).

Hillsborough's effort to dress up this argument as one of redressability, Doc.

62 at 6 ("there is no redress available from HCSB"), is even less convincing. If Ms.

Wood prevails on her claims, the Court can order Hillsborough to permit Ms. Wood

to use her pronouns and title. Courts, including this one, routinely enjoin local governments from following state laws which conflict with federal law. *See, e.g., Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641 F. Supp. 3d 1218, 1291–92 (N.D. Fla. 2022) (enjoining, among others, boards of governors of state universities from enforcing state law).

Indeed, it is *only* by suing Hillsborough that Ms. Wood can receive complete relief. Courts enjoin parties, not laws. Even if Ms. Wood obtained an injunction against the State Defendants preventing them from enforcing subsection 3, that would not necessarily prevent Hillsborough from continuing to impose its requirements on Ms. Wood as it has argued it is compelled to do. *See  Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236, 1255 (11th Cir. 2020) ("federal courts have no authority to erase a duly enacted law from the statute books," but instead can only "enjoin executive officials from taking steps to enforce a statute" (quoting Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 936 (2018))). Hillsborough's redressability argument also ignores Ms. Wood's claim for damages entirely.

Hillsborough also argues that it is "hypothetical" that they might fire Ms. Wood for violating this policy requiring her to comply with subsection 3. Doc. 62 at 9. But she has alleged that it has adopted a policy of requiring her to comply with subsection 3, and that alone can constitute discrimination as Plaintiffs have argued

in their opposition to the State Defendants' Motion to Dismiss. Moreover, it is at least plausible that if she violates that District policy she will in fact be fired or otherwise subjected to an adverse employment action. And, in any event, Hillsborough does not deny that, as Ms. Wood explained in her motion for preliminary injunction, Doc. 11 at 16–18, being forced to avoid using her title and pronouns constitutes an adverse employment action.

Finally, Hillsborough repeatedly argues that Ms. Wood has not shown "animus" because its actions are due to state law, Doc. 62 at 6–9, but animus is not an element of her facial discrimination claims under either Title VII or Title IX. *See* 42 U.S.C. § 2000e-2; 20 U.S.C. § 1681. Animus is a *means* of showing discriminatory intent, but no such evidence is needed when a policy discriminates on its face. *See Johnson Controls, Inc.*, 499 U.S. at 199 ("Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination."); *Bostock v. Clayton Cnty.*, 590 U.S. 644, 661 (2020) ("intentional discrimination based on sex violates Title VII, even if it is intended only as a means to achieving the employer's ultimate goal"); *In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1460–61 (11th Cir. 1990) (explaining that the only way for employers to escape liability for facially discriminatory policies is an affirmative defense that the

disparate treatment is due to a bona fide occupational qualification).

## II.    Hillsborough is liable on Ms. Wood's § 1983 claims because of its municipal policy decision to enforce subsection 3.

Hillsborough is correct that to bring a claim under § 1983, Ms. Wood must show that a "municipal policy" caused her injury. Doc. 62 at 5, 9–12; *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 691–94 (1978). Ms. Wood has identified such a policy—the District's directive that she comply with subsection 3's unconstitutional requirements. Doc. 56 ¶¶ 81–82.

Hillsborough does not argue that this policy was not adopted by final policymakers or otherwise is not an action of the District itself. Doc. 62 at 9–12. Hillsborough instead repeats its argument that it had no choice but to act as it did given state law and argues that consequently, for *Monell* purposes, it did not make a policy choice. But nothing in subsection 3 *requires* it to proactively enforce the law and its "decision to enforce [an unconstitutional state statute] constituted a deprivation of constitutional rights sufficient for § 1983 liability." *Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005). The Eleventh Circuit went on to explicitly reject the reasoning of the line of cases from the Seventh Circuit[2] which Hillsborough relies on:

> [W]e reject Dillon's argument that, based on the reasoning in *Surplus Store & Exchange, Inc. v. City of Delphi*, 928 F.2d 788, 791 (7th Cir.

---

[2] Hillsborough cited *Bethesda Lutheran Homes & Servs., Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998) but that case followed *Surplus Store*.

1991), Key West cannot be liable for enforcing an unconstitutional state statute which the municipality did not promulgate or adopt. First, § 1983 liability is appropriate because Key West did adopt the unconstitutional proscriptions … as its own. … [Defendant's] decision to enforce an unconstitutional statute against [plaintiff] constituted a "deliberate choice to follow a course of action ... made from among various alternatives by the official or officials responsible for establishing final policy."

*Id.* at 1222–23 (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)); *see also Barnett v. MacArthur*, 956 F.3d 1291, 1298–99 (11th Cir. 2020) ("the fact that [state law] permits holding a DUI arrestee for up to eight hours does not immunize" sheriffs' policy of doing so "from constitutional scrutiny"). Other courts to consider the question have similarly held that municipalities can be held liable under § 1983 where they decide to apply an unconstitutional state law. *See Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty.*, 854 F. App'x 521, 530 (4th Cir. 2021) (collecting cases).

Hillsborough also relies on an Eleventh Circuit decision in which a plaintiff asked a federal court to order local governments not to follow what they believed to be overly-broad state court injunctions limiting their ability to protest abortion clinics. *McKusick v. City of Melbourne*, 96 F.3d 478, 483–84 (11th Cir. 1996). But, in fact, while the district court in *McKusick* adopted that theory, the Eleventh circuit did not rule on it either way because the plaintiff challenged the city's enforcement beyond the injunction rather than its compliance with it. *Id.* at 484–86. Indeed, there was no question that the injunction was valid because it had been approved by the

United States Supreme Court. *Id.* at 485 (citing *Madsen v. Women's Health Ctr., Inc.*, 512 U.S. 753, 761 (1994)).

Hillsborough argues that it has no discretion about whether to permit Ms. Wood to use her pronouns and title in class. But while it is possible that the state will act against Hillsborough if it does not affirmatively require its employees to comply with subsection 3, nothing in subsection 3 explicitly requires it to do so and Hillsborough would not be violating any state statute or regulation if it did not. Instead, Ms. Wood alleged that if she violates subsection 3 and someone makes a complaint about it, then state law requires Hillsborough to relay that complaint to the state. Doc. 56 ¶ 40. The superintendent is also required to make complaints when he is aware of violations of state law. *Id.* Ms. Wood also alleged that the State Board of Education has the power to enforce subsection 3. *Id.* ¶¶ 48-51. But nothing in subsection 3 requires Hillsborough to discipline or fire Ms. Wood if she violates subsection 3, nor does it require Hillsborough to take action to prohibit her from using her title and pronouns. It could allow her to violate the law if she wished and then report her to the state if she did so.

Conversely, if Ms. Wood succeeds in enjoining all State Defendants from enforcing subsection 3, that injunction would not bind Hillsborough and would therefore not stop it from continuing to bar Ms. Wood from using her pronouns and title. Hillsborough has taken the discretionary step of choosing to enforce the law

against Ms. Wood itself, which, in this circuit, subjects it to liability under *Monell*. *See Cooper*, 403 F.3d at 1222; *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1290 (11th Cir. 2004) (school district's choice to require flag salute was a policy under *Monell* because it went beyond precise requirements of state law).

Finally, even if Hillsborough was correct that it lacked discretion, that would absolve it only of liability for damages, not immunize the school board in its official capacity and/or its employees from liability. As the Seventh Circuit, which has taken the broadest position about the scope of a state law's limitation of *Monell* liability, has explained, "when a municipal employee carries out a policy established by state law … liability fall[s] on the employee personally, on the ground that the municipality is not the author of the policy the employee implements[.]" *Quinones*, 58 F.3d at 278. In addition, if local government employees truly have no discretion, then they are arms of the state, *see Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999) ("Where county officials are sued simply for complying with state mandates that afford no discretion, they act as an arm of the State."), and hence can be sued in their official capacities. Therefore, if the Court concludes that Ms. Wood has not adequately pled a municipal policy, she respectfully requests leave to amend to substitute the required individual(s).

## CONCLUSION

For the foregoing reasons, Ms. Wood respectfully requests that Defendant

Hillsborough County, Florida, School Board's Motion to Dismiss be denied.

 Respectfully submitted.

February 26, 2024

/s/ *Carli Raben*
Sam Boyd, Fla. Bar No. 1012141
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher[*][†]
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
[†] *Not admitted to practice law in DC*

Diego A. Soto[*][‡]
Jessica L. Stone[*]
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 521-6700
(404) 377-0708 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org
[‡] *Admission to GA pending*

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.

Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg[*]
James Baltzer[*]
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice

## CERTIFICATE OF WORD COUNT

The Undersigned certifies that this Response, inclusive of footnotes, contains 2,386 words according to the word-processing system used to prepare the memorandum.

February 26, 2024

/s/ *Carli Raben*
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
carli.raben@splcenter.org