UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Katie Wood *et al.*,

        *Plaintiffs*,

v.                                                            No. 4:23-cv-00526-MW-MAF

Florida Department of Education *et al.*,

        *Defendants*.
_____/

**PLAINTIFF AV SCHWANDES'S RESPONSE IN OPPOSITION TO DEFENDANT FLORIDA VIRTUAL SCHOOL BOARD OF TRUSTEES'S PARTIAL MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Defendant Florida Virtual School Board of Trustees' ("FLVS") Partial Motion to Dismiss, Doc. 64, Plaintiffs' First Amended Complaint ("Complaint"), Doc. 56, seeks only dismissal of Mx. Schwandes's Title IX claim (Count 16), and as to the Title VII discrimination (Counts 5 & 6), claims for monetary damages. Importantly, FLVS did not move to dismiss Mx. Schwandes's Title VII retaliation claim (Count 17) in whole or part. And, except as to remedies, FLVS did not move to dismiss Mx. Schwandes's Title VII discrimination claims.

Mx. Schwandes alleges FLVS illegally discriminated against them on the basis of sex under Title VII and Title IX for enforcing subsection 3 against them, including denying them from using non-gendered titles and pronouns, suspending

1

them, and ultimately terminating their employment. They also allege an additional Title VII claim that, after they filed a charge with the Florida Commission on Human Relations, FLVS retaliated and revoked its permission for Mx. Schwandes to use the non-gendered title Professor and illegally terminated their employment. FLVS also argues that Mx. Schwandes lacks standing to seek injunctive relief against it, which they do not dispute.

## BACKGROUND

Mx. Schwandes is a nonbinary person; they were assigned female at birth, but their gender identity is neither male nor female. Doc. 56 ¶ 103. FLVS employed Mx. Schwandes as a public-school teacher from July 19, 2021, until October 24, 2023. *Id.* ¶ 104. From 2021 through June or July 2023, Mx. Schwandes used both the titles Professor and Mrs. *Id.* ¶ 105. Starting in June or July 2023, Mx. Schwandes began to use Mx. and they/them pronouns at work. *Id.* ¶ 105. On August 28, 2023, after subsection 3's enactment, FLVS told Mx. Schwandes they could no longer use Mx. or Professor titles. *Id.* ¶¶ 106–08. Mx. Schwandes filed charges of employment discrimination against FLVS with the Florida Commission on Human Relations and the EEOC. *Id.* ¶ 110. When Mx. Schwandes continued to use the Mx. title, FLVS suspended and then fired them for violating subsection 3. *Id.* ¶¶ 107, 109.

# ARGUMENT

## I. Plaintiff Schwandes states a Title IX claim.

The logic of Mx. Schwandes's Title IX claim tracks that of their Title VII claim, which FLVS does not challenge but which Mx. Schwandes has addressed at more length in their response to State Defendants' motion to dismiss. Doc. 67 at 4–21. Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Courts "must accord it a sweep as broad as its language." *N. Haven Bd. of Ed. v. Bell*, 456 U.S. 512, 521 (1982) (quoting *United States v. Price*, 383 U.S. 787, 801 (1966)).

Title IX claims are analyzed under the framework for Title VII claims. *See, e.g.*, *Kocsis v. Fla. State Univ. Bd. of Trs.*, 788 F. App'x 680, 686 (11th Cir. 2019); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 n.7 (11th Cir. 2013). Subsection 3 discriminates against Mx. Schwandes because it is based on impermissible sex stereotypes and treats them differently on the basis of sex. "Title VII bar[s] not just discrimination because of biological sex, but also gender stereotyping—failing to act and appear according to expectations defined by gender." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011) (discussing agreement of six Justices in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). "All persons,

3

whether transgender or not, are protected from discrimination on the basis of gender stereotype." *Id.* at 1318; *see also id.* at 1318 nn.6–7 (citing Title VII cases as examples); *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 884 (11th Cir. 2016) (citing *Glenn* in a Title VII case). Subsection 3's prohibition on Mx. Schwandes's use of Mx. rests entirely on such stereotypes about individuals assigned female at birth. It is a sex stereotype to assume that someone like Mx. Schwandes would use titles like Ms. and pronouns like she and her merely because they are deemed to have biological characteristics of the female sex.

Mx. Schwandes also states a Title IX claim because subsection 3 discriminates on the basis of sex by prohibiting them from using non-gendered titles and pronouns while allowing other employees to use those pronouns. If Mx. Schwandes had one of the intersex conditions listed in Fla. Stat. §1000.071(1), they would be exempt from the entire Section and hence free to use the title Mx. and they/them pronouns (as some, but not all, intersex people do). But because under the law FLVS deems their sex to be female and because Mx. Schwandes does not have the sex characteristics of intersex people,[1] they cannot. This is discrimination on the basis of sex. *See EEOC v. R.G. &. G.R. Harris Funeral Homes*, 884 F.3d 560, 575 n.4

---

[1] The fact that Florida's law discriminates between intersex people and others like Mx. Schwandes on the basis of sex is confirmed by the statute itself, which defines an employee's "sex" as determined by their "sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth," and similarly identifies intersex people by reference to genetic, biochemical, chromosomal, and genital characteristics. Fla. Stat. §§1000.21(9), 1000.071(1).

4

(6th Cir. 2018) ("[D]iscrimination because of a person's … intersex, or sexually indeterminate status is no less actionable than discrimination because of a person's identification with two religions, an unorthodox religion, or no religion at all."). FLVS's argument that Mx. Schwandes cannot "show how they were treated differently on the basis of biological sex," is therefore wrong. Doc. 64 at 10 (citing *Adams ex rel. Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 4th 791, 811–15 (2022)). For the same reason, FLVS's argument that Mx. Schwandes cannot prevail because Title IX does not reach discrimination based on gender identity is irrelevant—Mx. Schwandes rests their claim on subsection 3's discrimination based on sex.

FLVS cites *Doe v. Ladapo* for the proposition that subsection 3 "does not draw a line based on sex." Doc. 64 at 11 (citing *Doe v. Ladapo*, No. 4:23-cv-114, 2023 WL 3833848, at *8 (N.D. Fla. June 6, 2023)). But that case was not about subsection 3 and, in any event, held that the challenged statute *did* distinguish based on sex. *Ladapo*, 2023 WL 3833848, at *8. FLVS also cite *Eknes-Tucker v. Governor of Alabama*, Doc. 64 at 11, but there the Eleventh Circuit specifically distinguished the law before it from the *Bostock* and *Brumby* line of cases "concern[ing] gender stereotyping in the context of employment discrimination." 80 F.4th 1205, 1229 (11th Cir. 2023).

FLVS also argues that Title IX is preempted by Title VII. Doc. 64 at 8–10. Mx. Schwandes incorporates by reference their argument on this claim in their

response to State Defendants' motion to dismiss. Doc. 67 at 49–50.

## II. Plaintiff Schwandes states entitlement to monetary damages against FLVS for violations of Title VII and Title IX.

Pursuant to their Title VII and IX claims, Mx. Schwandes seeks compensatory damages, back pay, front pay, and nominal damages. Doc. 56 at 61–62. FLVS argues that Mx. Schwandes is precluded from recovering monetary damages resulting from its compliance with Florida law. Doc. 64 at 13–14. FLVS's argument is not appropriate at the pleadings stage. "[O]nly claims for relief are subject to dismissal, not the relief itself." *Fla. Action Comm., Inc. v. Seminole Cnty.*, 212 F. Supp. 3d 1213, 1229 (M.D. Fla. 2016) (citing *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002)); *see also Pucci v. Carnival Corp.*, 146 F. Supp. 3d 1281, 1293 (S.D. Fla. 2015) ("[A] motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) applies to 'claims,' not to requests for a certain type of damages that are 'merely the relief demanded as part of a claim.'" (citation omitted)). Nor is it appropriate to strike Mx. Schwandes's prayer for relief. *See Clay v. Showntail the Legend, LLC*, No. 5:20-cv-124, 2020 WL 10727983, at *3 (N.D. Fla. Sept. 11, 2020) ("[T]he dispute has not been adjudicated, therefore it would be premature to strike a prayer for attorney's fees which may ultimately be available."); *see also Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 976 (9th Cir. 2010) ("We hold that Rule 12(f) … does not authorize a district court to dismiss a claim for damages on the basis it is precluded as a matter of law.").

As to the merits, this argument misstates both the law and Plaintiffs' allegations. First, FLVS went beyond the requirements of subsection 3. Mx. Schwandes agrees that FLVS was required by state law to report them to the Florida Department of Education or relay others' complaints if they violated subsection 3. Doc. 56 ¶¶ 40, 48–51, 68. But FLVS did far more, barring them from using the title Professor, though that had been permitted previously and was not barred by subsection 3, requiring them to use the title Ms., and first suspending then firing them when they did not comply. *Id.* ¶¶ 106–09.

FLVS's legal argument that compliance with state law immunizes it from damages claims under Title VII and Title IX relies on *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 254 (5th Cir. 1974). Doc. 64 at 14. *Pettway* was a race discrimination case and hence did not involve sex discrimination required by a state statue. *Pettway*, 494 F.2d at 217. But, in dicta, it observed that the "'special circumstances' where an unjust result has prevented an award of back pay" include "sex discrimination suits where conflicting state legislation, which limit work hours or impose weightlifting limits or the like for female employees, require a practice in violation of Title VII." *Id.* at 254; *but see Stryker v. Register Pub. Co.*, 423 F. Supp. 476, 479 (D. Conn. 1976) ("[T]he bare existence of a state protective law does not immunize an employer from liability for back pay under Title VII."); *George v. Riceland Foods, Inc.*, No. LR-75-C-234, 1979 WL 15402, at *5 (E.D. Ark. Mar. 5,

1979) (holding that "compliance with state statute, alone, will not bar an award of back pay").

Within a year, though, the Supreme Court rejected the "special circumstances" approach,[2] finding that where a court finds unlawful discrimination, "backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 421 (1975); *see also Johnson v. Goodyear Tire & Rubber Co.*, 491 F.2d 1364, 1377 (5th Cir. 1974) ("In sum, we feel that an employer's alleged reliance on the unsettled character of employment discrimination law as a defense to back pay is unpersuasive."). Post-*Albemarle*, the Eleventh Circuit has not applied the "special circumstances" to Title VII back pay considerations.[3] And to the extent the pre-*Albemarle* string of cases cited in *Pettway* are still good law, the narrow exception does not apply here. The cases cited in *Pettway* all involved state "female protective" laws that pre-dated and conflicted

---

[2] The "special circumstances" approach came from *Newman v. Piggie Park Enterprises, Inc.*, a Title II of the Civil Rights Act of 1964 case concerning a court's discretion to award attorney's fees. 390 U.S. 400 (1968). The Supreme Court found the case was "not directly [o]n point," looking instead to Title VII's statutory scheme and legislative history to divine a court's discretion in awarding back pay and noting, "as to the granting and denial of backpay," courts must "look elsewhere." *Albemarle Paper Co.*, 422 U.S. at 415.

[3] Nor did the Fifth Circuit apply "special circumstances" post-*Albemarle* through the division of the Fifth and Eleventh circuits.

with a recently-adopted Title VII. The same cannot be said about subsection 3, enacted long after Title VII, which facially discriminates against Plaintiffs on the basis of sex in violation of Title VII without any protective justification for the employee. Deterring enforcement of such a law does not "frustrate the central statutory purpose" of Title VII, it advances it.

**III. The First Amended Complaint is not a shotgun pleading.**

In a footnote, FLVS asserts that the Complaint is an impermissible shotgun pleading for two reasons: "(1) it contains conclusory and immaterial facts unrelated to FLVS incorporated by reference in the claims asserted against it, and (2) it contains a single demand for relief." Doc. 64 at 8 n.5. But FLVS does not specify which facts it considers "conclusory and immaterial" or "unrelated to FLVS." Nor does it explain why this supposed defect renders the Complaint so unclear that it "fail[s] to … give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015).

FLVS also does not cite any authority for the proposition that every cause of action in the Complaint or each defendant requires a separate prayer for relief. In any event, even to the extent such a requirement exists, it only requires dismissal if FLVS genuinely cannot determine what relief is requested against it. *See Reed v. City of Decatur*, No. 5:20-cv-00535, 2020 WL 4904191, at *7 (N.D. Ala. Aug. 20,

2020). Here, it should be clear that Mx. Schwandes is not seeking injunctive relief against FLVS because it is no longer their employer and they have not sought reinstatement.

## CONCLUSION

Plaintiff AV Schwandes respectfully requests that the Court deny Defendant Florida Virtual School Board of Trustees's motion to dismiss.

Respectfully submitted.

March 4, 2024

/s/ *Carli Raben*
Sam Boyd, Fla. Bar No. 1012141
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher[*†]
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
[†] *Not admitted to practice law in DC*

Diego A. Soto[*‡]
Jessica L. Stone[*]
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 521-6700

10

(404) 377-0708 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org
‡ *Admission to GA pending*

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg[*]
James Baltzer[*]
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice

## CERTIFICATE OF WORD COUNT

The Undersigned certifies that this Response, inclusive of footnotes, contains 2,295 words according to the word-processing system used to prepare the memorandum.

March 4, 2024 /s/ *Carli Raben*
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750

Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
carli.raben@splcenter.org