UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KATIE WOOD, et al.,

     Plaintiffs,                  Case No. 4:23-cv-526-MW/MAF

v.

FLORIDA DEPARTMENT OF
EDUCATION, et al.,

     Defendants.

_____/

## SCHOOL BOARD OF HILLSBOROUGH COUNTY, FLORIDA'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF WOOD'S AMENDED COMPLAINT

Defendant, the School Board of Hillsborough County, Florida ("HCSB"), pursuant to the Court's Order Amending Briefing Schedule (Doc. 49), files this reply in support of its motion to dismiss (Doc. 62) (the "Motion"). Notwithstanding the express allegations of the Amended Complaint (Doc. 56), in their Response in Opposition (Doc. 66) (the "Response"), Plaintiff Katie Wood materially changes legal theories by now arguing HCSB is liable under Title VII, Title IX, and § 1983 because HCSB forbade Plaintiff Wood from using female pronouns. Plaintiff Wood argues section 1000.071(3) imposes no such requirement upon HCSB, and thus, HCSB's purported actions were indeed the exercise of a discretionary policy. These arguments, which Plaintiff Wood raises in the Response, conflict with the express

allegations in Plaintiff Wood's Complaint. Moreover, the cases Plaintiff Wood relies upon actually support HCSB's position. Accordingly, Plaintiff Wood's claims against HCSB must be dismissed.[1]

## DISCUSSION

HCSB moves to dismiss Counts 3, 8, 11, and 14 of Plaintiff Wood's Amended Complaint. (Doc. 62.) As explained in the Motion, Plaintiff Wood fails to show a causal connection between any action of HCSB and Plaintiff Wood's alleged harms, and Plaintiff Wood fails to identify any HCSB policy giving rise to § 1983 liability. (*See id.* at 7–9, 9–12.) Nothing in Plaintiff Wood's *operative pleading* states a claim against HCSB—Plaintiff Wood rather seeks to hold HCSB liable for the actions of Florida's legislature and the State Defendants.

Now, Plaintiff Wood misleadingly argues that HCSB "does not deny Ms. Wood has alleged that it forbade her, unlike teachers whose sex Florida deems to be female, from providing students with the title 'Ms.' and she/her pronouns." (Doc. 66 at 2.) HCSB, of course, never expressly made such a denial because Plaintiff Wood never raised such an allegation. Instead, Plaintiff Wood only alleges that "**[s]ince subsection 3 became law** and Defendant Hillsborough County School Board policy [sic]," HCSB and its principal "**advised** Ms. Wood that she was no longer allowed

---

[1] Plaintiff Wood incorporates by reference Plaintiffs' response in opposition to the State Defendants' motion to dismiss. (*See* Doc. 66 at 2 n.1 & 4–5.) Accordingly, HCSB provides notice of joining the State Defendants' motion and reply, and arguments raised therein.

to go by Ms. because her sex is deemed male and that she instead could go by Mr.,
Teacher, or Coach." (Doc. 56 at ¶ 82 (emphasis added).) An inference that HCSB
informing Plaintiff Wood of a recently enacted statute amounts to a policy
determination of enforcing that statute, and thereby manufacturing the requisite
causal connection for Title VII, Title IX, and § 1983 liability, would be a material
alteration to Plaintiff Wood's pleading.

The only other "policy" Plaintiff Wood identifies in the Complaint is
Hillsborough County School Board Policy 3139. (*See* Doc. 56 at ¶¶ 59–61.) But
Policy No. 3139 does not mention subsection 3, pronouns, or any other claimed
grievance Plaintiff Wood alleges in the Amended Complaint:

> Any complaint against a member of the instructional staff
> shall be processed pursuant to Policy 9130, Public
> Complaints.
>
> All legally sufficient complaints against an instructional
> staff member who holds a Florida Educator's Certificate
> shall be reported to the Office of Professional Standards,
> who, in turn, will report such complaints to the
> Department of Education within 30 days after the date on
> which the subject matter of the complaint comes to the
> attention of the Board or the office of the Superintendent.
> A complaint is legally sufficient for reporting if the subject
> matter of the complaint includes any of the grounds for
> discipline or dismissal set forth in Florida statutes.
>
> It is the responsibility of all employees of the Board to
> promptly report to the Superintendent any complaint
> against a teacher that comes to the employee's attention
> and that includes grounds for the revocation or suspension
> of a teaching certificate.

> The willful failure by an employee of the Board to promptly report a complaint shall constitute cause for discipline of the employee as provided by Florida statutes, the Hillsborough County Teacher Tenure Act, and Board policy.
>
> F.S. 1012.795, 1012.796

Hillsborough Cnty. Sch. Bd. Pol'y 3139, *available at* https://web.hillsboroughschools.org/policymanual/detail/131 (last visited Mar. 11, 2024). Clearly, Policy No. 3139, adopted pursuant to sections 1012.795 and 1012.796, Florida Statutes, merely restates the legal obligations of HCSB. While Policy No. 3139 makes it "the responsibility of all employees to promptly report . . . any complaint against a teacher," only the "willful failure by an employee of **the Board** to promptly report a complaint shall constitute cause for discipline of the" **Board employee**. *Id.* (emphasis added). That is the entirety of Policy No. 3139.

Perhaps realizing there is nothing repugnant about this neutral policy of general applicability, Plaintiff Wood moves the goal posts by now arguing HCSB "has adopted a policy of requiring her to comply with subsection 3." (Doc. 66 at 4.) Again, Plaintiff Wood's Response argument is not what is alleged in the Amended Complaint, nor what Policy No. 3139 espouses. This is a transparent attempt to avoid meeting HCSB's legal authority head on, standing for the proposition that a municipality cannot be liable, in circumstances such as these, absent an affirmative exercise of discretion in an unconstitutional or federally impermissible manner.

To illustrate, Plaintiff misleadingly quotes *Quinones v. City of Evanston*, 58 F.3d 275 (7th Cir. 1995), in arguing the incorrectly broad position that a municipality is always liable for carrying out a state law. (*See* Doc. 66 at 2–3.) *Quinones* involved the violation of ADEA based on a city's refusal to provide pensions to firefighters 35 or older due to a rule adopted by the city's local government. 58 F.3d at 277. Far from lending support to Plaintiff Wood's position, the court in *Quinones* actually recognized liability is misdirected under the facts *sub judice*:

> Apparently the source of the City's confusion is a series of cases under 42 U.S.C. § 1983. According to *Monell v. Department of Social Services,* 436 U.S. 658, (1978), that law makes a city answerable for its own policies alone; it may not be held vicariously liable for the decisions of others. **What happens when a municipal employee carries out a policy established by state law**? Does the city have a "policy of following state law," making it liable for its employees' actions (if state law happens to violate federal statutes or the Constitution)? Or does liability fall on the employee personally, on the ground that the municipality is not the author of the policy the employee implements? **We have reached the latter conclusion**.
>
> **Under the ADEA, however**, a municipality is vicariously liable. If some rogue supervisor refuses to hire persons protected by the ADEA, or gives them lower salaries, the municipality—the "employer" under the Act—is liable even if the supervisor acted in the teeth of the city's policy.

*Quinones*, 58 F.3d at 278 (emphasis added).[2]

---

[2] Nor did the court in *Quinones* reject an argument similar to what HCSB raises here on the basis of – as Plaintiff Wood argues – *Brown v. Board of Education* not being styled *Brown v. State*

As one jurist aptly noted in a comprehensive summary of this area of law,

*Quinones* is of no help to Plaintiff Wood:

> [The court in *Quinones*] stated that no state may require a municipality to violate federal law. **Of course, if the court of appeals had meant that statement to be a universal rule, it would not have taken the position it did in *Surplus Store* and *Bethesda Lutheran* that municipalities cannot be held liable for enforcing a state law mandate**. In *Quinones*, the question was whether the rule of *Surplus Store* should be extended to the Age Discrimination in Employment. The court concluded that *Surplus Store* should not apply because employment discrimination statutes like the ADEA impose vicarious liability on employers. In other words, it is irrelevant under those statutes whether the municipality has an unlawful policy of its own; the only question is whether the employer (through its agents) violated the statute.
>
> ***Quinones* provides no reason to question the view that a municipality may not be held liable** under § 1981 **unless the municipality has a "policy" that is the "moving force" behind the constitutional violation**. Thus, I conclude that plaintiff's claim under § 1981 **fails for the same reason as her claim under § 1983, that plaintiff's constitutional injury was not caused by a policy of the school district**.

*N.N. ex rel. S.S. v. Madison Metro. Sch. Dist.*, 670 F. Supp. 2d 927, 943 (W.D. Wis. 2009) (emphasis added).

---

*of Kansas.* (Doc. 66 at 3.) The court instead made an inquiry of opposing counsel to this effect "[a]t oral argument." *Quinones*, 58 F.3d at 277.

75418321;1

Confusingly, Plaintiff Wood also cites *Cooper v. Dillon*, 403 F.3d 1208, 1222 (11th Cir. 2005), to incorrectly argue the "Eleventh Circuit . . . explicitly reject[ed] the reasoning . . . which Hillsborough relies on" here. (Doc. 66 at 7.) Yet the very block quote in Plaintiff Wood's Response makes clear the Eleventh Circuit imposed liability on the municipality because the municipality "did adopt [an] unconstitutional proscription[] . . . as its own . . . constitut[ing] a deliberate choice to follow a course of action . . . **made from among various alternatives**." (Doc. 66 at 7 (quoting *Cooper*, 403 F.3d at 1223 (emphasis added)).)

Indeed, as HCSB argues in its Motion (Doc. 62 at 10–11), this is why the Eleventh Circuit in *McKusick v. City of Melbourne*, 96 F.3d 478, 483 (11th Cir. 1996), overturned the district court's holding that a municipality's "enforcement of [an] injunction is not an actionable policy or custom under § 1983 . . . [because] [w]here a court enjoins local law enforcement to do something or refrain from doing something, compliance with the injunction is not a matter of choice." The Eleventh Circuit went on to list several alternative choices the municipality could have made in complying with the injunction—that is, various alternatives available to the city.

Here, Florida's legislature has decided "[a]n employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex." Fla. Stat. § 1000.071(3). The law also mandates that

"**[i]t shall be the policy** of every public K-12 educational institution . . . that a person's sex is an immutable biological trait and that it is false to ascribe to a person a pronoun that does not correspond to such person's sex." Fla. Stat. § 1000.071(1) (emphasis added). Thus, there can be no serious argument that HCSB adopted any sort of policy when it or its principal merely **advised** Plaintiff Wood of this State law; a policy that the State enforced on HCSB as much as it did on Plaintiff Wood. Likewise, there can be no causal link between any action HCSB took and Plaintiff Wood's claimed harms, as pleaded.

Finally, it is simply incorrect for Plaintiff Wood to claim HCSB would not violate subsection 3 by allowing Plaintiff Wood to use the title "Ms." or she/her pronouns because "nothing in subsection 3 explicitly requires it to [enforce subsection 3] and Hillsborough would not be violating any state statute or regulation if it did not." (Doc. 66 at 8.) To the contrary, "**[l]ocal educational authorities have a duty to fully and faithfully comply with state laws**, standards, and rules." Fla. Stat. § 1000.03(3) (emphasis added); *see also Dortch v. Alachua Cnty. Sch. Bd.*, 330 So. 3d 976 (Fla. 1st DCA 2021).

## CONCLUSION

Plaintiff Wood's Amended Complaint must be dismissed as to HCSB because it alleges no action by HCSB sufficient to state the claims pled. At bottom, and at most, Plaintiff Wood alleges: (1) Florida passed subsection 3 thereby preventing

Plaintiff Wood from using their preferred pronouns; (2) HCSB or its principal advised Plaintiff Wood of this law; and (3) subsection 3 in tandem with Policy No. 3139 violate Title VII, Title IX, and § 1983. In light of the aforementioned statutes and authority, both here and in HCSB's Motion, these allegations are insufficient to state a claim against HCSB. HCSB adopted no policy. HCSB took no action. And HCSB exercised no discretion. Plaintiff Wood cannot circumvent these deficiencies by arguing different "facts" in the Response. Accordingly, HCSB respectfully requests that Counts 3, 8, 11, and 14 be dismissed.

## CERTIFICATE OF WORD COUNT

The Undersigned certifies that this Response, inclusive of footnotes, does not exceed 2,060 words per the word-processing system used to prepare the memorandum.

Dated: March 11, 2024

/s/ Jason L. Margolin

**JASON L. MARGOLIN, ESQ.** (FBN 69881)
Email: jason.margolin@akerman.com
**Neema M. Monfared, Esq.** (FBN 1035991)
Email: neema.monfared@akerman.com
**AKERMAN LLP**
401 E. Jackson Street, Suite 1700
Tampa, Florida 33602
Telephone: (813) 209-5009
Facsimile: (813) 218-5488
*Attorneys for Defendant School Board of Hillsborough County, Florida*

## <u>CERTIFICATE OF SERVICE</u>

I certify a true and correct copy of the foregoing was served upon all counsel

of record via CM/ECF on March 11, 2024.

> <u>*/s/ Jason L. Margolin*</u>
> Attorney

75418321;1