IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

KATIE WOOD, et al.,

    *Plaintiffs*,

v.                                                                Case No.: 4:23cv526-MW/MAF

FLORIDA DEPARTMENT OF
EDUCATION, et al.,

    *Defendants*.

_____/

### ORDER ON STATE DEFENDANTS' MOTION TO DISMISS

This Court has considered, without hearing, the State Defendants' motion to dismiss, ECF No. 63, and Plaintiffs' response in opposition, ECF No. 67. For the reasons set out below, the motion is **GRANTED in part** and **DENIED in part**.

I

As it must, this Court first addresses standing. To establish standing, Plaintiffs must show (1) that they have suffered an injury-in-fact that is (2) traceable to the State Defendants and that (3) will likely be redressed by a favorable ruling. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). " '[A] plaintiff must demonstrate standing for each claim he seeks to press' and 'for each form of relief' " that is sought. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). Here, this

means that this Court must address Plaintiffs' standing to pursue relief for their free speech (Count VII), equal protection (Count X), Title VII (Counts I and II), and Title IX claims (Count XIII). This Court will address whether Plaintiffs have established an injury for each of these claims before addressing whether their injuries are traceable to the State Defendants and are likely to be redressed by a favorable ruling.

A

First, Plaintiffs' injuries. For their free speech claims, Plaintiffs allege that they are injured because the State Defendants prevent (or prevented) them from speaking. ECF No. 56 ¶ 170. Ms. Wood and Ms. Doe allege sufficient facts to demonstrate an injury for their free speech claims, but Mx. Schwandes does not. Ms. Wood alleges that, before the State Defendants threatened to enforce section 1000.071(3), she would use her preferred title and pronouns while engaging with students. *See id.* ¶ 79. But now, the State Defendants' threats of enforcing section 1000.071(3) prevent her from doing this. *See id.* ¶ 85. That's a chilled speech injury. And while Ms. Doe does not specifically state that she would use her preferred titles but for section 1000.071(3), she only has three options—(1) self-censor; (2) use her preferred titles despite the risk of discipline from Defendants; or (3) self-censor in part and use her preferred titles occasionally despite risk of discipline. All of these options permit the reasonable inference that Ms. Doe will suffer a free speech injury for standing purposes. *See Pernell v. Fla. Bd. of Governors of State Univ. Sys.*, 641

F. Supp. 3d 1218, 1255 (N.D. Fla. 2022). Accordingly, Ms. Wood and Ms. Doe have alleged sufficient facts to show an injury for their free speech claims.

Mx. Schwandes, on the other hand, does not allege any facts showing that they intend to engage in speech in the foreseeable future that would violate section 1000.071(3). For the same reasons Mx. Schwandes failed to show a free speech injury at the preliminary injunction stage, *see* ECF No. 82 at 12–14, Mx. Schwandes has also failed to show a free speech injury at the motion to dismiss stage. Accordingly, Mx. Schwandes's free speech claim is due to be dismissed without prejudice for lack of standing.[1]

For their remaining claims, Plaintiffs allege they are injured because the State Defendants are discriminating against them on the basis of sex. For equal protection purposes, Plaintiff's allegations of unequal treatment are sufficient to show an injury in fact. *See Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 666 (1993). And for Title VII and Title IX purposes, Plaintiffs' allegations of the State Defendants imposing arguable adverse employment actions against them on the basis of sex are sufficient to show an injury

---

[1] This Court pauses to note that the standing analysis would likely be different for a First Amendment *retaliation* claim—instead of looking to whether Schwandes would like to speak at a foreseeable time in the *future*, the injury analysis would seem to turn on whether they suffered a concrete injury in the *past* and faced retaliation as a result. But Schwandes does not bring a First Amendment retaliation claim here.

3

in fact.² *See, e.g.*, *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178 (2011) (holding that an employee has standing under Title VII when they have an interest arguably protected by the statute). Accordingly, Plaintiffs have alleged sufficient facts to show an injury for their equal protection, Title VII, and Title IX claims.

B

Next, traceability and redressability. As discussed *supra*, the framing of Plaintiffs' injuries changes slightly based on the underlying cause of action. But for traceability and redressability purposes, the framing is the same regardless of the cause of action—Plaintiffs' injuries flow, in part, from the State Defendants' enforcement of section 1000.071(3). As set out in this Court's order granting a preliminary injunction for Ms. Wood, Plaintiffs' injuries are traceable to the State Defendants. ECF No. 82 at 10–12. And for these same reasons, a decision in Plaintiffs' favor is substantially likely to provide them with redress. *See id.*

\* \* \*

In sum, Mx. Schwandes lacks standing to pursue their free speech claim against the State Defendants. Mx. Schwandes *does* have standing, however, to pursue the rest of their claims against the State Defendants. The remaining

---

² As discussed *infra*, however, Ms. Wood and Ms. Doe have issues with the merits of their Title VII and IX claims. But for standing purposes, Plaintiffs meet their burden to show Title VII and Title IX injuries because their allegations set out an *arguable* violation.

4

Plaintiffs—Ms. Wood and Ms. Doe—have alleged sufficient facts at this stage to show they have standing to pursue all of their claims against the State Defendants.

II

Next, the Title VII claims. This Court begins with Plaintiffs' Title VII sex discrimination claim against the State Defendants, Count I. In Count I, all three Plaintiffs allege that the State Defendants discriminated against them because of sex in violation of Title VII. The State Defendants move to dismiss this count in its entirety, arguing that the Title VII claims fail on the merits because Plaintiffs have not sufficiently alleged that they suffered an "adverse employment action" attributable to the State Defendants' conduct.[3] ECF No. 63 at 16. For the reasons outlined below, this Court agrees with the State Defendants.

First, Ms. Wood. Ms. Wood alleges that requiring her to comply with section 1000.071(3) is an adverse action because it represents a change in the "terms, conditions, or privileges" of her employment as required by 42 U.S.C. § 2000e-2(a)(1). Further, Ms. Wood argues that a reasonable person in her situation would find this change adverse.

In this Circuit, adverse employment actions are generally those "that affect continued employment or pay—things like terminations, demotions, suspensions

---

[3] The State Defendants raise other arguments related to a novel interpretation of *Bostock*. These other arguments are unavailing. At best, these arguments are underdeveloped in their current form. The State Defendants may develop and re-raise these arguments *at summary judgment*.

5

without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021). Direct economic consequences are not necessarily required for such a showing. Standing alone, a seemingly neutral action, such as a transfer to a different position, may be adverse if it involves reduction in prestige or responsibility. *See Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012).

In arguing that the pronoun policy is adverse, Ms. Wood alleges that section 1000.071(3) impacts a "term or condition" of her employment. In its order on Plaintiffs' motions for preliminary injunction, ECF No. 82, this Court rejected the argument that the pronoun policy represented a "serious and material change in the terms, conditions, or privileges" to Ms. Wood's employment. *See Webb-Edwards v. Orange Cnty. Sheriff's Off.*, 525 F.3d 1013, 1031 (11th Cir. 2008). In so doing, this Court analyzed the "materiality" of the harm averred in Ms. Wood's declaration. Now, Ms. Wood argues that a subsequent Supreme Court decision, *Muldrow v. St. Louis*, No. 22–193 (U.S. Apr. 17, 2024), 601 U.S. __ (2024), abrogates the requirement that the change needs to be "serious and material" to be actionable. ECF No. 83. This Court agrees with Ms. Wood about the impact of *Muldrow* on this Circuit's materiality requirement. However, this new authority does not impact this Court's ultimate conclusion that Ms. Wood has failed to allege an adverse action with respect to the pronoun policy. This is because, while the "serious and material"

6

requirement may have been abrogated, the "term and condition of employment" requirement remains in place. While *Muldrow* does not define the limits of the phrase, it does state that "the phrase circumscribes the injuries that can give rise to a suit like this one. To make out a Title VII discrimination claim, a transferee must show some harm respecting an identifiable term or condition of employment." *Muldrow*, slip op. at 6. And at this time, there is simply no authority recognizing that this type of policy constitutes a term or condition of employment. Ms. Wood may have alleged harm, but she has not sufficiently alleged that her pronoun usage is "an identifiable term or condition of employment" as *Muldrow* requires. In short, this Court's conclusion that Ms. Wood has failed to allege an adverse action hinges on the *type* of harm suffered, not the *severity* of that harm. On this record, the pronoun policy is not the type of injury recognized as a "term or condition" of employment under Title VII. Accordingly, Ms. Wood's Title VII sex discrimination claim against the State Defendants is due to be dismissed with leave to amend.

    Ms. Doe raises the same argument Ms. Wood raises, and it fails for the same reason. In short, Ms. Doe has failed to allege that the pronoun policy constitutes a term or condition of her employment. As discussed *supra*, Title VII only recognizes a certain subset of employer mistreatment as actionable under the statute. Accordingly, Ms. Doe's Title VII sex discrimination claim against the State Defendants is due to be dismissed with leave to amend.

Mx. Schwandes's Title VII sex discrimination claim fails, at this stage, for a similar reason. Namely, while Mx. Schwandes was subject to an adverse action—they were terminated by their employer—they have not sufficiently alleged that they suffered an adverse employment action traceable to the State Defendants.

The investigation into Mx. Schwandes's conduct, standing alone, is not cognizable as an adverse employment action under Title VII.[4] Accordingly, Mx. Schwandes's Title VII sex discrimination claim against the State Defendants fails. While Mx. Schwandes may have colorable claims against their direct employer, FLVS, their Title VII sex discrimination claim against the State Defendants is due to be dismissed with leave to amend.

In short, none of the three Plaintiffs has sufficiently alleged that they suffered an adverse employment action attributable to the State Defendants. Accordingly, the State Defendants' motion to dismiss is **GRANTED** as to Plaintiffs' Title VII sex discrimination claim, Count I. Count I is **DISMISSED** with leave to amend.

---

[4] This Court recognizes that its analysis in its order for Preliminary Injunction applied the "serious and material" standard. *See* ECF No. 82 at 18–19. As discussed above, *Muldrow* abrogated this requirement. Nonetheless, this authority does not impact this Court's conclusion that the ongoing post-employment investigation into Mx. Schwandes's conduct is not an *employment* action within the meaning of binding precedent analyzing substantive discrimination claims—namely, something that impacts the "terms, conditions, or privileges" of employment. This Court's conclusion may be different for a *retaliation* claim, which does not contain the "terms, conditions, or privileges of employment" language. But Mx. Schwandes does not bring a retaliation claim against the State Defendants. Accordingly, this Court's conclusion with respect to Mx. Schwandes's substantive Title VII claim remains unchanged in light of *Muldrow*.

This Court now looks to Plaintiffs' Title VII preemption claim, Count II. The State Defendants raise their argument to dismiss Count II in a single footnote. ECF No. 63 at 21 n.1. They argue that Plaintiffs' claim fails because section 1000.071(3) does not violate Title VII. At this stage, Plaintiffs have stated a claim that section 1000.071(3) is conflict preempted by Title VII.[5] At the motion to dismiss stage, this Court need only decide whether Plaintiffs have stated a claim. It need not decide whether Plaintiffs would prevail on the theory. Accordingly, the State Defendants' motion is **DENIED** as to Plaintiffs' Title VII preemption claim, Count II.

III

As to Ms. Doe's and Ms. Wood's free speech claim,[6] Count VII, the State Defendants regurgitate their merits arguments that this Court rejected at the preliminary injunction stage. *See* ECF No. 63-1 at 29–36; ECF No. 82 at 23–45. The State Defendants do not take issue with the sufficiency of these Plaintiffs' factual allegations—rather, they argue that these Plaintiffs' allegations fail to state a claim because, as a matter of law, their speech is not protected by the First Amendment. However, this Court again rejects the State Defendants' arguments that Ms. Doe and Ms. Wood are not speaking as citizens on a matter of public concern when they share

---

[5] This Court pauses to note that failing to state individual Title VII claims against the State Defendants has no bearing on the Plaintiffs' preemption argument. Asking whether an employer's conduct violates a statute is a separate question from whether a state statute is preempted by federal law.

[6] As explained *supra*, Mx. Schwandes lacks standing to bring a free speech claim.

9

their pronouns and titles with students. For the same reasons this Court set out in its order on the motions for preliminary injunction and incorporated by reference herein, ECF No. 82 at 23–39, this Court concludes that Ms. Doe's and Ms. Wood's factual allegations permit the reasonable inference that they are speaking as citizens on a matter of public concern when they share their pronouns and preferred titles with students.

The State Defendants also repeat the same legal argument that, in the event these Plaintiffs' speech is protected by the First Amendment, their interests outweigh these Plaintiffs' interest in speaking. This argument fails for the same reasons this Court explained at the preliminary injunction stage, and this Court incorporates that analysis by reference herein with respect to both Ms. Wood and Ms. Doe. *See* ECF No. 82 at 39–45. In short, Ms. Doe and Ms. Wood have stated a claim for violation of their free speech rights based on section 1000.071(3)'s restriction on their speech. Accordingly, the State Defendants' motion is **DENIED** as to Plaintiffs' free speech claim, Count VII.

IV

Now for the State Defendants' arguments for dismissal of Plaintiffs' equal protection claim, Count X. Plaintiffs advance three theories supporting this claim— namely, that section 1000.071(3) discriminates based on sex, that section

1000.071(3) discriminates based on gender stereotypes associated with sex,[7] and that section 1000.071(3) has a disparate impact on transgender and nonbinary individuals and was enacted with the purpose of discriminating against them. The State Defendants argue that Plaintiffs fail to state a claim as to each theory. This Court takes each theory in turn.

First, Plaintiffs' sex discrimination theory. "It is well established that drawing lines based on sex triggers intermediate scrutiny." *Doe v. Ladapo*, 676 F. Supp. 3d 1205, 1271 (N.D. Fla. 2023) (Hinkle, J.) (citing *United States v. Virginia*, 518 U.S. 151, 533 (1996); *Adams v. St. Johns Cnty.*, 57 F.4th 791, 801 (11th Cir. 2022) (en banc)). "If one must know the sex of a person to know whether or how a provision applies to the person, the provision draws a line based on sex." *Ladapo*, 676 F. Supp. 3d at 1271 (citing *Bostock v. Clayton Cnty.*, 590 U.S. 644, 649–53 (2020); *Adams*, 57 F.4th at 801).

Here, Section 1000.071(3) requires teachers to use only the title and pronouns that correspond with their sex. Individuals of the female sex can use only the title and pronouns that correspond with the female gender—that is, "Ms." and she/her pronouns. Individuals of the male sex can use only the title and pronouns that correspond with the male gender—that is, "Mr." and he/him pronouns. To know

---

[7] This is different from discrimination based directly on transgender status, which Plaintiffs do not allege.

11

which pronouns section 1000.071(3) demands an individual use, one must know the individual's sex. *See Ladapo*, 676 F. Supp. 3d at 1217. This is discrimination on the basis of sex. *See id.*

The State Defendants disagree, relying on *Adams ex rel. Kasper v. School Board of St. Johns County*, 57 F.4th 791 (11th Cir. 2022) (en banc) and *Eknes-Tucker v. Governor of Ala.*, 80 F.4th 1205 (11th Cir. 2023) to argue that section 1000.071(3) does not discriminate based on sex. ECF No. 63-1 at 37–39; ECF No. 73 at 33–35. These two cases, however, are distinguishable. In each, the challenged policy regulated human biology and human bodily functions—specifically, bathroom use and access to sex hormones. To be sure, as the Supreme Court cases cited in *Adams* and *Eknes-Tucker* hold, discrimination between the sexes that reflects "basic biological differences" may not be unconstitutional. *See, e.g.*, *Nguyen v. I.N.S.*, 533 U.S. 53, 73 (2001) (denying equal protection challenge where "the fact that a mother must be present at birth but the father need not be" justified different requirements for non-national children to acquire citizenship via father versus mother); *Virginia*, 518 U.S. 515, 533 (1996) ("The heightened review standard our precedent establishes does not make sex a proscribed classification. Supposed 'inherent differences' are no longer accepted as a ground for race or national origin classifications. Physical differences between men and women, however, are

12

enduring . . . .") (citations omitted). *Eknes-Tucker* suggests that such discrimination may not be sex discrimination at all. *See* 80 F.4th at 1227–28.

But section 1000.071(3) does not focus on human biology or human bodily functions in the same way. Instead, it regulates preferred pronouns and titles. One's choice of pronouns and titles is not biologically linked to the location of the urethra or the ability to birth children. *Adams* and *Eknes-Tucker* are simply too far removed from the context of this case for the State Defendants to persuasively marshal them here. The State Defendants may further develop these arguments and raise them at summary judgment, but in their present form, they do not move the needle.

Section 1000.071(3) also discriminates on the basis of sex insofar as it discriminates based on gender stereotypes. "A person is defined as transgender precisely because of the perception that his or her behavior transgresses gender stereotypes." *Glenn v. Brumby*, 663 F.3d 1312, 1316 (11th Cir. 2011). And "discrimination on the basis of gender stereotype is sex-based discrimination." *Id.* (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989)). Here, section 1000.071(3) prohibits individuals from using titles and pronouns that "do not correspond to his or her sex." The idea that certain titles and pronouns "correspond to" a certain sex is a gender stereotype. Thus, section 1000.071(3) discriminates on the basis of gender stereotypes associated with sex.

13

The State Defendants, in arguing otherwise, liken this case to *Adams*, which held that the bathroom policy did not "depend in any way on how students act or identify," but "on biological sex, which is not a stereotype." ECF No. 73 at 34 (citing *Adams*, 57 F.4th at 809). This argument fails because section 1000.071(3) is not "based on the biological differences between males and females," but on a social convention that biological males should use only "Mr." and "he/him pronouns" and that females should use only "Ms." and "she/her" pronouns. *See id.* at 810. Biological sex is not a stereotype, but the link between biological sex and the words used to refer to someone of a certain sex *is* a stereotype.

Finally, Plaintiffs have sufficiently alleged disparate-impact discrimination based on transgender status. *See* ECF No. 56 ¶¶ 29–33. Although the State Defendants argue that Plaintiffs' allegations on this point are "cursory," ECF No. 63-1 at 43–46, ECF No. 73 at 40–41, they suffice at this early stage of the proceedings to state the "purposeful discrimination" necessary to support a disparate-impact theory. *Adams*, 57 F.4th at 810 (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 274 (1979); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264–66 (1977)). To be sure, Plaintiffs will have to put meat on the bones if they wish to ultimately prevail under this theory. But they do not have to do so yet.

Plaintiffs' sex discrimination, gender stereotype discrimination, and disparate impact discrimination theories trigger intermediate scrutiny of section 1000.071(3). It would not be appropriate for this Court, at the motion to dismiss stage, to determine whether section 1000.071(3) "serves important governmental objectives" or whether "the discriminatory means employed are substantially related to the achievement of those objectives." *Virginia*, 518 U.S. 515 at 533 (1996) (citations omitted). At this stage, it suffices to determine that Plaintiffs' equal protection claim survives. The State Defendants' motion to dismiss is **DENIED** as to Plaintiffs' equal protection claim against them, Count X.

V

This Court next addresses Plaintiffs' Title IX sex discrimination claim against the State Defendants, Count XIII. The State Defendants argue that this claim is duplicative of, and preempted by, Plaintiffs' Title VII claims. ECF No. 63-1 at 46; ECF No. 73 at 41–43. Neither the Supreme Court nor the Eleventh Circuit has addressed "whether Title VII preempts Title IX when a plaintiff alleges employment discrimination and Title VII affords a parallel remedy." *Heatherly v. Univ. of Ala. Bd. of Trustees*, 778 F. App'x 690, 694 (11th Cir. 2019). Although most district courts in this Circuit have held that Title VII does preempt Title IX in such situations, this Court finds persuasive the reasoning in *Bird v. University of Florida Board of Trustees*, Case No. 1:18-cv-221, 2019 WL 13087801 (N.D. Fla. Aug. 23, 2019)

15

(Winsor, J.) and in *Doe v. Mercy Catholic Medical Center*, 850 F.3d 545 (3rd Cir. 2017). Following the reasoning in those cases, this Court holds that Plaintiffs' Title VII claim does not preempt their Title IX claims. This Court understands, however, that this issue is currently before the Eleventh Circuit. *Crowther v. Bd. of Regents of Univ. Sys. of Ga.*, No. 23-12475 (11th Cir. Oct. 12, 2023). If the Eleventh Circuit holds that Title VII does preempt Title IX, the State Defendants may re-raise this issue at a later stage.

Even so, as with their Title VII sex discrimination claim against the State Defendants, Count I, Plaintiffs' Title IX claim against the State Defendants fails for pleading deficiencies. Namely, Plaintiffs fail to allege an adverse employment action within the meaning of the law. Accordingly, State Defendants' motion to dismiss is **GRANTED** as to Plaintiffs' Title IX sex discrimination claim against them, Count XIII.[8] Count XIII is **DISMISSED** with leave to amend.

VI

Accordingly, for the reasons set out above, Defendants' motion to dismiss, ECF No. 63, is **GRANTED in part and DENIED in part.** The motion is **GRANTED** as to Count I, Count XIII, and Mx. Schwandes's free speech claim in

---

[8] As mentioned in footnote 3, *supra*, the State Defendants raise other arguments for dismissal. Their Title IX arguments relate to the Eleventh Circuit's interpretations of *Bostock* in *Adams*. These other arguments are unavailing—not least because *Adams* relied on Title IX's carve-out for living facilities, which is inapplicable here. As this Court decided with respect to their Title VII arguments, the State Defendants may develop and re-raise these arguments *at summary judgment*.

Count VII. The balance of the motion is otherwise **DENIED**. Plaintiffs' claims in Counts I and XIII and Mx. Schwandes's claim in Count VII are **DISMISSED** with leave to amend. If Plaintiffs believe they can cure the defects by amending their complaint, they may file a second amended complaint **on or before Monday, April 29, 2024.** In granting leave to amend, this Court is only allowing Plaintiffs to cure those defects this Court has previously identified. This Court is not granting Plaintiffs a blank slate to plead new causes of action. Nor will this Court permit the State Defendants to re-raise arguments for dismissal that this Court has already rejected. Should either Plaintiffs or the State Defendants seek to stray beyond these narrow confines, they must seek leave to do so.

**SO ORDERED on April 19, 2024.**

s/Mark E. Walker<br>
**Chief United States District Judge**