## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

Katie Wood, Jane Doe, and AV Schwandes,

*Plaintiffs*,

v.

Florida Department of Education; State Board of
Education; Monesia Brown, Esther Byrd, Grazie
Christie, Kelly Garcia, Benjamin Gibson, Mary-
Lynn Magar, and Ryan Petty, *in their official ca-
pacities as members of Defendant State Board of
Education*; Commissioner of Education; Education
Practices Commission; Aadil Ameerally, Jared
Barr, Michael Butcher, Elayne Colon, Ann Copen-
haver, Joseph Goodwin, Benjamin Henry, Timothy
Holley, Lisa Innerst, Jeffrey Johnson, Kenneth La-
Pee, Mason Lewis, Sallie Murphy, Christine Plaza,
Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc
Snyder, Malcolm Thomas, Jordan Tompkins, and
Kathy Wilks, *in their official capacities as mem-
bers of Defendant Education Practices Commis-
sion*; Hillsborough County School Board; Lee
County School Board; and Florida Virtual School
Board of Trustees,

Case No. 4:23-cv-00526-MW-MAF

*Defendants*.

_____ /

## SECOND AMENDED COMPLAINT

Plaintiffs Katie Wood ("Ms. Wood"), Jane Doe ("Ms. Doe"), and AV

Schwandes ("Mx. Schwandes") file this complaint against Defendants Florida De-

partment of Education; State Board of Education; Monesia Brown, Esther Byrd,

1

Grazie Christie, Kelly Garcia, Benjamin Gibson, MaryLynn Magar, and Ryan Petty, in their official capacities as members of Defendant State Board of Education; Commissioner of Education; Education Practices Commission; and Aadil Ameerally, Jared Barr, Michael Butcher, Elayne Colon, Ann Copenhaver, Joseph Goodwin, Benjamin Henry, Timothy Holley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee, Mason Lewis, Sallie Murphy, Christine Plaza, Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc Snyder, Malcolm Thomas, Jordan Tompkins, and Kathy Wilks, in their official capacities as members of Defendant Education Practices Commission. Ms. Wood also files this complaint against Defendant Hillsborough County School Board. Ms. Doe also files this complaint against Defendant Lee County School Board. Mx. Schwandes also files this complaint against Defendant Florida Virtual School Board of Trustees.

## PRELIMINARY STATEMENT

1.      Plaintiffs are current and former Florida public-school teachers who simply wanted to teach math, science, and their other school subjects of expertise. But in 2023, Florida enacted a new law that pushed one plaintiff out of their teaching career and threatens to do the same for the other plaintiffs—and for the other transgender and nonbinary teachers like them across Florida. That new law, subsection 3 of Florida Statutes ("Fla. Stat.") § 1000.071 ("subsection 3"), provides that "[a]n employee or contractor of a public K-12 educational institution may not

2

provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex." Subsection 3 discriminates against transgender and nonbinary public-school employees and contractors on the basis of sex, by prohibiting them from using the titles and pronouns that express who they are. Subsection 3 requires Plaintiffs to shed their titles and pronouns at the schoolhouse gate because they are not the titles and pronouns that Florida prefers for the sex it deems them to be. Florida has the power to revoke the educator certificates of teachers who violate subsection 3, and school boards are able to dismiss violators.

2.     Subsection 3 violates the Constitution and laws of the United States. It unlawfully discriminates against Plaintiffs on the basis of sex in violation of Title VII of the Civil Rights Act of 1964, the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution, and Title IX of the Education Amendments of 1972 because whether Plaintiffs may provide to students a particular title or pronoun depends entirely on Plaintiffs' sex, and Florida has only an invidious basis—not an exceedingly persuasive or even a rational one—for discriminating in this harmful way. It also unconstitutionally restrains and punishes Plaintiffs' speech in violation of the Free Speech Clause of the First Amendment to the U.S. Constitution because it prohibits Plaintiffs from using the titles and pronouns that express who they are, the same way that their colleagues do.

3.     Through subsection 3, Florida has stigmatized Plaintiffs, threatened their psychological wellbeing, upended the respect that is owed to them as educators and that is necessary for a safe workplace and functioning classroom, and put their professions and families' wellbeing on the line. Florida's statute must give way to the Constitution and laws of the United States and must not be enforced.

## PARTIES

### A.     Plaintiffs

4.     Plaintiff Katie Wood resides in Hillsborough County, Florida. She is a teacher at Lennard High School within the Hillsborough County School District.

5.     Plaintiff Jane Doe resides in Lee County, Florida. She is a teacher at a public school within the Lee County School District.

6.     Plaintiff AV Schwandes resides in Orange County, Florida. They were a teacher at Florida Virtual School, which develops and delivers online and distance learning education in Florida. Fla. Stat. § 1002.37(1)(a).

### B.     Defendants

#### 1.     State Defendants

7.     Defendant Florida Department of Education is created by Florida statute. Fla. Stat. § 20.15. It maintains a principal place of business in Tallahassee, Florida. It is located in the offices of Defendant Commissioner of Education. Fla. Stat. § 1001.20(2). It has the power and duty to assist in providing professional leadership

and guidance and in carrying out the policies, procedures, and duties authorized by law or by Defendant State Board of Education or found necessary by it to attain the purposes and objectives of the Early Learning–20 Education Code. *Id.* One of its offices is the Office of Professional Practice Services.

8.     Defendant State Board of Education is a corporate body established by the Florida constitution. Fla. Const. art. 9, § 2. It maintains a principal place of business in Tallahassee, Florida. It has seven members appointed by the Governor to staggered four-year terms, subject to confirmation by the Senate. Fla. Stat. § 1001.01. It must supervise the system of free public education. Fla. Const. art. 9, § 2. It is the chief implementing and coordinating body of public education in Florida except for the State University System. Fla. Stat. § 1001.02. It appoints Defendant Commissioner of Education. Fla. Const. art. 9, § 2. It is the head of Defendant Florida Department of Education. Fla. Stat. § 20.15(1). It assigns powers, duties, responsibilities, and functions to Defendant Florida Department of Education. Fla. Stat. § 20.15(5).

9.     Defendants Monesia Brown, Esther Byrd, Grazie Christie, Kelly Garcia, Benjamin Gibson, MaryLynn Magar, and Ryan Petty are members of Defendant State Board of Education and sued only in that official capacity (collectively, "Members of Defendant State Board of Education").

10.     Defendant Commissioner of Education holds an office established by

5

the Florida constitution. Fla. Const. art. 9, § 2. Defendant Commissioner of Education maintains a principal place of business in Tallahassee, Florida. Defendant Commissioner of Education is the chief educational officer of Florida. Fla. Stat. § 1001.10(1). Defendant Commissioner of Education serves as the Executive Director of Defendant Florida Department of Education. Fla. Stat. § 20.15(2). Defendant Commissioner of Education is responsible for giving full assistance to Defendant State Board of Education in enforcing compliance with the mission and goals of the Early Learning–20 education system, except for the State University System. Fla. Stat. § 1001.10(1). Defendant Commissioner of Education has the power and duty to organize, staff, and recommend a budget for Defendant Florida Department of Education. Fla. Stat. § 1001.10(6). Defendant Commissioner of Education assigns powers, duties, responsibilities, and functions to Defendant Florida Department of Education. Fla. Stat. § 20.15(5). Defendant Commissioner of Education is sued only in its official capacity.

11.     Defendant Education Practices Commission is established by Florida statute. Fla. Stat. § 1012.79(1). It maintains a principal place of business in Tallahassee, Florida. It has 25 members appointed by Defendant State Board of Education from nominations by Defendant Commissioner of Education and subject to Senate confirmation. Fla. Stat. § 1012.79(1). Its members serve for four-year staggered terms. Fla. Stat. § 1012.79(2). It is assigned to Defendant Florida Department of

Education for administrative purposes. Fla. Stat. § 1012.79(6)(a). Its property, personnel, and appropriations related to its specified authority, powers, duties, and responsibilities are provided to it by Defendant Florida Department of Education. Fla. Stat. § 1012.79(6)(b).

12.    Defendants Aadil Ameerally, Jared Barr, Michael Butcher, Elayne Colon, Ann Copenhaver, Joseph Goodwin, Benjamin Henry, Timothy Holley, Lisa Innerst, Jeffrey Johnson, Kenneth LaPee, Mason Lewis, Sallie Murphy, Christine Plaza, Kevin Rowe, Charles Shaw, Orenthya Sloan, Marc Snyder, Malcolm Thomas, Jordan Tompkins, and Kathy Wilks are members of Defendant Education Practices Commission and sued only in that official capacity (collectively, "Members of Defendant Education Practices Commission"). They are residents of Florida. *See* Fla. Stat. § 1012.79(1)(e).

13.    Defendant Florida Virtual School Board of Trustees is a public agency established by Florida statute. Fla. Stat. § 1002.37(2). It maintains a principal place of business in Orlando, Florida. It governs the Florida Virtual School. *Id.* It has seven members appointed by the Governor to four-year staggered terms. Fla. Stat. § 1002.37(2).

### 2.    School Board Defendants

14.    Defendant Hillsborough County School Board is established by the Florida constitution to operate, control, and supervise all free public schools within

the school district of Hillsborough County. Fla. Const. art. 9, § 4; Fla. Stat. § 1001.30.

15.    Defendant Lee County School Board is established by the Florida constitution to operate, control, and supervise all free public schools within the school district of Lee County. Fla. Const. art. 9, § 4; Fla. Stat. § 1001.30.

16.    Plaintiffs refer to Defendants Hillsborough County School Board and Lee County School Board collectively as "School Board Defendants."

## JURISDICTION & VENUE

17.    The Court has original jurisdiction of this civil action under 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States and under 28 U.S.C. § 1343(a)(3) because it is authorized by law to be commenced by a person "[t]o redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States."

18.    Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), and in this division under Local Rule 3.1, because Defendants Florida Department of Education, State Board of Education, and Commissioner of Education reside in this judicial district and division and all defendants are residents of Florida; under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving

rise to the claim occurred in this judicial district and division; and under 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practice is alleged to have been committed in Florida.

19.     The Court has personal jurisdiction over Defendants because they are domiciled in Florida and this civil action arises out of, and relates to, their conduct in Florida.

## FACTUAL ALLEGATIONS

### A.     HB 1069 (2023)

20.     In May 2023, the Florida Legislature enacted, and Governor Ron DeSantis signed, House Bill ("HB") 1069, Fla. Laws ch. 2023-105. It took effect on July 1, 2023. This case challenges only subsection 3 of section 2 of HB 1069, but the bill's range of changes related to lesbian, gay, bisexual, transgender, queer, and nonbinary ("LGBTQ+") people and content in schools have at least some relevance in this case.

21.     Section 1 of HB 1069 amends § 1000.21 of the Early Learning–20 Education Code to define "sex" to "mean[] the classification of a person as either female or male based on the organization of the body of such person for a specific reproductive role, as indicated by the person's sex chromosomes, naturally occurring sex hormones, and internal and external genitalia present at birth." Fla. Stat. § 1000.21(9). This definition of sex is sometimes called "biological sex" by some or

"sex assigned at birth" by others, including Plaintiffs. Plaintiffs assume for purposes of this case that this definition of sex is consistent with the meaning of sex under the federal constitutional provisions and statutes from which their claims arise.

22.   Neither HB 1069, nor the Early Learning–20 Education Code, nor any other statute defines "female" or "male" as used in HB 1069.

23.   Section 2 of HB 1069 creates § 1000.071 of the Early Learning–20 Education Code, which reads:

> 1000.071 Personal titles and pronouns.—
>
> (1) It shall be the policy of every public K-12 educational institution that is provided or authorized by the Constitution and laws of Florida that a person's sex is an immutable biological trait and that it is false to ascribe to a person a pronoun that does not correspond to such person's sex. This section does not apply to individuals born with a genetically or biochemically verifiable disorder of sex development, including, but not limited to, 46, XX disorder of sex development; 46, XY disorder of sex development; sex chromosome disorder of sex development; XX or XY sex reversal; and ovotesticular disorder.
>
> (2) An employee, contractor, or student of a public K-12 educational institution may not be required, as a condition of employment or enrollment or participation in any program, to refer to another person using that person's preferred personal title or pronouns if such personal title or pronouns do not correspond to that person's sex.
>
> (3) An employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex.

10

(4) A student may not be asked by an employee or contractor of a public K-12 educational institution to provide his or her preferred personal title or pronouns or be penalized or subjected to adverse or discriminatory treatment for not providing his or her preferred personal title or pronouns.

(5) The State Board of Education may adopt rules to administer this section.

24.    Florida law does not define or set forth which titles and pronouns "correspond to" which sex; instead, § 1000.071 leaves those enforcing it to rely on stereotypes about which titles and pronouns should be used by people whose sex is deemed female under the statute and which should be used by people whose sex is deemed male under the statute. Therefore, under § 1000.071, titles like Mrs., Ms., and Miss and pronouns like she and her "correspond to" people whose sex is deemed female; titles like Mr. and pronouns like he and him "correspond to" people whose sex is deemed male; and titles like Mx. (pronounced *mix* or *mux*) and pronouns like they and them, when used to refer to a single person, "correspond to" no one.

25.    Under subsection 3, an employee can "provide to a student [the employee's] title or pronouns" in various ways, such as by saying them to students, by saying them to someone within earshot of students, or by writing or displaying them on things that are given to or seen by students, like syllabi, classroom boards, and emails.

26.    Under subsection 3, whether an employee may "provide to" students

11

the title Ms. and she/her pronouns depends entirely on whether the employee's sex is deemed male or female: if the employee's sex is deemed female, then the employee may "provide" them to students, but if the employee's sex is deemed male, then the employee may not.

27.    Under subsection 3, whether an employee may "provide to" students the title Mr. and he/him pronouns depends entirely on whether the employee's sex is deemed male or female: if the employee's sex is deemed male, then the employee may "provide" them to students, but if the employee's sex is deemed female, then the employee may not.

### B.    Subsection 3's Purposeful Invidious Discrimination

28.    Sponsors of HB 1069, Governor DeSantis, and his administration justified HB 1069 in vague language about "protect[ing] children" from "indoctrination" and "woke gender ideology," but no one explained how subsection 3 advances those goals.

29.    Subsection 3's drafters ignored Supreme Court case law that clearly establishes its unlawfulness. According to Representative Stan McClain, who sponsored HB 1069, its drafters did not consult *Bostock v. Clayton County*, 140 S. Ct. 1731 (2020). That case held that an employer who intentionally treats a person worse because of sex—such as by firing a transgender woman (a person whose sex assigned at birth is male but whose gender identity is female) for actions or attributes

it would tolerate in a cisgender woman (a person whose sex assigned at birth is female and whose gender identity is female)—discriminates against that person in violation of Title VII.

30.    Subsection 3 is just one of a number of laws that Florida has recently enacted at least in part because of, not merely in spite of, the adverse effects they would have—both individually and in the aggregate—on LGBTQ+ people, especially transgender and nonbinary people, in various aspects of life. For example, Governor DeSantis signed HB 1069 in a bill package with Senate Bill ("SB") 254 (2023), Fla. Laws ch. 2023-90, which restricts their access to health care, and SB 1438 (2023), Fla. Laws ch. 2023-94, which seeks to censor performances by and for LGBTQ+ people. HB 1069 itself also expands the ban in HB 1557 (2022), Fla. Laws ch. 2022-022, on undefined "classroom instruction" on sexual orientation or gender identity and requires schools to remove material, including books, objected to by any parent or county resident, which has resulted in the removal of books that merely mention LGBTQ+ people.

31.    Florida flaunted its animus toward LGBTQ+ people when enacting these laws. For example, Governor DeSantis signed SB 1028 (2021), Fla. Laws ch. 2021-35, which bans transgender women and girls from women and girls' athletic teams, on June 1, 2021, the first day of Pride Month for LGBTQ+ people that year. Governor DeSantis, his press secretary at the time, and Representative Randy Fine,

who co-sponsored HB 1069 (2023) and HB 1557 (2022), Fla. Laws ch. 2022-022, invidiously described teachers who provide undefined "classroom instruction" on sexual orientation and gender identity as attempting to sexualize kids or as groomers, referring to someone who grooms a minor for exploitation and especially for non-consensual sexual activity. During committee debate about HB 1521 (2023), Fla. Laws ch. 2023-106, another bill regulating transgender and nonbinary people's conduct, Representative Webster Barnaby, who voted for it, called transgender people "mutants from another planet" and Satan's "demons and imps" "pretend[ing] that [they] are part of this world."

32.    Through all these laws, Florida intentionally sends the state-sanctioned, invidious, and false message that transgender and nonbinary people and their identities are inherently dangerous, especially to children. Florida's goal behind these laws is to stigmatize and demonize transgender and nonbinary people and relegate them from public life altogether.

## C.    Defendants' Implementation and Enforcement of Subsection 3

### 1.    Defendants Florida Department of Education, State Board of Education, Members of Defendant State Board of Education, Commissioner of Education, Education Practices Commission, and Members of Education Practices Commission

33.    On August 22, 2023, Defendant State Board of Education amended two administrative rules, Rule 6A-5.065 and Rule 6A-10.081, to require teachers to

comply with subsection 3 and to subject teachers who violate subsection 3 to suspension or revocation of their educator certificate and to poorer performance evaluations.

34.     Rule 6A-5.065 of the Florida Administrative Code sets forth the Florida Educator Accomplished Practices ("the Practices"). The Practices are "Florida's core standards for effective educators" and "form the foundation for the state's teacher preparation programs, educator certification requirements[,] and school district instructional personnel appraisal systems." Fla. Admin. Code r. 6A-5.065(1)(a). "Each of the [P]ractices is clearly defined to promote a common language and statewide understanding of the expectations for the quality of instruction and professional responsibility." Fla. Admin. Code r. 6A-5.065(2). Defendant State Board of Education amended the Practices to provide that, "[t]o maintain a student-centered learning environment that is safe, organized, equitable, flexible, inclusive, and collaborative, the effective educator consistently … [a]dapts the learning environment to accommodate the differing needs and diversity of students while ensuring that the learning environment is consistent with s. 1000.071." Fla. Admin. Code r. 6A-5.065(2)(a)(2)(h).

35.     Rule 6A-10.081 of the Florida Administrative Code sets forth the Principles of Professional Conduct for the Education Profession in Florida ("the Principles"). They include ethical and disciplinary principles. Florida educators must

comply with the disciplinary principles, and "[v]iolation of any of the[] [disciplinary] principles shall subject the [educator] to revocation or suspension of the individual educator's certificate, or the other penalties as provided by law." Fla. Admin. Code r. 6A-10.081(2). Defendant State Board of Education amended the disciplinary principles to provide that educators "[s]hall not violate s 1000.071." Fla. Admin. Code r. 6A-10.081(2)(a)(14).

36.     According to Defendant Commissioner of Education, the proposed rule amendments purportedly were steps toward "truth and sanity" and they would purportedly "empower" teachers by supposedly giving them "the freedom to keep order in the classroom and to keep distractions away and to create a high-quality learning environment." He did not explain how requiring teachers to comply with subsection 3, and punishing those who violate it, advances any of those stated goals.

37.     According to Defendant Florida Department of Education, the purported purposes of the rule amendments were to "[e]nsure[] the health, safety, and welfare of students," to "[p]rotect the fundamental rights of parents," to "[r]equire[] standards-based instruction," and to "[p]rovide[] clarity for educators on what is age-appropriate and developmentally appropriate in accordance with state standards." Defendant Florida Department of Education did not explain how requiring teachers to comply with subsection 3, and punishing those who violate it, advances any of those stated goals.

38.     Defendant Florida Department of Education must investigate potential violations of subsection 3 by teachers, *see* Fla. Stat. § 1012.796(1)(a), and advise Defendant Commissioner of Education of its findings, Fla. Stat. § 1012.796(3). Defendant Florida Department of Education's Office of Professional Practice Services conducts such investigations.

39.     Defendant Florida Department of Education can learn about potential violations of subsection 3 in various ways. For example, School Board Defendants must file in writing with Defendant Florida Department of Education all complaints that a teacher has violated subsection 3 within 30 days after the date on which subject matter of the complaint comes to its attention, regardless of whether the subject of the complaint is still an employee of the School Board Defendant. *See* Fla. Stat. § 1012.796(1)(d)(1). If the School Board Defendant's superintendent has knowledge of a legally sufficient complaint and does not report the complaint, the superintendent is subject to withholding of salary for up to one year. Fla. Stat. § 1012.796(1)(d)(4).

40.     Defendant Commissioner of Education determines whether there is probable cause of a violation of subsection 3. *See* Fla. Stat. § 1012.796(3). If there is probable cause, Defendant Commissioner of Education must file and prosecute a complaint against the teacher. Fla. Stat. § 1012.796(6). Defendant Florida Department of Education's Office of Professional Practice Services pursues such

disciplinary actions.

41.    Defendants Florida Department of Education and Commissioner of Education have opened investigations into teachers who violate § 1000.071, and they continue to do so. They have also opened investigations into teachers who violate other provisions of HB 1069, such as a teacher who showed her students a Disney movie that features a gay character.

42.    If there are disputed issues of material fact, an administrative law judge, assigned by the Division of Administrative Hearings of the Department of Management Services, must hear the complaint and make recommendations to the appropriate panel of Defendant Education Practices Commission. Fla. Stat. § 1012.796(6).

43.    A case concerning a complaint against a teacher must be reviewed, and a final order entered, by a panel composed of five members of Defendant Education Practices Commission, at least one of whom must be a parent or a sworn law enforcement officer and at least three of whom must be teachers. Fla. Stat. § 1012.796(8)(a). The panel must conduct a formal review of the administrative law judge's recommendations, if any, and other pertinent information and issue a final order. Fla. Stat. § 1012.796(6).

44.    Defendant Education Practices Commission must either dismiss the complaint or impose penalties on a teacher for violating subsection 3, including denying the teacher's application for a certificate, revoking or suspending the

teacher's certificate, imposing an administrative fine up to $2,000 for each offense, placing the teacher on probation for which the teacher must pay the costs, restricting the authorized scope of the teacher's practice, reprimanding the teacher in writing in the teacher's file, and barring the teacher, if the teacher's certificate has expired, from applying for a new certificate for up to ten years or permanently. *See* Fla. Stat. § 1012.796(7).

45.     Defendant Florida Department of Education must maintain a disqualification list that includes the identity of each person who has been permanently denied an educator certificate or whose educator certificate has been permanently revoked and has been placed on the list as directed by Defendant Education Practices Commission. Fla. Stat. § 1001.10(4)(b). Defendant Florida Department of Education maintains that list publicly online.

46.     Defendant State Board of Education must oversee the performance of School Board Defendants' enforcement of subsection 3 and enforce School Board Defendants' compliance with subsection 3. *See* Fla. Stat. §§ 1001.03(8), 1008.32.

47.     Defendant Commissioner of Education has the power to investigate allegations of School Board Defendants' noncompliance with subsection 3 and determine probable cause. *See* Fla. Stat. § 1008.32(2)(a). Defendant Commissioner of Education must report determinations of probable cause to Defendant State Board of Education. *See id.*

48.     If a School Board Defendant is unwilling or unable to comply with subsection 3, Defendant State Board of Education has the power to report that to the Legislature, withhold funds, declare the School Board Defendant ineligible for competitive grants, and require periodic reporting. *See* Fla. Stat. § 1008.32(4).

49.     Defendant State Board of Education has a history of investigating and punishing district school boards that violate Defendant State Board of Education's rules to coerce their compliance, including those that imposed mask mandates.

50.     Defendants Florida Department of Education and Commissioner of Education even filed and prosecuted, before Defendant Education Practices Commission, a complaint against Leon County School District's superintendent, Rocky Hanna, for advising teachers to continue teaching as they have always done, after HB 1557, which bans undefined "classroom instruction" on sexual orientation and gender identity, was enacted. Defendant Commissioner of Education and Superintendent Hanna reached, and Defendant Education Practices Commission accepted, a settlement agreement by which, among other things, he would be placed on probation for two years, pay $300 to cover the costs of probation, take college courses on education ethics and educational leadership for which he bears the cost, pay a $1,000 fine, violate no law, and comply with the Principles. Defendant Education Practices Commission also reprimanded him in writing.

### 2.    School Board Defendants

Plaintiffs Katie Wood and Jane Doe allege the following paragraphs 51–57 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission; Ms. Wood also alleges them against Defendant Hillsborough County School Board; and Ms. Doe also alleges them against Defendant Lee County School Board:

51.    Any person employed as a teacher in any district school system, including by School Board Defendants, must be properly certified by Defendant Florida Department of Education, *see* Fla. Stat. § 1012.55(b), except under narrow circumstances, *see* Fla. Stat. § 1012.55(c).

52.    School Board Defendants have the power and duty to suspend or dismiss a teacher whose certificate is revoked or suspended by Defendant Education Practices Commission.

53.    School Board Defendants have the power to suspend or dismiss a teacher for violating subsection 3.

54.    School Board Defendants have the power to suspend or dismiss a teacher for just cause, such as misconduct in office, gross insubordination, and a certain number and frequency of performance evaluations of "needs improvement" or "unsatisfactory" as provided by state law. Fla. Stat. § 1012.33(1)(a).

55.     Misconduct in office includes "[a] violation of the Principles," including subsection 3, "[a] violation of the adopted school board rules," "[b]ehavior that disrupts the student's learning environment," and "[b]ehavior that reduces the teacher's ability or … colleagues' ability to effectively perform duties." Fla. Admin. Code r. 6A-5.056(2).

56.     Gross insubordination "means the intentional refusal to obey a direct order, reasonable in nature, and given by and with proper authority; misfeasance, or malfeasance as to involve failure in the performance of the required duties." Fla. Admin. Code r. 6A-5.056(4).

57.     At least one-third of a teacher's performance evaluation must be based upon instructional practice, which must include indicators based upon each of the Practices, including subsection 3. Fla. Stat. § 1012.34(3)(a)(2).

### a.     Defendant Hillsborough County School Board

Plaintiff Katie Wood alleges the following paragraphs 58–66 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Hillsborough County School Board:

58.     Instructional staff members must adhere to the principles enumerated in Defendant Hillsborough County School Board's Standards of Ethical Conduct.

Hillsborough Cnty. Sch. Bd. Pol'y 3210(B).

59.    On or about January 9, 2024, Defendant Hillsborough County School Board revised its Standards of Ethical Conduct to require that instructional staff members "not violate s. 1000.071, F.S., which relates to the use of personal titles and pronouns in educational institutions." Hillsborough Cnty. Sch. Bd. Pol'y 3210(A)(14).

60.    Defendant Hillsborough County School Board's Standards of Ethical Conduct require instructional staff members to "report to appropriate authorities any known allegation of a violation of the Florida School Code or State Board of Education rules as defined in F.S. 1012.795(1)," including the Principles. Hillsborough Cnty. Sch. Bd. Pol'y 3210(A)(33).

61.    Defendant Hillsborough County School Board's Standards of Ethical Conduct require instructional staff members to "comply with the conditions of an order of the District or [Defendant] Education Practices Commission imposing probation, imposing a fine, or restricting the authorized scope of practice" and to "[c]ooperate with the District and/or [Defendant] Education Practices Commission in monitoring the probation of a subordinate." Hillsborough Cnty. Sch. Bd. Pol'y 3210(A)(35)–(36).

62.    All instructional staff members are required to complete training on the Standards of Ethical Conduct upon employment and annually thereafter. *See*

Hillsborough Cnty. Sch. Bd. Pol'y 3210.

63.    A Hillsborough County teacher may be discharged from employment for immorality; insubordination; physical or mental incapacity to perform the duties of employment; persistent violation of or willful refusal to obey laws or policies relating to the public schools; excessive or unreasonable absence from the performance of duties imposed by the employment; dishonesty while employed; conviction of a felony or any crime involving moral turpitude, or plea of guilty to a felony or any crime involving moral turpitude; or unacceptable performance. Hillsborough Cnty. Sch. Bd. & Hillsborough Classroom Tchrs. Ass'n, Inc. Tampa, Fla. Instructional Cont. 2023–2026 § 24.3.1(A), https://hillsboroughcta.org/wp-content/up-loads/2024/02/Signed-Instructional-Contract-2023-2026.pdf.

64.    All complaints that a teacher violated subsection 3 must be reported to Defendant Hillsborough County School Board's Office of Professional Standards, who, in turn, will report such complaints to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of Defendant Hillsborough County School Board or the office of the superintendent. *See* Hillsborough Cnty. Sch. Bd. Pol'y 3139.

65.    It is the responsibility of all employees of Defendant Hillsborough County School Board to promptly report to the superintendent any complaint against a teacher that comes to the employee's attention and that includes grounds for the

revocation or suspension of a teaching certificate. Hillsborough Cnty. Sch. Bd. Pol'y 3139.

66.     The willful failure by an employee of Defendant Hillsborough County School Board to promptly report a complaint constitutes cause for discipline of the employee as provided by Florida statutes, the Hillsborough County Teacher Tenure Act, and Defendant Hillsborough County School Board policy. Hillsborough Cnty. Sch. Bd. Pol'y 3139.

**b.     Defendant Lee County School Board**

Plaintiff Jane Doe alleges the following paragraphs 67–76 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Lee County School Board:

67.     The Principles, including subsection 3, constitute Defendant Lee County School Board's standards of ethical conduct, to which all instructional staff members must adhere. Lee Cnty. Sch. Bd. Pol'y 3210.

68.     Instructional staff members must comply with the disciplinary principles enumerated in Defendant Lee County School Board's Standards of Ethical Conduct for Instructional Staff. Lee Cnty. Sch. Bd. Pol'y 3210. Violation of any of the disciplinary principles subjects the individual to revocation or suspension of the

individual instructional staff member's certificate, or the other penalties as provided by law. *Id.*

69.    On or about December 5, 2023, Defendant Lee County School Board revised the disciplinary principles among its Standards of Ethical Conduct for Instructional Staff to require instructional staff members to "not violate F.S. 1000.071, which relates to the use of personal titles and pronouns in educational institutions." Lee Cnty. Sch. Bd. Pol'y 3210(A)(14).

70.    All District instructional staff members have an "[o]bligation to the profession of education" to "report to appropriate authorities any known allegation of a violation of the Florida School Code or State Board of Education rules as defined in F.S. 1012.795(1)," including the Principles. Lee Cnty. Sch. Bd. Pol'y 3210(C)(14).

71.    Defendant Lee County School Board's Standards of Ethical Conduct for Instructional Staff require instructional staff members to "comply with the conditions of an order of [Defendant] Education Practices Commission imposing probation, imposing a fine, or restricting the authorized scope of practice." Lee Cnty. Sch. Bd. Pol'y 3210(C)(16).

72.    All Lee County School District staff members are required to complete training on the Standards of Ethical Conduct for Instructional Staff upon employment and annually thereafter. *See* Lee Cnty. Sch. Bd. Pol'y 3210.

73.    A teacher who willfully violates Defendant Lee County School Board's

policies, including subsection 3, is guilty of gross insubordination and is subject to dismissal or such other lesser penalty as Defendant Lee County School Board may prescribe. Lee Cnty. Sch. Bd. Pol'y 3120.

74.     All complaints that a teacher violated subsection 3 must be reported to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of Defendant Lee County School Board or the office of the superintendent. *See* Lee Cnty. Sch. Bd. Pol'y 3139.

75.     All employees of Defendant Lee County School Board must promptly report to the office of the superintendent or the office of Human Resources Services any complaint against a teacher that comes to the employee's attention and that includes grounds for the revocation or suspension of a teaching certificate. Lee Cnty. Sch. Bd. Pol'y 3139.

76.     The willful failure by an employee of Defendant Lee County School Board to promptly report a complaint constitutes cause for discipline of the employee. Lee Cnty. Sch. Bd. Pol'y 3139.

### 3.     Defendant Florida Virtual School Board of Trustees

Plaintiff AV Schwandes alleges the following paragraphs 77–83 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and

Florida Virtual School Board of Trustees:

77.    The Principles, including subsection 3, constitute Defendant Florida Virtual School Board of Trustees's standards of ethical conduct, to which all instructional staff members must adhere. Fla. Virtual Sch. Bd. of Trs. Pol'y 1210.

78.    All Florida Virtual School employees must comply with the disciplinary principles enumerated in Defendant Florida Virtual School Board of Trustees's Standards of Ethical Conduct. Fla. Virtual Sch. Bd. of Trs. Pol'y 1210. Violation of any of the disciplinary principles subjects the individual to disciplinary action, revocation or suspension of the employee's certificate, and other penalties as may be provided by law. *Id.*

79.    On or about December 12, 2023, Defendant Florida Virtual School Board of Trustees revised the disciplinary principles among its Standards of Ethical Conduct to require instructional staff members to "not violate F.S. 1000.071, which relates to the use of personal titles and pronouns in educational institutions." Fla. Virtual Sch. Bd. of Trs. Pol'y 1210(A)(14).

80.    All Florida Virtual School employees have an "[o]bligation to the profession of education" to "report to appropriate authorities any known allegation of a violation of the Florida School Code or State Board of Education rules as defined in F.S. 1012.795(1)," including the Principles. Fla. Virtual Sch. Bd. of Trs. Pol'y 1210(C)(14).

28

81.   Defendant Florida Virtual School Board of Trustees's Standards of Eth-ical Conduct require employees to "comply with the conditions of an order of [De-fendant] Education Practices Commission imposing probation, imposing a fine, or restricting the authorized scope of practice." Fla. Virtual Sch. Bd. of Trs. Pol'y 1210(C)(16).

82.   All Florida Virtual School employees are required to complete training on the Standards of Ethical Conduct upon employment and annually thereafter. *See* Fla. Virtual Sch. Bd. of Trs. Pol'y 1210.

83.   Florida Virtual School's CEO, who is appointed by Defendant Florida Virtual School Board of Trustees, or designee must report all complaints that a teacher violated subsection 3 to Defendant Florida Department of Education within 30 days after the date on which the subject matter of the complaint comes to the attention of the CEO or designee. *See* Fla. Virtual Sch. Bd. of Trs. Pol'y 8141.

### D.   Gender Identity and the Harms of Misgendering

84.   Subsection 3 harms transgender and nonbinary teachers by prohibiting them from using titles and pronouns that express their gender identity.

85.   Gender identity is an innate, internal sense of one's sex. Everyone has a gender identity. Cisgender people's gender identity is consistent with their sex as-signed at birth, but transgender people have a gender identity that differs from their sex assigned at birth.

86.    Nonbinary is an adjective used by people who experience their gender identity or gender expression as falling outside the binary gender categories of man and woman; nonbinary people may identify as being both a man and a woman, somewhere in between, or as falling completely outside these categories. Many nonbinary people also call themselves transgender and consider themselves part of the transgender community.

87.    Many transgender people adopt a new name, pronouns, hairstyle, and clothing that express their gender identity, and many express their gender identity in all aspects of their life, including at work. Following those steps, many transgender people obtain a court order legally changing their name and, where possible, changing the sex listed on their birth certificate and other identity documents.

88.    Many transgender women go by titles like Mrs., Ms., and Miss and pronouns like she and her. Many transgender men (people whose sex assigned at birth is female but whose gender identity is male) go by titles like Mr. and pronouns like he and him. Many nonbinary people go by non-gendered titles like Mx. and non-gendered pronouns like they and them.

89.    Misgendering a person—for example, by referring to a transgender woman by titles like Mr. and pronouns like he and him, by referring to a transgender man by titles like Ms. and pronouns like she and her, or by referring to a nonbinary person by any of those gendered titles or pronouns—can cause that person

psychological distress and feelings of stigma. So can prohibiting a person from going by titles and pronouns that express the person's gender identity.

### E.   Subsection 3's Effects on Plaintiffs

#### 1.   Effects on Ms. Wood

Plaintiff Katie Wood alleges the following paragraphs 90–111 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Hillsborough County School Board:

90.   Ms. Wood is a transgender woman.

91.   Ms. Wood socially transitioned as a woman in or around 2020, in college and everywhere else in life. She legally changed her name and has updated her documents to reflect her new name and her female gender. She presents as a woman. She often wears jewelry and frilly, feminine clothing when she is not wearing school shirts. She uses the title Ms. and she/her pronouns. Being able to express herself as a woman publicly, including by using Ms. and she/her pronouns, is essential to her identity; it is what she needs to be true to herself, to be the best version of herself, to love herself, and to experience the joy of living as herself.

92.   Ms. Wood has been employed as a teacher by Defendant Hillsborough County School Board since the 2021–2022 school year. She teaches math at Lennard

High School. She is certified to teach by Defendant Florida Department of Education, which issued her certificate in her legal name, Katie Wood.

93.     When Ms. Wood started working at Lennard High School, Defendant Hillsborough County School Board was supportive of her transgender status and female gender identity and expression. It allowed her to go by Ms. Wood and she/her pronouns.

94.     Before subsection 3 became law and Defendant Hillsborough County School Board policy, Ms. Wood was permitted to provide to students her Ms. title and she/her pronouns. She would introduce herself as Ms. Wood and write "Ms. Wood" and "she/her" on her syllabi and classroom board.

95.     Before subsection 3 became law and Defendant Hillsborough County School Board policy, Ms. Wood was permitted to tell anyone who misgendered her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her.

96.     Under subsection 3 and Defendant Hillsborough County School Board policy, Ms. Wood may no longer provide to students her Ms. title and she/her pronouns because subsection 3 deems her sex to be male. If Ms. Wood's sex were deemed female, then subsection 3 would not prohibit her from providing her Ms. title and she/her pronouns to students.

97.     Since subsection 3 became law and Defendant Hillsborough County

School Board policy, Lennard High School's principal and Defendant Hillsborough County School Board advised Ms. Wood that she was no longer allowed to go by Ms. because her sex is deemed male and that she instead could go by Mr., Teacher, or Coach.

98.   Going by titles like Mr. and pronouns like he and him would harm Ms. Wood, including emotionally, risk physical harm from others, and disrupt her classroom and ability to do her job. Avoiding titles and pronouns altogether would be impractical, disruptive, and stigmatizing.

99.   Ms. Wood uses a title with her students because it would not be appropriate for Ms. Wood to refer to herself using her first name because that is not how any teachers in her school, as professionals who want to retain the respect of students and colleagues, refer to themselves. Ms. Wood hears and uses her title countless times every day.

100.   Until this Court enjoined Defendants' enforcement of subsection 3 against her, Ms. Wood begrudgingly opted to go by Teacher. She would not have gone by Teacher but for subsection 3. She replaced her name with "Teacher Wood" on her classroom board, introduced herself to students as Teacher Wood, and used Teacher Wood on all communications with students.

101.   Ms. Wood would have introduced herself as Ms. Wood and written "Ms. Wood" and "she/her" on her syllabi and classroom board but for subsection 3.

102. Going by Teacher, a non-gendered title that no male or female teachers at her school use, that misidentifies who she is, and that does not come naturally to her when describing herself, instead of Ms., a title that expresses her female gender identity, caused Ms. Wood to feel stigmatized, distressed, and humiliated.

103. Going by Teacher disrupted Ms. Wood's ability to teach and distracted her students.

104. The risk that she could lose her teaching job and license for violating subsection 3 and Defendant Hillsborough County School Board policy caused Ms. Wood great anxiety and distracted her during work.

105. Most students call Ms. Wood Ms., but some call her Teacher, and some call her Mr.

106. The number and frequency of students calling Ms. Wood Mr. or using he/him pronouns to refer to her increased since the implementation of subsection 3 and Defendant Hillsborough County School Board policy. Before this Court's preliminary injunction, approximately 10 students misgendered Ms. Wood and continued to do so in a manner and context that Ms. Wood understood was intentional, and an estimated 30–40 additional students misgendered Ms. Wood in a manner and context that Ms. Wood understood to be unintentional. Ms. Wood attributes this increase in the number and frequency of students misgendering her to her inability, under subsection 3, to inform students that she goes by Ms. and she/her pronouns.

Being misgendered, even unintentionally, causes Ms. Wood to feel stigmatized, distressed, and humiliated.

107.   Under subsection 3 and Defendant Hillsborough County School Board policy, Ms. Wood may not tell anyone who misgenders her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her because subsection 3 deems her sex to be male.

108.   Ms. Wood may not even tell a student who calls her Mr. or refers to her by he/him pronouns that her title under subsection 3 is Teacher.

109.   If Defendants were no longer enjoined from enforcing subsection 3 against Ms. Wood, the harms described above would resume.

110.   Ms. Wood filed a charge of employment discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) against Defendants Florida Department of Education, Education Practices Commission, and Hillsborough County School Board on December 8, 2023, and against Defendant State Board of Education on December 12, 2023. On February 1, 2024, Ms. Wood received from the U.S. Department of Justice a Notice of Right to Sue letter with respect to Defendants Hillsborough County School Board, Florida Department of Education, Florida State Board of Education, and Florida Education Practices Commission.

111.   On April 24 and 26, 2024, EEOC issued Letters of Determination on the merits of Ms. Wood's charges. EEOC concluded that timeliness and all other

jurisdictional requirements for coverage have been met. EEOC concluded that the evidence obtained in its investigation establishes reasonable cause to believe that Defendants Florida Department of Education, State Board of Education, Education Practices Commission, and Hillsborough County School Board subjected Ms. Wood and a class of transgender employees (both binary and nonbinary) in schools throughout the State of Florida to harassment, a hostile work environment, and different terms and conditions of employment from August 2023 to the present, based on their sex in violation of Title VII, including by not allowing employees to use titles or pronouns associated with their gender identity, and by disciplining, discharging, or constructively discharging employees.

### 2. Effects on Ms. Doe

Plaintiff Jane Doe alleges the following paragraphs 112–123 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Lee County School Board:

112.   Ms. Doe is a transgender woman.

113.   Ms. Doe socially transitioned as a woman after Thanksgiving 2021, at work and everywhere else in life. She legally changed her name and has updated her documents (except for her birth certificate because the law of her state of birth

prohibits it) to reflect her new name and female gender. She presents as a woman. She uses the title Ms. and she/her pronouns.

114.   Ms. Doe has been employed as a teacher by Defendant Lee County School Board since the 2017–2018 school year. She is certified to teach by Defendant Florida Department of Education.

115.   When Ms. Doe socially transitioned at work, Defendant Lee County School Board was supportive of her transgender status and female gender identity and expression. It updated its records to reflect her new name and female gender. It allowed her to go by Ms. Doe and she/her pronouns.

116.   Before subsection 3 became law and Defendant Lee County School Board policy, Ms. Doe was permitted to provide to students her Ms. title and she/her pronouns. She would introduce herself as Ms. Doe and write "Ms. Doe" and "she/her" on her syllabi and classroom board.

117.   Before subsection 3 became law and Defendant Lee County School Board policy, Ms. Doe could tell anyone who misgendered her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her.

118.   Under subsection 3 and Defendant Lee County School Board policy, Ms. Doe may no longer provide to students her Ms. title and she/her pronouns because subsection 3 deems her sex to be male. If Ms. Doe's sex were deemed female, then subsection 3 would not prohibit her from providing her Ms. title and she/her

pronouns to students.

119.   Going by titles like Mr. and pronouns like he and him would harm Ms. Doe, including emotionally, risk physical harm from others, and disrupt her classroom and her ability to do her job. Avoiding titles and pronouns altogether would be impractical and disruptive.

120.   It would not be appropriate for Ms. Doe to refer to herself using her first name because that is not how any teachers in her school, as professionals who want to retain the respect of students and colleagues, refer to themselves.

121.   Under subsection 3 and Defendant Lee County School Board policy, Ms. Doe may not tell anyone who misgenders her at work, such as by using Mr. or he/him pronouns, that her title is Ms. and that her pronouns are she/her because subsection 3 deems her sex to be male.

122.   Ms. Doe filed a charge of employment discrimination with EEOC against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, and Lee County School Board on December 8, 2023. On February 1, 2024, Ms. Doe received from the U.S. Department of Justice a Notice of Right to Sue letter with respect to Defendants Lee County School Board, Florida Department of Education, Florida State Board of Education, and Florida Education Practices Commission.

123.   On April 24, 2024, EEOC issued Letters of Determination on the merits

of Ms. Doe's charges. EEOC concluded that timeliness and all other jurisdictional requirements for coverage have been met. EEOC concluded that the evidence obtained in its investigation establishes reasonable cause to believe that Defendants Florida Department of Education and Lee County School Board subjected Ms. Doe to a hostile working environment and different terms and conditions of her employment because of her sex and gender identity in violation of Title VII. EEOC concluded that the evidence obtained in the investigation establishes reasonable cause to believe that Defendants State Board of Education and Education Practices Commission subjected Ms. Doe and a class of transgender employees (both binary and nonbinary), in schools throughout the State of Florida, to harassment, a hostile work environment, and different terms and conditions of employment from August 2023 to the present, based on their sex in violation of Title VII, including by not allowing employees to use pronouns or courtesy titles associated with their gender identity, and by disciplining, discharging, or constructively discharging employees.

### 3.    Effects on Mx. Schwandes

Plaintiff AV Schwandes alleges the following paragraphs 124–134 against Defendants Florida Department of Education, State Board of Education, Education Practices Commission, Commissioner of Education, Members of Defendant State Board of Education, Members of Defendant Education Practices Commission, and Florida Virtual School Board of Trustees:

124.   Mx. Schwandes is nonbinary; their sex assigned at birth was female, but their gender identity is neither male nor female. They use the title Mx. (pronouncing it *mux*) and they/them pronouns.

125.   Mx. Schwandes was employed as a teacher by Defendant Florida Virtual School Board of Trustees from July 19, 2021, until their termination on October 24, 2023. They taught physical science and then physics. They are certified to teach by Defendant Florida Department of Education.

126.   From 2021 through June or July 2023, Mx. Schwandes used both the titles Professor and Mrs. Starting in June or July of 2023, Mx. Schwandes began to use Mx. and they/them pronouns at work.

127.   At first, Mx. Schwandes's supervisor was okay with their use of Mx., but on August 28, 2023, he directed them to stop using Mx. and to instead use a title like Ms. or Mrs. Mx. Schwandes refused to comply.

128.   On September 15, 2023, Defendant Florida Virtual School Board of Trustees suspended Mx. Schwandes for violating subsection 3 and Defendant Florida Virtual School Board of Trustees policy, directed them to comply with subsection 3 by using Ms., Mrs., or Miss instead of Mx., and threatened to terminate their employment for noncompliance. Defendant Florida Virtual School Board of Trustees also prohibited Mx. Schwandes from using the title Professor, as they had done previously. Mx. Schwandes again refused to comply.

129.   Defendant Florida Virtual School Board of Trustees did not permit Mx. Schwandes to use non-gendered titles like Professor, Doctor, or Teacher.

130.   It would not have been appropriate for Mx. Schwandes to refer to themselves using their first name because that is not how any teacher at Florida Virtual School, as professionals who want to retain the respect of students and colleagues, refer to themselves.

131.   Mx. Schwandes filed a charge of employment discrimination against Defendant Florida Virtual School Board of Trustees with the Florida Commission on Human Relations on September 26, 2023. The next day, Defendant Florida Virtual School Board of Trustees received a copy of Mx. Schwandes's charge of discrimination. The tone and tenor of Defendant Florida Virtual School Board of Trustees supervisors' communications with Mx. Schwandes changed dramatically after they received the charge of discrimination. The interactions were cold, responses were curt, and Mx. Schwandes's supervisors often refused to answer basic questions or engage in conversation. Mx. Schwandes was also denied the opportunity to use the title Professor, even though this did not conflict with Florida law.

132.   On October 24, 2023, Defendant Florida Virtual School Board of Trustees terminated Mx. Schwandes's employment for violating subsection 3 and Defendant Florida Virtual School Board of Trustees policy. Mx. Schwandes was not provided a reason for termination in writing but was told over the phone it was

because of the reasons identified in their relief of duty notice and their subsequent resistance to use the titles and pronouns that Defendant Florida Virtual School Board of Trustees believed correspond to their sex.

133.   Mx. Schwandes filed a charge of employment discrimination against Defendant Florida Virtual School Board of Trustees with EEOC on November 8, 2023. Mx. Schwandes submitted a charge of employment discrimination against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission with EEOC on December 12, 2023. On February 1, 2024, Mx. Schwandes received from the U.S. Department of Justice a Notice of Right to Sue letter with respect to Defendants Florida Virtual School Board of Trustees, Florida Department of Education, and Florida Educational Practices Commission.

134.   On or about January 13, 2024, Mx. Schwandes received a letter dated January 4, 2024, from Defendant Florida Department of Education. The letter stated that, following receipt of a complaint, the Professional Practices Services office had "determined an investigation is warranted into allegations that [Mx. Schwandes] failed to follow directives from [their] employer." Defendant Florida Department of Education is investigating Mx. Schwandes "for noncompliance with [s]ubsection 3." Doc. 60 at 23; Doc. 63-1 at 18.

## CLAIMS FOR RELIEF

## COUNT 1

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By All Plaintiffs Against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission

135.   All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

136.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

("Title VII") makes it "an unlawful employment practice for an employer" "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1).

137.   Defendant is an employer within the meaning of Title VII.

138.   Plaintiff is an individual within the meaning of Title VII.

139.   Under Title VII, it is an unlawful employment practice for Defendant, as an employer within the meaning of Title VII, to discriminate against Plaintiff with respect to Plaintiff's compensation, terms, conditions, or privileges of employment, because of Plaintiff's sex. Title VII prohibits Defendant from interfering with Plaintiff's employment opportunities because of Plaintiff's sex.

140.   Title VII's prohibition against discrimination with respect to terms and conditions of employment is not limited to contractual, economic, or tangible terms and conditions; instead, it "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). It prohibits sex-based discrimination that creates a hostile or abusive work environment. *Meritor Sav. Bank, FSB*, 477 U.S. at 66.

141.   Subsection 3 and its implementing regulations and policies discriminated and discriminate against Plaintiff with respect to the terms and conditions of Plaintiff's employment. They regulated and regulate how Plaintiff may do their work, namely how Plaintiff may refer to themselves in the workplace, which also affected and affects how colleagues, students, and others refer to Plaintiff.

142.   Subsection 3 and its implementing regulations and policies further create a new term of employment for school employees in Florida, including Plaintiff: they must refrain from providing students their titles and pronouns on pain of termination and professional discipline, including losing the right to teach in any school in Florida.

143.   Title VII also prohibits discrimination with respect to "privileges" of employment. "An employer may provide its employees with many benefits that it is under no obligation to furnish …. Such a benefit, though not a contractual right of employment, may qualify as a 'privilege' of employment under Title VII. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (cleaned up). Here, although no principle of Title VII requires Florida to allow teachers to use formal titles with students or to provide their pronouns, once Florida has allowed some teachers to do so, it may not discriminate on

the basis of sex in whom it provides that benefit to.

144.   Even assuming that Plaintiff has not yet been subjected to discrimination with respect to their terms, conditions, or privileges of employment under Title VII, they have standing to bring claims to enjoin future discrimination. If they violate subsection 3 and its implementing regulations and policies, they are likely to lose their job (if they have not already) and license to teach. These acts all constitute discrimination with respect to terms or conditions of employment. Title VII permits injunctive relief to enjoin future harm. 42 U.S.C. § 2000e-5(g) ("[T]he court may enjoin the respondent from engaging in [an] unlawful employment practice."); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) ("[T]he (district) court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." (quoting *Louisiana v. United States*, 380 U.S. 145, 154 (1965))).

145.   Subsection 3 discriminates because of Plaintiff's sex within the meaning Title VII.

146.   By enforcing or threatening to enforce subsection 3, Defendant interfered and interferes with Plaintiff's employment opportunities, in violation of Title VII.

Ms. Wood further alleges:

147.   Subsection 3 also modifies Ms. Wood's terms and conditions of

46

employment because it creates a hostile work environment for her.

148.    To prevail on a hostile work environment theory under Title VII, a plaintiff must show, in relevant part, that she was "subject to unwelcome harassment … based on a protected characteristic," that the harassment was "sufficiently severe or pervasive to alter the conditions of" his employment, and that her "employer was responsible for the hostile work environment." *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 774–75 (11th Cir. 2024) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009)).

149.    Subsection 3 in essence forces Ms. Wood to participate in and ratify her own harassment by requiring her to distinguish herself from other teachers by calling herself Teacher rather than, like all cisgender women in the school, Ms. or Mrs. and by refraining from answering questions about her gender or pronouns. Although subsection 3 does not explicitly force her to misgender herself, it forces her to communicate to students Florida's message that her gender identity is false.

150.    This harassment is pervasive—it affects her every day she teaches. And it is as severe as if she had received the same daily harassment from others. Indeed, by forcing her to repeat and ratify the offensive statements, subsection 3 creates an even more severely harassing environment.

151.    Defendant is responsible for this harassment because it is a direct result of subsection 3 and Defendant's decision to enforce it.

Plaintiff respectfully requests that the Court:

A.    enter judgment for Plaintiff on this count;

B.    declare that Defendant has violated federal law on this count;

C.    enjoin Defendant, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.    award Plaintiff compensatory damages, in an amount to be proved at trial;

E.    award Plaintiff nominal damages;

F.    award Plaintiff costs, attorney's fees, and expert fees; and

G.    grant all further necessary or proper relief.

Mx. Schwandes further respectfully requests:

H.    back pay and front pay, in an amount to be proved at trial.

## COUNT 2

**Preemption by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-7**

Pursuant to 42 U.S.C. § 1983 and the Court's Inherent Equitable Powers

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

152.    All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices

Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

153. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") secures Plaintiff's right not to be discriminated against in employment because of sex.

154. Subsection 3 required and requires Plaintiff's employer to discriminate against Plaintiff in employment because of sex.

155. Subsection 3 is preempted by Title VII because subsection 3 purports to require or permit the doing of an act that would be an unlawful employment practice under Title VII.

156. The Court has the inherent equitable power to enjoin subsection 3

because it conflicts with Title VII and Congress has not shown an intent to prohibit private actions for such injunctive relief.

157.   Plaintiff's right under Title VII not to be discriminated against in employment because of sex is a right secured by the laws of the United States within the meaning of 42 U.S.C. § 1983.

158.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

159.   By enforcing or threatening to enforce subsection 3, Defendant acted and acts under color of state law within the meaning of 42 U.S.C. § 1983.

160.   By enforcing or threatening to enforce subsection 3, Defendant subjected and subjects Plaintiff to the deprivation of Plaintiff's right not to be discriminated against in employment because of sex, which is secured by Title VII.

Plaintiff respectfully requests that the Court:

A.   enter judgment for Plaintiff on this count;

B.   declare that subsection 3 of Florida Statutes § 1000.071 conflicts with and is preempted by federal law on this count;

C.   enjoin Defendant, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.   award Plaintiff compensatory damages, in an amount to be proved at trial;

E.   award Plaintiffs nominal damages;

F.   award Plaintiffs costs, attorney's fees, and expert fees; and

G.   grant all further necessary or proper relief.

Mx. Schwandes further respectfully requests:

H.   back pay and front pay, in an amount to be proved at trial.

## COUNT 3

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

161.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against it.

162.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") makes it "an unlawful employment practice for an employer" "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1).

163.   Defendant Hillsborough County School Board is an employer within

the meaning of Title VII.

164.   Ms. Wood is an individual within the meaning of Title VII.

165.   Under Title VII, it is an unlawful employment practice for Defendant Hillsborough County School Board, as an employer within the meaning of Title VII, to discriminate against Ms. Wood with respect to her compensation, terms, conditions, or privileges of employment, because of her sex.

166.   Title VII's prohibition against discrimination with respect to terms and conditions of employment is not limited to contractual, economic, or tangible terms and conditions; instead, it "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). It prohibits sex-based discrimination that creates a hostile or abusive work environment. *Meritor Sav. Bank, FSB*, 477 U.S. at 66.

167.   Subsection 3 and its implementing regulations and policies discriminated and discriminate against Ms. Wood with respect to her terms and conditions of employment. They regulated and regulate how she may do her work, namely how she may refer to herself in the workplace, which also affected and affects how colleagues, students, and others refer to her.

168.   Subsection 3 and its implementing regulations and policies further

create a new term of employment for school employees in Florida, including Ms. Wood: they must refrain from providing students their titles and pronouns on pain of termination and professional discipline, including losing the right to teach in any school in Florida.

169.   Title VII also prohibits discrimination with respect to "privileges" of employment. "An employer may provide its employees with many benefits that it is under no obligation to furnish …. Such a benefit, though not a contractual right of employment, may qualify as a 'privilege' of employment under Title VII. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (cleaned up). Here, although no principle of Title VII requires Florida to allow teachers to use formal titles with students or to provide their pronouns, once Florida has allowed some teachers to do so, it may not discriminate on the basis of sex in whom it provides that benefit to.

170.   Subsection 3 also modifies Ms. Wood's terms and conditions of employment because it creates a hostile work environment for her.

171.   To prevail on a hostile work environment theory under Title VII, a plaintiff must show, in relevant part, that she was "subject to unwelcome harassment … based on a protected characteristic," that the harassment was "sufficiently severe

or pervasive to alter the conditions of" his employment, and that her "employer was responsible for the hostile work environment." *Copeland v. Ga. Dep't of Corr.*, 97 F.4th 766, 774–75 (11th Cir. 2024) (quoting *Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009)).

172.   Subsection 3 in essence forces Ms. Wood to participate in and ratify her own harassment by requiring her to distinguish herself from other teachers by calling herself Teacher rather than, like all cisgender women in the school, Ms. or Mrs. and by refraining from answering questions about her gender or pronouns. Although subsection 3 does not explicitly force her to misgender herself, it forces her to communicate to students Florida's message that her gender identity is false.

173.   This harassment is pervasive—it affects her every day she teaches. And it is as severe as if she had received the same daily harassment from others. Indeed, by forcing her to repeat and ratify the offensive statements, subsection 3 creates an even more severely harassing environment.

174.   Defendant Hillsborough County School Board is responsible for this harassment because it is a direct result of subsection 3 and Defendant Hillsborough County School Board's decision to enforce it.

175.   Even assuming that Ms. Wood has not yet been subjected to discrimination with respect to her terms, conditions, or privileges of employment under Title VII, she has standing to bring claims to enjoin future discrimination. If she violates

subsection 3 and its implementing regulations and policies, she is likely to lose her job and license to teach. These acts all constitute discrimination with respect to terms or conditions of employment. Title VII permits injunctive relief to enjoin future harm. 42 U.S.C. § 2000e-5(g) ("[T]he court may enjoin the respondent from engaging in [an] unlawful employment practice."); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) ("[T]he (district) court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." (quoting *Louisiana v. United States*, 380 U.S. 145, 154 (1965))).

176.   Subsection 3 discriminates because of sex within the meaning Title VII.

177.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board discriminated and discriminates against Ms. Wood with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

Ms. Wood respectfully requests that the Court:

A.   enter judgment for her on this count;

B.   declare that Defendant Hillsborough County School Board has violated federal law on this count;

C.   enjoin Defendant Hillsborough County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in

active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

     D.     award her compensatory damages, in an amount to be proved at trial;

     E.     award her nominal damages;

     F.     award her costs, attorney's fees, and expert fees; and

     G.     grant all further necessary or proper relief.

## COUNT 4

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff Jane Doe Against Defendant Lee County School Board

178.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against it.

179.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") makes it "an unlawful employment practice for an employer" "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1).

180.   Defendant Lee County School Board is an employer within the meaning of Title VII.

181.   Ms. Doe is an individual within the meaning of Title VII.

182.   Under Title VII, it is an unlawful employment practice for Defendant Lee County School Board, as an employer within the meaning of Title VII, to discriminate against Ms. Doe with respect to her compensation, terms, conditions, or privileges of employment, because of her sex.

183.   Title VII's prohibition against discrimination with respect to terms and conditions of employment is not limited to contractual, economic, or tangible terms and conditions; instead, it "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). It prohibits sex-based discrimination that creates a hostile or abusive work environment. *Meritor Sav. Bank, FSB*, 477 U.S. at 66.

184.   Subsection 3 and its implementing regulations and policies discriminated and discriminate against Ms. Doe with respect to her terms and conditions of employment. They regulated and regulate how she may do her work, namely how she may refer to herself in the workplace, which also affected and affects how colleagues, students, and others refer to her.

185.   Subsection 3 and its implementing regulations and policies further create a new term of employment for school employees in Florida, including Ms. Doe: they must refrain from providing students their titles and pronouns on pain of termination and professional discipline, including losing the right to teach in any school in Florida.

186.   Title VII also prohibits discrimination with respect to "privileges" of employment. "An employer may provide its employees with many benefits that it is under no obligation to furnish …. Such a benefit, though not a contractual right of employment, may qualify as a 'privilege' of employment under Title VII. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (cleaned up). Here, although no principle of Title VII requires Florida to allow teachers to use formal titles with students or to provide their pronouns, once Florida has allowed some teachers to do so, it may not discriminate on the basis of sex in whom it provides that benefit to.

187.   Even assuming that Ms. Doe has not yet been subjected to discrimination with respect to her terms, conditions, or privileges of employment under Title VII, she has standing to bring claims to enjoin future discrimination. If she violates subsection 3 and its implementing regulations and policies, she is likely to lose her

job and license to teach. These acts all constitute discrimination with respect to terms or conditions of employment. Title VII permits injunctive relief to enjoin future harm. 42 U.S.C. § 2000e-5(g) ("[T]he court may enjoin the respondent from engaging in [an] unlawful employment practice."); *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 418 (1975) ("[T]he (district) court has not merely the power but the duty to render a decree which will so far as possible eliminate the discriminatory effects of the past as well as bar like discrimination in the future." (quoting *Louisiana v. United States*, 380 U.S. 145, 154 (1965))).

188.   Subsection 3 discriminates because of sex within the meaning Title VII.

189.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board discriminated and discriminates against Ms. Doe with respect to her terms, conditions, or privileges of employment because of sex, in violation of Title VII.

Ms. Doe respectfully requests that the Court:

A.   enter judgment for her on this count;

B.   declare that Defendant Lee County School Board has violated federal law on this count;

C.   enjoin Defendant Lee County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida

Statutes § 1000.071;

    D.    award her compensatory damages, in an amount to be proved at trial;

    E.    award her nominal damages;

    F.    award her costs, attorney's fees, and expert fees; and

    G.    grant all further necessary or proper relief.

## COUNT 5

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discrimination Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

190.   Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against it.

191.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") makes it "an unlawful employment practice for an employer" "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1).

192.   Defendant Florida Virtual School Board of Trustees was Mx.

Schwandes's employer within the meaning of Title VII.

193.   Mx. Schwandes is an individual within the meaning of Title VII.

194.   Subsection 3 discriminates because of sex within the meaning Title VII.

195.   Subsection 3 was a term or condition of Mx. Schwandes's employment within the meaning of Title VII.

196.   Subsection 3 affected the terms and conditions of Mx. Schwandes's employment within the meaning of Title VII.

197.   Requiring Mx. Schwandes to comply with subsection 3 was an adverse employment action under Title VII.

198.   By enforcing subsection 3, Defendant Florida Virtual School Board of Trustees discriminated against Mx. Schwandes with respect to terms, conditions, or privileges of employment because of sex, in violation of Title VII.

Mx. Schwandes respectfully requests that the Court:

A.   enter judgment for them on this count;

B.   declare that Defendant Florida Virtual School Board of Trustees has violated federal law on this count;

C.   award them compensatory damages, in an amount to be proved at trial;

D.   award them back pay and front pay, in an amount to be proved at trial;

E.   award them nominal damages;

F.   award them costs, attorney's fees, and expert fees; and

G.      grant all further necessary or proper relief.

## COUNT 6

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2**

**Discharge Because of Sex**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

199.   Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against it.

200.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") makes it "an unlawful employment practice for an employer" "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1).

201.   Defendant Florida Virtual School Board of Trustees was Mx. Schwandes's employer within the meaning of Title VII.

202.   Mx. Schwandes is an individual within the meaning of Title VII.

203.   Subsection 3 discriminates because of sex within the meaning Title VII.

204.   Discharging Mx. Schwandes for not complying with subsection 3 was

62

an adverse employment action under Title VII.

205.   Defendant Florida Virtual School Board of Trustees discharged Mx. Schwandes because of sex, in violation of Title VII.

Mx. Schwandes respectfully requests that the Court:

A.   enter judgment for them on this count;

B.   declare that Defendant Florida Virtual School Board of Trustees has violated federal law on this count;

C.   award them compensatory damages, in an amount to be proved at trial;

D.   award them back pay and front pay, in an amount to be proved at trial;

E.   award them nominal damages;

F.   award them costs, attorney's fees, and expert fees; and

G.   grant all further necessary or proper relief.

## COUNT 7

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By Plaintiffs Katie Wood and Jane Doe Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

206.   Plaintiffs Katie Wood and Jane Doe bring this claim against Defendants Commissioner of Education, Members of Defendant State Board of Education, and

Members of Defendant Education Practices Commission. Plaintiff Katie Wood re-alleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

207.   Subsection 3 violates the Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

208.   Plaintiff had and has free speech rights while at work, including in the classroom and during work hours.

209.   Plaintiff's providing Plaintiff's title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

210.   Plaintiff's speech was and is Plaintiff's own speech and message, not Defendant's or the government's. Neither Defendant nor the government commissioned or created Plaintiff's speech. Plaintiff was not and is not speaking pursuant to government policy. Plaintiff was not and is not seeking to convey a government-created message. Plaintiff was not and is not instructing students, encouraging better

performance, or engaging in any other speech that Defendant paid and pays Plaintiff to produce as a teacher. Plaintiff's speech did not and does not owe its existence to Plaintiff's responsibilities as a public employee.

211.   Plaintiff's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

212.   Plaintiff's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

213.   Plaintiff's strong interest in being allowed to express Plaintiff's gender identity by using Plaintiff's title and pronouns outweighs any government interest, if any, in preventing Plaintiff from doing so.

214.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

215.   By enforcing or threatening to enforce subsection 3, Defendant was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

216.   By enforcing or threatening to enforce subsection 3, Defendant was and is subjecting Plaintiff to the deprivation of Plaintiff's right to freedom of speech secured by the First and Fourteenth Amendments.

Plaintiff respectfully requests that the Court:

A.    enter judgment for her on this count;

B.    declare that Defendant has violated federal law on this count;

C.    enjoin Defendant, its officers, agents, servants, employees, attorneys,

and successors, and other persons who are in active concert or participation with any

such person from enforcing subsection 3 of Florida Statutes § 1000.071;

    D.    award her compensatory damages, in an amount to be proved at trial;

    E.    award her nominal damages;

    F.    award her costs, attorney's fees, and expert fees; and

    G.    grant all further necessary or proper relief.

### COUNT 8

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

217.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against it.

218.   Subsection 3 violates the Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

219.   Ms. Wood had and has free speech rights while at work, including in the classroom and during work hours.

220.   Ms. Wood's providing her title and pronouns to students, within the

meaning of subsection 3, was and is speech protected by the First Amendment.

221.   Ms. Wood's speech was and is her own speech and message, not Defendant Hillsborough County School Board's or the government's. Neither Defendant Hillsborough County School Board nor the government commissioned or created her speech. She was not and is not speaking pursuant to government policy. She was not and is not seeking to convey a government-created message. She was not and is not instructing students, encouraging better performance, or engaging in any other speech that Defendant Hillsborough County School Board paid and pays her to produce as a teacher. Her speech did not and does not owe its existence to her responsibilities as a public employee.

222.   Ms. Wood's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

223.   Ms. Wood's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

224.   Ms. Wood's strong interest in being allowed to express her gender identity by using her title and pronouns outweighs any government interest, if any, in preventing her from doing so.

225.   Defendant Hillsborough County School Board is a person within the meaning of 42 U.S.C. § 1983.

226.   Subsection 3 was and is an official policy of Defendant Hillsborough

County School Board.

227.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

228.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is subjecting Ms. Wood to the deprivation of her right to freedom of speech secured by the First and Fourteenth Amendments.

Ms. Wood respectfully requests that the Court:

A.   enter judgment for her on this count;

B.   declare that Defendant Hillsborough County School Board has violated federal law on this count;

C.   enjoin Defendant Hillsborough County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.   award her compensatory damages, in an amount to be proved at trial;

E.   award her nominal damages;

F.   award her costs, attorney's fees, and expert fees; and

G.   grant all further necessary or proper relief.

**COUNT 9**

**Violation of the First and Fourteenth Amendments to the U.S. Constitution**

**Deprivation of Freedom of Speech**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Jane Doe Against Defendant Lee County School Board

229.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against it.

230.   Subsection 3 violates the Free Speech Clause of the First Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment to the U.S. Constitution.

231.   Ms. Doe had and has free speech rights while at work, including in the classroom and during work hours.

232.   Ms. Doe's providing her title and pronouns to students, within the meaning of subsection 3, was and is speech protected by the First Amendment.

233.   Ms. Doe's speech was and is her own speech and message, not Defendant Lee County School Board's or the government's. Neither Defendant Lee County School Board nor the government commissioned or created her speech. She was not and is not speaking pursuant to government policy. She was not and is not seeking to convey a government-created message. She was not and is not instructing

students, encouraging better performance, or engaging in any other speech that Defendant Lee County School Board paid and pays her to produce as a teacher. Her speech did not and does not owe its existence to her responsibilities as a public employee.

234.   Ms. Doe's speech was not and is not government speech subject to government control just because students heard it and will or might hear it.

235.   Ms. Doe's speech implicated and implicates a matter of public concern for purposes of the First Amendment.

236.   Ms. Doe's strong interest in being allowed to express her gender identity by using her title and pronouns outweighs any government interest, if any, in preventing her from doing so.

237.   Defendant Lee County School Board is a person within the meaning of 42 U.S.C. § 1983.

238.   Subsection 3 was and is an official policy of Defendant Lee County School Board.

239.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

240.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is subjecting Ms. Doe to the deprivation of her right

to freedom of speech secured by the First and Fourteenth Amendments.

Ms. Doe respectfully requests that the Court:

A.    enter judgment for her on this count;

B.    declare that Defendant Lee County School Board has violated federal law on this count;

C.    enjoin Defendant Lee County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.    award her compensatory damages, in an amount to be proved at trial;

E.    award her nominal damages;

F.    award her costs, attorney's fees, and expert fees; and

G.    grant all further necessary or proper relief.

## COUNT 10

**Violation of the Fourteenth Amendment to the U.S. Constitution**

**Deprivation of Equal Protection of the Laws**

Pursuant to 42 U.S.C. § 1983

By All Plaintiffs Against Defendants Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission

241. All Plaintiffs separately bring this claim against Defendants

Commissioner of Education, Members of Defendant State Board of Education, and Members of Defendant Education Practices Commission. Plaintiff Katie Wood re-alleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

242.  Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

243.  Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

244.  Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

245.  Subsection 3 fails intermediate scrutiny because Defendant cannot demonstrate an exceedingly persuasive justification—one that is genuine, not

hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

246.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

247.   Defendant is a person within the meaning of 42 U.S.C. § 1983.

248.   By enforcing or threatening to enforce subsection 3, Defendant was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

249.   By enforcing or threatening to enforce subsection 3, Defendant was and is subjecting Plaintiff to the deprivation of Plaintiff's right to equal protection of the laws secured by the Fourteenth Amendment.

Plaintiff respectfully requests that the Court:

A.   enter judgment for Plaintiff on this count;

B.   declare that Defendant has violated federal law on this count;

C.   enjoin Defendant, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any

such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.     award Plaintiff compensatory damages, in an amount to be proved at trial;

E.     award Plaintiff nominal damages;

F.     award Plaintiff costs, attorney's fees, and expert fees; and

G.     grant all further necessary or proper relief.

Mx. Schwandes further respectfully requests:

H.     back pay and front pay, in an amount to be proved at trial.

## COUNT 11

### Violation of the Fourteenth Amendment to the U.S. Constitution

### Deprivation of Equal Protection of the Laws

Pursuant to 42 U.S.C. § 1983

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

250.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against it.

251.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

252.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

253.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

254.   Subsection 3 fails intermediate scrutiny because Defendant Hillsborough County School Board cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant Hillsborough County School Board cannot show that subsection 3 serves an important governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

255.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

256.   Defendant Hillsborough County School Board is a person within the meaning of 42 U.S.C. § 1983.

257.   Subsection 3 is an official policy of Defendant Hillsborough County School Board.

258.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is acting under color of state law within the

meaning of 42 U.S.C. § 1983.

259.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board was and is subjecting Ms. Wood to the deprivation of her right to equal protection of the laws secured by the Fourteenth Amendment.

Ms. Wood respectfully requests that the Court:

A.   enter judgment for her on this count;

B.   declare that Defendant Hillsborough County School Board has violated federal law on this count;

C.   enjoin Defendant Hillsborough County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.   award her compensatory damages, in an amount to be proved at trial;

E.   award her nominal damages;

F.   award her costs, attorney's fees, and expert fees; and

G.   grant all further necessary or proper relief.

## COUNT 12

**Violation of the Fourteenth Amendment to the U.S. Constitution**

**Deprivation of Equal Protection of the Laws**

Pursuant to 42 U.S.C. § 1983

By Plaintiff Jane Doe Against Defendant Lee County School Board

260.   Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against it.

261.   Subsection 3 violates the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

262.   Subsection 3 classifies on the basis of sex within the meaning of the Equal Protection Clause.

263.   Subsection 3 is subject to intermediate scrutiny under the Equal Protection Clause.

264.   Subsection 3 fails intermediate scrutiny because Defendant Lee County School Board cannot demonstrate an exceedingly persuasive justification—one that is genuine, not hypothesized, not invented *post hoc* in response to litigation, and that does not rely on overbroad generalizations about the different talents, capacities, or preferences of males and females—for its discrimination because of sex. Defendant Lee County School Board cannot show that subsection 3 serves an important

77

governmental objective because there is none, and it cannot show that its discriminatory means are substantially related to the achievement of that objective because they cannot be.

265.   Even if subsection 3 is instead subject to rational-basis review, it fails rational-basis review because its discriminatory classification does not bear a rational relation to any legitimate end.

266.   Defendant Lee County School Board is a person within the meaning of 42 U.S.C. § 1983.

267.   Subsection 3 is an official policy of Defendant Lee County School Board.

268.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is acting under color of state law within the meaning of 42 U.S.C. § 1983.

269.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board was and is subjecting Ms. Doe to the deprivation of her right to equal protection of the laws secured by the Fourteenth Amendment.

Ms. Doe respectfully requests that the Court:

A.   enter judgment for her on this count;

B.   declare that Defendant Lee County School Board has violated federal law on this count;

C.     enjoin Defendant Lee County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.     award her compensatory damages, in an amount to be proved at trial;

E.     award her nominal damages;

F.     award her costs, attorney's fees, and expert fees; and

G.     grant all further necessary or proper relief.

## COUNT 13

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By All Plaintiffs Against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission

270.    All Plaintiffs separately bring this claim against Defendants Florida Department of Education, State Board of Education, and Education Practices Commission. Plaintiff Katie Wood realleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against them. When answering Ms. Wood's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Wood. Plaintiff Jane Doe realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against

them. When answering Ms. Doe's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Ms. Doe. Plaintiff AV Schwandes realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against them. When answering Mx. Schwandes's claim against them in this count, each of those Defendants should read "Plaintiff" to refer only to Mx. Schwandes. Each of those Defendants should read "Defendant" in the paragraphs of this count to refer only to that answering Defendant.

271.   Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." § 1681(a).

272.   Plaintiff is a person within the meaning of Title IX.

273.   Defendant operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

274.   Title IX claims are analyzed under the framework for Title VII claims. *See, e.g.*, *Kocsis v. Fla. State Univ. Bd. of Trs.*, 788 F. App'x 680, 686 (11th Cir. 2019); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 n.7 (11th Cir. 2013).

275.   Title IX's prohibition against discrimination, when applied to

employees, is not limited to contractual, economic, or tangible terms and conditions; instead, it "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). It prohibits sex-based discrimination that creates a hostile or abusive work environment. *Meritor Sav. Bank, FSB*, 477 U.S. at 66.

276.   Subsection 3 and its implementing regulations and policies discriminated and discriminate against Plaintiff with respect to the terms and conditions of Plaintiff's employment. They regulated and regulate how Plaintiff may do their work, namely how Plaintiff may refer to themselves in the workplace, which also affected and affects how colleagues, students, and others refer to Plaintiff.

277.   Subsection 3 and its implementing regulations and policies further create a new term of employment for school employees in Florida, including Plaintiff: they must refrain from providing students their titles and pronouns on pain of termination and professional discipline, including losing the right to teach in any school in Florida.

278.   Like Title VII, Title IX also prohibits discrimination with respect to "privileges" of employment. "An employer may provide its employees with many benefits that it is under no obligation to furnish …. Such a benefit, though not a contractual right of employment, may qualify as a 'privilege' of employment under

81

Title [IX]. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (cleaned up). Here, although no principle of Title IX requires Florida to allow teachers to use formal titles with students or to provide their pronouns, once Florida has allowed some teachers to do so, it may not discriminate on the basis of sex in whom it provides that benefit to.

279.   Even assuming that Plaintiff has not yet been subjected to discrimination with respect to their terms, conditions, or privileges of employment under Title IX, they have standing to bring claims to enjoin future discrimination. If they violate subsection 3 and its implementing regulations and policies, they are likely to lose their job (if they have not already) and license to teach. These acts all constitute discrimination with respect to terms or conditions of employment. Title IX permits injunctive relief to enjoin future harm. *See, e.g.*, *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc) ("[T]he Supreme Court also has read in an implied private right of action for damages and injunctive relief." (citing cases)).

280.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

281.   By enforcing or threatening to enforce subsection 3, Defendant, on the

basis of Plaintiff's sex, excludes Plaintiff from participation in, denies Plaintiff the benefits of, and subjects Plaintiff to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

Plaintiff respectfully requests that the Court:

A.     enter judgment for Plaintiff on this count;

B.     declare that Defendant has violated federal law on this count;

C.     enjoin Defendant, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.     award Plaintiff compensatory damages, in an amount to be proved at trial;

E.     award Plaintiff nominal damages;

F.     award Plaintiff costs, attorney's fees, and expert fees; and

G.     grant all further necessary or proper relief.

Mx. Schwandes further respectfully requests:

H.     back pay and front pay, in an amount to be proved at trial.

## COUNT 14

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.***

**Discrimination on the Basis of Sex**

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et*

*seq.*

By Plaintiff Katie Wood Against Defendant Hillsborough County School Board

282.   Plaintiff Katie Wood brings this claim against Defendant Hillsborough County School Board and realleges paragraphs 4, 7–12, 14, 16–66, and 84–111 against it.

283.   Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." § 1681(a).

284.   Ms. Wood is a person within the meaning of Title IX.

285.   Defendant Hillsborough County School Board operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

286.   Title IX claims are analyzed under the framework for Title VII claims. *See, e.g.*, *Kocsis v. Fla. State Univ. Bd. of Trs.*, 788 F. App'x 680, 686 (11th Cir. 2019); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 n.7 (11th Cir. 2013).

287.   Title IX's prohibition against discrimination, when applied to employees, is not limited to contractual, economic, or tangible terms and conditions; instead,

it "evinces a congressional intent to strike at the entire spectrum of disparate treat-ment of men and women in employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)). It prohibits sex-based discrimination that creates a hostile or abusive work environment. *Meritor Sav. Bank, FSB*, 477 U.S. at 66.

288.   Subsection 3 and its implementing regulations and policies discrimi-nated and discriminate against Ms. Wood with respect to her terms and conditions of employment. They regulated and regulate how she may do her work, namely how she may refer to herself in the workplace, which also affected and affects how col-leagues, students, and others refer to her.

289.   Subsection 3 and its implementing regulations and policies further cre-ate a new term of employment for school employees in Florida, including Ms. Wood: they must refrain from providing students their titles and pronouns on pain of termi-nation and professional discipline, including losing the right to teach in any school in Florida.

290.   Like Title VII, Title IX also prohibits discrimination with respect to "privileges" of employment. "An employer may provide its employees with many benefits that it is under no obligation to furnish .... Such a benefit, though not a contractual right of employment, may qualify as a 'privilege' of employment under Title [IX]. A benefit that is part and parcel of the employment relationship may not

be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (cleaned up). Here, although no principle of Title IX requires Florida to allow teachers to use formal titles with students or to provide their pronouns, once Florida has allowed some teachers to do so, it may not discriminate on the basis of sex in whom it provides that benefit to.

291.   Even assuming that Ms. Wood has not yet been subjected to discrimination with respect to her terms, conditions, or privileges of employment under Title IX, she has standing to bring claims to enjoin future discrimination. If she violates subsection 3 and its implementing regulations and policies, she is likely to lose her job and license to teach. These acts all constitute discrimination with respect to terms or conditions of employment. Title IX permits injunctive relief to enjoin future harm. *See, e.g.*, *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc) ("[T]he Supreme Court also has read in an implied private right of action for damages and injunctive relief." (citing cases)).

292.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

293.   By enforcing or threatening to enforce subsection 3, Defendant Hillsborough County School Board, on the basis of Ms. Wood's sex, excludes her from participation in, denies her the benefits of, and subjects her to discrimination, under

an education program or activity receiving federal financial assistance, in violation of Title IX.

Ms. Wood respectfully requests that the Court:

A.    enter judgment for her on this count;

B.    declare that Defendant Hillsborough County School Board has violated federal law on this count;

C.    enjoin Defendant Hillsborough County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.    award her compensatory damages, in an amount to be proved at trial;

E.    award her nominal damages;

F.    award her costs, attorney's fees, and expert fees; and

G.    grant all further necessary or proper relief.

## COUNT 15

**Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.***

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By Plaintiff Jane Doe Against Defendant Lee County School Board

294. Plaintiff Jane Doe brings this claim against Defendant Lee County School Board and realleges paragraphs 5, 7–12, 15, 17–57, 67–76, 84–89, and 112–123 against it.

295. Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"), provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." § 1681(a).

296. Ms. Doe is a person within the meaning of Title IX.

297. Defendant Lee County School Board operates education programs or activities receiving federal financial assistance within the meaning of Title IX.

298. Title IX claims are analyzed under the framework for Title VII claims. *See, e.g.*, *Kocsis v. Fla. State Univ. Bd. of Trs.*, 788 F. App'x 680, 686 (11th Cir. 2019); *Bowers v. Bd. of Regents of Univ. Sys. of Ga.*, 509 F. App'x 906, 911 n.7 (11th Cir. 2013).

299. Title IX's prohibition against discrimination, when applied to employees, is not limited to contractual, economic, or tangible terms and conditions; instead, it "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S.

57, 64 (1986)). It prohibits sex-based discrimination that creates a hostile or abusive work environment. *Meritor Sav. Bank, FSB*, 477 U.S. at 66.

300.   Subsection 3 and its implementing regulations and policies discriminated and discriminate against Ms. Doe with respect to her terms and conditions of employment. They regulated and regulate how she may do her work, namely how she may refer to herself in the workplace, which also affected and affects how colleagues, students, and others refer to her.

301.   Subsection 3 and its implementing regulations and policies further create a new term of employment for school employees in Florida, including Ms. Doe: they must refrain from providing students their titles and pronouns on pain of termination and professional discipline, including losing the right to teach in any school in Florida.

302.   Like Title VII, Title IX also prohibits discrimination with respect to "privileges" of employment. "An employer may provide its employees with many benefits that it is under no obligation to furnish .... Such a benefit, though not a contractual right of employment, may qualify as a 'privilege' of employment under Title [IX]. A benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (cleaned up). Here, although no principle of Title

IX requires Florida to allow teachers to use formal titles with students or to provide their pronouns, once Florida has allowed some teachers to do so, it may not discriminate on the basis of sex in whom it provides that benefit to.

303.   Even assuming that Ms. Doe has not yet been subjected to discrimination with respect to her terms, conditions, or privileges of employment under Title IX, she has standing to bring claims to enjoin future discrimination. If she violates subsection 3 and its implementing regulations and policies, she is likely to lose her job and license to teach. These acts all constitute discrimination with respect to terms or conditions of employment. Title IX permits injunctive relief to enjoin future harm. *See, e.g.*, *Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, 57 F.4th 791 (11th Cir. 2022) (en banc) ("[T]he Supreme Court also has read in an implied private right of action for damages and injunctive relief." (citing cases)).

304.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

305.   By enforcing or threatening to enforce subsection 3, Defendant Lee County School Board, on the basis of Ms. Doe's sex, excludes her from participation in, denies her the benefits of, and subjects her to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

Ms. Doe respectfully requests that the Court:

A.     enter judgment for her on this count;

B.    declare that Defendant Lee County School Board has violated federal law on this count;

C.    enjoin Defendant Lee County School Board, its officers, agents, servants, employees, attorneys, and successors, and other persons who are in active concert or participation with any such person from enforcing subsection 3 of Florida Statutes § 1000.071;

D.    award her compensatory damages, in an amount to be proved at trial;

E.    award her nominal damages;

F.    award her costs, attorney's fees, and expert fees; and

G.    grant all further necessary or proper relief.

## COUNT 16

### Violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

### Discrimination on the Basis of Sex

Pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

306.    Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against it.

307.    Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et*

*seq.* ("Title IX"), provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." § 1681(a).

308.   Mx. Schwandes is a person within the meaning of Title IX.

309.   Defendant Florida Virtual School Board of Trustees operated education programs or activities receiving federal financial assistance, within the meaning of Title IX, during Mx. Schwandes's employment.

310.   Subsection 3 discriminates on the basis of sex within the meaning Title IX.

311.   By enforcing subsection 3 and terminating Mx. Schwandes for not complying with subsection 3, Defendant Florida Virtual School Board of Trustees, on the basis of Mx. Schwandes's sex, excluded them from participation in, denied them the benefits of, and subjected them to discrimination, under an education program or activity receiving federal financial assistance, in violation of Title IX.

Mx. Schwandes respectfully requests that the Court:

A.   enter judgment for them on this count;

B.   declare that Defendant Florida Virtual School Board of Trustees has violated federal law on this count;

C.   award them compensatory damages, in an amount to be proved at trial;

D.    award them back pay and front pay, in an amount to be proved at trial;

E.    award them nominal damages;

F.    award them costs, attorney's fees, and expert fees; and

G.    grant all further necessary or proper relief.

## COUNT 17

**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3**

**Retaliation**

Pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5

By Plaintiff AV Schwandes Against Defendant Florida Virtual School Board of Trustees

312.   Plaintiff AV Schwandes brings this claim against Defendant Florida Virtual School Board of Trustees and realleges paragraphs 6, 7–13, 17–50, 77–89, and 124–134 against it.

313.   Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") makes it "an unlawful employment practice for an employer to discriminate against any of his employees … because he has opposed any practice made an unlawful employment practice by [42 U.S.C. ch. 21, subch. VI], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [42 U.S.C. ch. 21, subch. VI]." 42 U.S.C. § 2000e-3(a).

314.   Defendant Florida Virtual School Board of Trustees was Mx.

Schwandes's employer within the meaning of Title VII.

315.  Mx. Schwandes was Defendant Florida Virtual School Board of Trustees's employee within the meaning of Title VII.

316.  Mx. Schwandes engaged in activities protected under 42 U.S.C. § 2000e-3(a) when they opposed Defendant Florida Virtual School Board of Trustees's policy of prohibiting teachers from using pronouns, titles, and honorifics that did not conform to their sex by communicating their concerns that such a policy violated civil rights law.

317.  Mx. Schwandes further engaged in activities protected under 42 U.S.C. § 2000e-3(a) on September 26, 2023, when they filed a charge of discrimination with the Equal Employment Opportunity Commission through the Florida Commission on Human Relations regarding Defendant Florida Virtual School Board of Trustees's discriminatory policy.

318.  Defendant Florida Virtual School Board of Trustees violated 42 U.S.C. § 2000e-3(a) on October 24, 2023, when it, through its agent Jillian Cheek, took materially adverse employment action against Mx. Schwandes by firing them with the purpose of retaliating against them because of their participation in protected activities and opposition to sex discrimination.

Mx. Schwandes respectfully requests that the Court:

A.      enter judgment for them on this count;

B.     declare that Defendant Florida Virtual School Board of Trustees has violated federal law on this count;

C.     award them compensatory damages, in an amount to be proved at trial;

D.     award them back pay and front pay, in an amount to be proved at trial;

E.     award them nominal damages;

F.     award them costs, attorney's fees, and expert fees; and

G.     grant all further necessary or proper relief.

### JURY DEMAND

Plaintiffs demand a jury trial on all issues triable of right by a jury.

Respectfully submitted.

April 29, 2024                    Sam Boyd, Fla. Bar No. 1012141
                                  Carli Raben, Fla. Bar No. 1036013
                                  SOUTHERN POVERTY LAW CENTER
                                  2 S. Biscayne Blvd. Ste. 3750
                                  Miami, FL 33131
                                  (786) 347-2056
                                  (786) 237-2949 (fax)
                                  sam.boyd@splcenter.org
                                  carli.raben@splcenter.org

                                  Aaron S. Fleisher[*†]
                                  SOUTHERN POVERTY LAW CENTER
                                  1101 17th St NW Ste. 705
                                  Washington, DC 20036
                                  (202) 536-9719
                                  (202) 971-9205 (fax)
                                  aaron.fleisher@splcenter.org
                                  [†] *Not admitted to practice law in DC*

/s/ Diego A. Soto
Diego A. Soto[*]
Jessica L. Stone[*]
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 221-5837
(404) 221-5857 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg[*]
James Baltzer[*]
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com

*Counsel for Plaintiffs*

[*] Admitted *pro hac vice*