# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

|  |  |
|---|---|
| Wood, *et al.*,<br><br>       *Plaintiffs*,<br><br>       v.<br><br>Florida Department of Education, *et al.*,<br><br>       *Defendants*. | Case No. 4:23-cv-526-MW-MAF |

# STATE DEFENDANTS' MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO DISMISS
# PLAINTIFFS' SECOND AMENDED COMPLAINT IN PART

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION ................................................................................... 1

ARGUMENT ......................................................................................... 3

  I.   Count 1 violates this Court's order permitting amendment
      and is impermissible shotgun pleading. .......................................... 3

  II.  Plaintiffs' Title VII and Title IX disparate treatment claims
      still fail to allege adverse employment action (Counts 1, 13). ........ 7

  III. Plaintiffs cannot seek injunctive relief without having
      suffered adverse employment action (Counts 1, 13). ................... 10

  IV. Wood has not plausibly alleged a hostile work environment
      claim (Count 1). .......................................................................... 12

      A. Wood has not alleged harassment. ........................................... 13

      B. The alleged harassment is not severe and pervasive. .............. 16

      C. The State Defendants are not responsible for any
         students not using Wood's preferred pronouns in
         Wood's work environment. ....................................................... 25

CONCLUSION ................................................................................... 26

# TABLE OF AUTHORITIES

## Cases

*Aburaad v. Haines City*,
  2022 WL 861578 (M.D. Fla. Mar. 23, 2022) .......................................... 9

*Albemarle Paper Co. v. Moody*,
  422 U.S. 405 (1975) ............................................................................... 12

*Amaya v. Vilsack*,
  2024 WL 1285162 (S.D. Fla. Mar. 26, 2024)............................... 5, 6, 15

*Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*,
  77 F.3d 364 (11th Cir. 1996)................................................................... 5

*Barreth v. Reyes 1, Inc.*,
  2020 WL 4370137 (M.D. Ga. July 29, 2020)........................................ 20

*Bone v. All. Inv. Co.*,
  2020 WL 5984017 (N.D. Ala. Oct. 8, 2020) ........................................... 6

*Brookshire v. GMR Mktg. LLC*,
  2022 WL 4124302 (S.D. Fla. Aug. 17, 2022)........................................ 22

*Cincinnati Ins. Co. v. Cochran*,
  2006 WL 4495335 (11th Cir. Dec. 27, 2006) ......................................... 4

*Copeland v. Ga. Dep't of Corr.*,
  97 F.4th 766 (11th Cir. 2024) .................................................. 21, 23, 24

*Cross v. State of Ala., State Dep't of Mental
  Health & Mental Retardation*,
  49 F.3d 1490 (11th Cir. 1995)............................................................... 18

*Cushmeer-Muhammad v. Fulton County*,
  2009 WL 10665773 (N.D. Ga. July 7, 2009) .......................................... 4

*Davis v. Legal Servs. Ala., Inc.*,
  19 F.4th 1261 (11th Cir. 2021) ............................................................... 8

*Edwards v. Prime, Inc.*,
  602 F.3d 1276 (11th Cir. 2010)............................................................. 13

*Eller v. Prince George's Cnty. Pub. Schs.*,
    580 F. Supp. 3d 154 (D. Md. 2022) ...................................................... 24

*Faragher v. City of Boca Raton*,
    524 U.S. 775 (1998) ................................................................................ 18

*Faulkenberry v. U.S. Dep't of Def.*,
    670 F. Supp. 3d 234 (D. Md. 2023) ...................................................... 24

*Fernandez v. Trees, Inc.*,
    961 F.3d 1148 (11th Cir. 2020) ................................................ 17, 19, 23

*GJR Invs., Inc. v. County of Escambia*,
    132 F.3d 1359 (11th Cir. 1998) ............................................................ 16

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993) ................................................................................. 18

*Harris v. Pub. Health Tr. of Miami-Dade Cnty.*,
    2020 WL 1933169 (S.D. Fla. Apr. 14, 2020) ........................................ 6

*Henson v. City of Dundee*,
    682 F.2d 897 (11th Cir. 1982) ........................................................ 14, 25

*Herron-Williams v. Ala. State Univ.*,
    287 F. Supp. 3d 1299 (M.D. Ala. 2018) .............................................. 12

*Hester v. Bd. of Educ. of Prince George's Cnty.*,
    2022 WL 7088293 (D. Md. Oct. 12, 2022) .......................................... 24

*Hill v. Allianz Life Ins. Co. of N. Am.*,
    2015 WL 12838838 (M.D. Fla. June 17, 2015) ..................................... 4

*Hishon v. King & Spalding*,
    467 U.S. 69 (1984) ................................................................................... 9

*Kennedy v. Austin*,
    2023 WL 3931961 (S.D. Ga. June 9, 2023) .......................................... 6

*Little v. CRSA*,
    744 F. App'x 679 (11th Cir. 2018) ...................................................... 26

*Madrid v. Helen Homes of Kendall Corp.*,
    2017 WL 7794603 (S.D. Fla. July 17, 2017) ......................................... 3

*Maryam v. LSG Sky Chefs,*
2023 WL 11052639 (N.D. Ga. Sept. 7, 2023) ...................................... 19

*McCone v. Pitney Bowes, Inc.,*
582 F. App'x 798 (11th Cir. 2014) ....................................................... 11

*Mendoza v. Borden, Inc.,*
195 F.3d 1238 (11th Cir. 1999)............................................................. 17

*Miller v. Kenworth of Dothan, Inc.,*
277 F.3d 1269 (11th Cir. 2002)............................................................. 17

*Milo v. CyberCore Techs., LLC,*
2019 WL 4447400 (D. Md. Sept. 17, 2019) ......................................... 24

*Milo v. CyberCore Techs., LLC,*
2020 WL 134537 (D. Md. Jan. 13, 2020)............................................... 23

*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.,*
60 F.4th 1314 (11th Cir. 2023) ............................................................. 15

*Oncale v. Sundowner Offshore Servs., Inc.,*
523 U.S. 75 (1998) ................................................................................ 14

*Peeler v. Premier Ambulatory Surgical Ctr., LLC,*
2019 WL 13290394 (N.D. Ga. Feb. 6, 2019) ....................................... 10

*Riley v. CSX Transp., Inc.,*
2023 WL 5302973 (M.D. Fla. Aug. 17, 2023)......................................... 6

*Rojas v. Florida,*
285 F.3d 1339 (11th Cir. 2002)............................................................. 13

*Rossi v. Fulton County,*
2013 WL 1213243 (N.D. Ga. Feb. 13, 2013) ....................................... 10

*Smelter v. S. Home Care Servs. Inc.,*
904 F.3d 1276 (11th Cir. 2018)............................................................. 23

*Surtain v. Hamlin Terrace Found.,*
789 F.3d 1239 (11th Cir. 2015)............................................................. 11

*Sutherland v. Boehringer-Ingelheim Pharms., Inc.,*
700 F. App'x 955 (11th Cir. 2017) ....................................................... 11

*Terrell v. Paulding County*,
539 F. App'x 929 (11th Cir. 2013) ........................................................ 14

*Tonkyro v. Sec'y, Dep't of Veterans Affs.*,
995 F.3d 828 (11th Cir. 2021)........................................................ 16, 17

*Torres v. Pasco Cnty. Bd. of Cnty. Comm'rs*,
2021 WL 3550369 (M.D. Fla. Aug. 11, 2021)...................................... 19

*Travis v. Hosp. Housekeeping Sys., LLC*,
2020 WL 13680269 (N.D. Fla. Jan. 13, 2020)...................................... 25

*Versace v. Starwood Hotels & Resorts Worldwide, Inc.*,
2015 WL 12820072 (M.D. Fla. Dec. 7, 2015) ...................................... 23

*Vibe Micro, Inc. v. Shabanets*,
878 F.3d 1291 (11th Cir. 2018)............................................................... 5

*Washburn v. Kingsborough Cmty. Coll.*,
2023 WL 2682521 (E.D.N.Y. Mar. 29, 2023) ................................ 20, 21

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
792 F.3d 1313 (11th Cir. 2015)........................................................ 4, 16

*White v. DaimlerChrysler Motors Co.*,
2006 WL 8431865 (N.D. Ga. June 13, 2006) ........................................ 9

*White v. Potter*,
2007 WL 1330378 (N.D. Ga. Apr. 30, 2007) ...................................... 21

*Wilcox v. Corr. Corp. of Am.*,
892 F.3d 1283 (11th Cir. 2018)............................................................ 25

*Yelling v. St. Vincent's Health Sys.*,
82 F.4th 1329 (11th Cir. 2023) ............................................................ 23

## Statutes

42 U.S.C. § 2000e-2(a)(1)........................................................................ 12

42 U.S.C. § 2000e-5(g)(1)........................................................................ 11

Fla. Stat. §1000.071(3) ............................................................................ 21

**Other Authorities**

*Harassment*, Black's Law Dictionary (11th ed. 2019) ............................ 13

**Rules**

Fed. R. Civ. P. 10(b) ......................................................................... 4

Fed. R. Civ. P. 8(a)(2) ....................................................................... 4

## INTRODUCTION

This Court granted in part and denied in part the State Defendants' first motion to dismiss. MTD Order (Dkt. 91). The Court dismissed Plaintiffs' individual Title VII claim and Title IX claim against the State Defendants (Counts 1, 13) for failure to allege adverse employment action. *Id.* at 5–8, 16. The Court permitted Plaintiffs to file a second amended complaint to "cure the defects." *Id.* at 17.

Plaintiffs replead their Title VII and Title IX claims in three ways. First, they reassert that mere compliance with Subsection 3 constitutes adverse employment action. Second Am. Compl. (SAC) (Dkt. 94) ¶¶139–43, 275–78. Second, they claim that even if they have not suffered adverse employment action due to sex discrimination, they still can seek injunctive relief under Title VII and Title IX. *Id.* ¶¶144, 279. Third, Wood asserts a new cause of action under Title VII that Subsection 3 has created a hostile work environment. *Id.* ¶¶147–51.

Plaintiffs' Title VII and Title IX claims against the State Defendants (Counts 1, 13) should be dismissed. As a threshold matter, Plaintiffs' second amended complaint suffers from two fatal flaws: it "stray[s]

beyond the[] narrow confines" of the Court's order permitting amendment, MTD Order 17, by pleading a new cause of action—Wood's hostile work environment claim—and it is an impermissible shotgun pleading. Those defects alone warrant dismissal.

Even if the Court excused those defects, Plaintiffs still fail to state Title VII and Title IX claims. This Court has twice held that merely being required to comply with Subsection 3 is not adverse employment action. Plaintiffs cannot artfully plead their way around that holding. Moreover, Plaintiffs cannot maintain a Title VII claim for purely prospective relief without having suffered adverse employment action due to sex discrimination. And Wood's vague, conclusory allegations of sexual harassment creating a hostile work environment—whether from complying with Subsection 3 and going by "Teacher" or from students not using Wood's preferred pronouns—fail to state a plausible claim for relief. Accordingly, Counts 1 and 13 of Plaintiffs' second amended complaint should be dismissed.

# ARGUMENT

## I. Count 1 violates this Court's order permitting amendment and is impermissible shotgun pleading.

**A.** Count 1 of Plaintiffs' second amended complaint should be dismissed for violating this Court's order dismissing the first amended complaint. The Court granted Plaintiffs leave to amend "[i]f Plaintiffs believe they can cure the defects by amending their complaint." MTD Order 17. The Court stated that it was "only allowing Plaintiffs to cure those defects this Court has previously identified" and was "not granting Plaintiffs a blank slate to plead new causes of action." *Id.* The Court ordered that Plaintiffs "must seek leave" should they "seek to stray beyond these narrow confines." *Id.*

Despite that instruction, Plaintiffs have pleaded a new cause of action in Count 1 without the Court's leave. In addition to the original disparate treatment claim, Count 1 now includes a hostile work environment claim for Wood. It is well established that "[c]laims for discrimination based upon a hostile work environment are entirely separate and distinct from claims for discrimination based upon … disparate treatment." *Madrid v. Helen Homes of Kendall Corp.*, 2017 WL 7794603, at *2 (S.D. Fla. July 17, 2017). They are "distinct causes of action" that

"require[] different elements of proof and a separate factual basis." *Cushmeer-Muhammad v. Fulton County*, 2009 WL 10665773, at *12 (N.D. Ga. July 7, 2009). Plaintiffs' disregard for this Court's order warrants striking Wood's hostile work environment claim. *See, e.g.*, *Hill v. Allianz Life Ins. Co. of N. Am.*, 2015 WL 12838838, at *4 (M.D. Fla. June 17, 2015) (striking amended complaint for asserting claims that exceeded scope of court's order permitting amendment); *see also Cincinnati Ins. Co. v. Cochran*, 2006 WL 4495335, at *3 (11th Cir. Dec. 27, 2006) (holding district court "was well within its discretion when it struck … counterclaim on the basis that it exceeded the scope of the original order" permitting amendment).

**B.** Count 1 should also be dismissed on shotgun-pleading grounds. Shotgun pleadings are pleadings that violate Rule 8(a)(2), Rule 10(b), or both. *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015). These Rules provide that pleadings "must contain … a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), claims must be "limited as far as practicable to a single set of circumstances," and "each claim founded on

a separate transaction or occurrence … must be stated in a separate count," Fed. R. Civ. P. 10(b).

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018). Shotgun pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (cleaned up); *accord Anderson v. Dist. Bd. of Trs. of Cent. Fla. Cmty. Coll.*, 77 F.3d 364, 367 (11th Cir. 1996). A district court's "'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' … includes the ability to dismiss a complaint on shotgun pleading grounds." *Vibe Micro*, 878 F.3d at 1295.

In the Title VII context, "each theory of liability on which the discrimination claim is based constitutes a separate cause of action—and therefore must be pled in a separate count." *Amaya v. Vilsack*, 2024 WL 1285162, at *2 (S.D. Fla. Mar. 26, 2024) (internal quotations omitted). A count that "contains both a hostile work environment claim and a disparate treatment claim" is "impermissible shotgun pleading" because the "claims have different elements" and so "two causes of action [are]

contained in a single count." *Bone v. All. Inv. Co.*, 2020 WL 5984017, at *9 (N.D. Ala. Oct. 8, 2020).

Here, Count 1 "'commits the sin of not separating into a different count each cause of action or claim for relief' because it contains a disparate treatment claim *and* a hostile work environment claim." *Kennedy v. Austin*, 2023 WL 3931961, at *5 (S.D. Ga. June 9, 2023) (quoting *Weiland*, 792 F.3d at 1323). Such shotgun pleading warrants dismissal. *See, e.g.*, *Amaya*, 2024 WL 1285162, at *2 (granting motion to dismiss where count alleged "multiple theories of liability (and, therefore, multiple *claims*), including 'hostile work environment and disparate treatment'"); *Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 2020 WL 1933169, at *4 (S.D. Fla. Apr. 14, 2020) (dismissing for shotgun pleading where complaint "impermissibly combine[d] claims for a hostile work environment and discrimination"); *Riley v. CSX Transp., Inc.*, 2023 WL 5302973, at *1 (M.D. Fla. Aug. 17, 2023) (striking complaint *sua sponte* where counts "include[d] two separate causes of action, one premised on disparate treatment and the other on a substantive hostile work environment").

## II. Plaintiffs' Title VII and Title IX disparate treatment claims still fail to allege adverse employment action (Counts 1, 13).

Looking past the pleading defects, Plaintiffs' second amended complaint does not allege adverse employment action by the State Defendants and thus fails to state disparate treatment claims under Title VII and Title IX.[1] Plaintiffs allege that Subsection 3 "create[s] a new term of employment for school employees" to "refrain from providing students their titles and pronouns." SAC ¶¶142, 277. They also allege that the use of personal titles and pronouns is a "benefit" that qualifies as a "privilege" of employment. *Id.* ¶¶143, 278.

Twice this Court has held that merely being required to comply with Subsection 3 is not actionable adverse employment action. PI Order (Dkt. 82) 14–15; MTD Order 5–7, 16. The Court reasoned that this requirement does not impact Plaintiffs' "salary" or "status as a teacher" and does not diminish "the prestige or responsibility of [the] position as an educator." PI Order 15; *accord Davis v. Legal Servs. Ala., Inc.*, 19

---

[1] The State Defendants maintain and preserve their arguments that Subsection 3 does not discriminate based on sex and that Title VII preempts Plaintiffs' Title IX claims. *See* First MTD (Dkt. 63-1) 8–16, 21–22, 39–40; First MTD Reply (Dkt. 73) 3–15, 34–37. The State Defendants do not reraise these arguments in this motion given this Court's directive not "to re-raise arguments for dismissal that this Court has already rejected." MTD Order 17; *see id.* at 5 n.3, 15–16.

F.4th 1261, 1266 (11th Cir. 2021) (per curiam). The Court's conclusion "hinge[d] on the *type* of harm suffered, not the *severity* of that harm." MTD Order 7. As the Court explained, while Wood and Doe "may have alleged harm," their use of personal titles and pronouns is not "an identifiable term or condition of employment." *Id.* (quoting *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 974 (2024)). "Title VII only recognizes a certain subset of employer mistreatment as actionable," and Subsection 3 does not impose "the type of injury recognized as a 'term or condition' of employment under Title VII." *Id.* The Court also acknowledged that "there is simply no authority recognizing that this type of policy constitutes a term or condition of employment." *Id.*

Nothing has changed since this Court's orders. Plaintiffs merely reassert that compliance with Subsection 3 is adverse employment action. *See* SAC ¶¶141–43, 276–78. It is not. Twice this Court has rejected that premise. PI Order 14–15; MTD Order 5–7, 16. Plaintiffs' attempt to reassert the same disparate treatment claims under Title VII and Title IX fails.

Plaintiffs try to repackage their allegations around this Court's holdings. They claim Subsection 3 "regulate[s] how Plaintiff[s] may do

8

their work, namely how Plaintiff[s] may refer to themselves in the work-place." SAC ¶¶141, 276. But actions that merely affect *how* an employee performs job responsibilities, even actions that make employment more "difficult," are not actionable. *See White v. DaimlerChrysler Motors Co.*, 2006 WL 8431865, at *16 (N.D. Ga. June 13, 2006); *see also Aburaad v. Haines City*, 2022 WL 861578, at *3 (M.D. Fla. Mar. 23, 2022). Subsection 3 does not affect Plaintiffs' salary, status, prestige, or responsibilities as teachers. PI Order 15.

Nor is use of personal titles and pronouns a protected "benefit" or "privilege" of employment. *Contra* SAC ¶¶143, 278. A "benefit" can be a "privilege of employment" under Title VII if it "is part and parcel of the employment relationship." *Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984). In *Hishon*, partnership consideration was a "benefit" and "privilege" of employment because "associates could regularly expect to be considered for partnership at the end of their 'apprenticeships,'" and the employer "explicitly used the prospect of ultimate partnership to induce young lawyers to join the firm." *Id.* at 76. Thus, "to succeed under *Hishon*," a plaintiff must "show that the promise of receiving [the al-

leged benefit] was a primary factor inducing Plaintiff to work for Defendant, such that it became 'a term, condition, or privilege of her employment.'" *Peeler v. Premier Ambulatory Surgical Ctr., LLC*, 2019 WL 13290394, at *18 (N.D. Ga. Feb. 6, 2019), *report & recommendation adopted*, 2019 WL 13292758 (Mar. 29, 2019). Neither Wood nor Doe allege that the ability to use preferred titles and pronouns induced them to work as Florida public school teachers, so their claim fails. *See id.* (receiving a laptop not a protected privilege); *see also Rossi v. Fulton County*, 2013 WL 1213243, at *14 (N.D. Ga. Feb. 13, 2013) (recommending that receiving new equipment not a protected privilege), *adopted*, 2013 WL 1213139 (Mar. 22, 2013). Accordingly, Counts 1 and 13 fail to state disparate treatment claims under Title VII and Title IX.[2]

## III. Plaintiffs cannot seek injunctive relief without having suffered adverse employment action (Counts 1, 13).

Plaintiffs attempt to plead Title VII and Title IX claims against the State Defendants for injunctive relief without any showing of dis-

---

[2] Insofar as Schwandes still asserts a Title VII and Title IX claim against the State Defendants, twice this Court has held that FDOE's investigation alone does not constitute adverse employment action. MTD Order 8; PI Order 18–22. Schwandes alleges nothing new that changes that conclusion.

crimination or adverse employment action. They allege that, "[e]ven assuming that Plaintiff[s] ha[ve] not yet been subjected to discrimination with respect to their terms, conditions, or privileges of employment" under Title VII and Title XI, "they have standing to bring claims to enjoin future discrimination." SAC ¶¶144, 279. They are incorrect.

To state a claim for sex discrimination, a complaint must "plausibly suggest that the plaintiff suffered an adverse employment action due to intentional [sex] discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam). Adverse employment action is "a prerequisite for any Title VII anti-discrimination claim." *Sutherland v. Boehringer-Ingelheim Pharms., Inc.*, 700 F. App'x 955, 959 (11th Cir. 2017) (per curiam). Having failed to allege adverse employment action, Plaintiffs' Title VII and Title IX claims must be dismissed. *See, e.g.*, *McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 800–01 (11th Cir. 2014) (per curiam).

Plaintiffs claim "Title VII permits injunctive relief to enjoin future harm," citing 42 U.S.C. § 2000e-5(g)(1). SAC ¶144; *see* SAC ¶279. But Title VII provides for injunctive relief only "[i]f the court finds that the respondent has intentionally engaged in or is intentionally engaging in

an unlawful employment practice charged in the complaint." 42 U.S.C. § 2000e-5(g)(1). This is not a grant of authority to enter prospective injunctive relief absent adverse employment action due to sex discrimination.

Quite the contrary. "The requirement that a Title VII plaintiff show she suffered an adverse employment action stems from Title VII's definition of an unlawful employment practice." *Herron-Williams v. Ala. State Univ.*, 287 F. Supp. 3d 1299, 1311 (M.D. Ala. 2018), *aff'd*, 805 F. App'x 622 (11th Cir. 2020); *see* 42 U.S.C. § 2000e-2(a)(1). So without adverse employment action, there is no "unlawful employment practice" and thus no basis for injunctive relief. Plaintiffs' only cited case, *Albemarle Paper Co. v. Moody*, confirms that Title VII provides for injunctive relief "to make persons whole for injuries suffered on account of unlawful employment discrimination." 422 U.S. 405, 418 (1975). *Contra* SAC ¶144. Accordingly, Plaintiffs' claims for injunctive relief fail.

## IV. Wood has not plausibly alleged a hostile work environment claim (Count 1).

Even if it were not procedurally barred, *see supra* Part I, Wood's new Title VII hostile work environment cause of action fails to state a claim. SAC ¶¶147–51. A hostile work environment claim arises where

12

"the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Rojas v. Florida*, 285 F.3d 1339, 1344 (11th Cir. 2002) (per curiam). To state a hostile work environment claim, a plaintiff must allege that (1) he belongs to a protected class; (2) he experienced unwelcome harassment; (3) the harassment was based on his membership in the protected class; (4) the harassment "was severe or pervasive enough to alter the terms and conditions of employment and create a hostile or abusive working environment"; and (5) "the employer is responsible for that environment." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010). Wood has not plausibly alleged at least the second, fourth, and fifth elements.

### A. Wood has not alleged harassment.

Harassment consists of "[w]ords, conduct, or action … that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose." *Harassment*, Black's Law Dictionary (11th ed. 2019). By its very nature, harassment is done by another person. *See, e.g., Oncale v. Sundowner*

13

*Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998) (describing "male-female" and "male-on-male" sexual harassment); *see also, e.g.*, *Terrell v. Paulding County*, 539 F. App'x 929, 932 (11th Cir. 2013) (per curiam) ("Liability for hostile work environment differs depending on whether the harassment was perpetrated by a co-worker or a supervisor.").

Wood alleges that "Subsection 3 in essence forces … Wood to participate in and ratify [Wood's] own harassment" by requiring Wood to use the neutral title "Teacher" and "refrain[] from answering questions about [Wood's] gender or pronouns." SAC ¶149. It also "forces [Wood] to communicate to students Florida's message that [Wood's] gender identity is false." *Id.* Wood claims "[t]his harassment … is as severe as if [Wood] had received the same daily harassment from others" and is "even more severely harassing" because it "forc[es] [Wood] to repeat and ratify the offensive statements." *Id.* ¶150. In other words, Wood alleges that Subsection 3 requires self-harassment. Title VII protects against harassment by "supervisors, coworkers, or even strangers to the workplace." *Henson v. City of Dundee*, 682 F.2d 897, 910 (11th Cir. 1982) (citations omitted). But there is no support for the notion that it protects

against harassment of one's own self. Wood accordingly has not alleged cognizable harassment for the asserted hostile work environment claim.

Elsewhere in Plaintiffs' complaint, Wood alleges that students have "misgendered" Wood—*i.e.*, called Wood "Mr." or used "he/him pronouns." SAC ¶¶105–06. But nowhere does Count 1 state that these allegations relate to Wood's hostile work environment claim. Wood's alleged theory of harassment is based solely on Wood's alleged self-harassment. *See id.* ¶¶147–51. Wood even recognizes that "subsection 3 does not explicitly force [Wood] to misgender [Wood's] []self." *Id.* ¶149.

When pleading, "each count must 'state with *specificity* both the factual *and legal basis* for the claim it sets forth.'" *Amaya*, 2024 WL 1285162, at *2 (second emphasis added). While "[a] complaint need not specify in detail the precise theory giving rise to recovery," it must give the defendant notice "as to the claim being asserted against him and the grounds on which it rests." *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1319 (11th Cir. 2023). This requirement exists so the "adversary can discern what he is claiming and frame a responsive pleading, [and] the court can determine which facts support

which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland*, 792 F.3d at 1320.

Here, Wood, represented by counsel, has specified in detail the precise theory Wood believes gives rise to liability, and it is not based on students failing to use Wood's preferred title or pronouns. Not even for *pro se* litigants may courts "rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1369 (11th Cir. 1998), *overruled on other grounds by Ashcroft v. Iqbal*, 556 U.S. 662 (2009). It would be improper to construe Wood's hostile work environment theory as anything other than the self-harassment Wood specifies.

**B. The alleged harassment is not severe and pervasive.**

To satisfy the severe and pervasive element, "the employer's actions must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceives to be abusive." *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, 995 F.3d 828, 837 (11th Cir. 2021) (cleaned up). Courts consider four factors in assessing the "objective severity of the harassment":

(1) its "frequency"; (2) its "severity"; (3) whether it is "physically threatening or humiliating, or a mere offensive utterance"; and (4) whether it "unreasonably interferes with the employee's job performance." *Id.*

**1.** Wood claims the self-harassment that "subsection 3 creates" is "pervasive" because it affects Wood's teaching "every day." SAC ¶150. Wood alleges that "[g]oing by Teacher" has "caused … Wood to feel stigmatized, distressed, and humiliated" and has "disrupted … Wood's ability to teach and distracted [Wood's] students." *Id.* ¶¶102–03. While Wood alleges the self-harassment occurs daily, "the frequency of it does not compensate for the absence of the [three] other factors." *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1248 (11th Cir. 1999) (en banc).

First, Wood's alleged self-harassment is not severe. Wood's use of "Teacher" is not harassment at all and pales in comparison to conduct deemed sufficiently severe. *See, e.g.*, *Fernandez v. Trees, Inc.*, 961 F.3d 1148, 1154 (11th Cir. 2020) (severeness shown where harasser "continually—often in vulgar terms—disparaged, ridiculed, and insulted all the employees in a protected class"); *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276–77 (11th Cir. 2002) (harassment severe where cowork-

ers "hurled the ethnic slurs" and "used the derogatory names in an intimidating manner, shouting them at [plaintiff] during the course of berating him"); *Cross v. State of Ala., State Dep't of Mental Health & Mental Retardation*, 49 F.3d 1490, 1495–48, 1507 (11th Cir. 1995) (severeness shown where harasser "constantly belittled and yelled at females," "threw things" at them, engaged in finger pointing, made derogatory comments, and "told sexual and dirty jokes"). To find that the innocuous use of the title "Teacher"—no different than respectable titles like "Coach," "Principal," "Professor," or "Dean"—is objectively severe would transform Title VII into the "general civility code" that the Supreme Court has repeatedly said it is not. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).

Second, Wood's "[g]oing by Teacher" is not objectively humiliating, and it doesn't even qualify as a mere offensive utterance. No "reasonable person" would find use of Teacher to be "hostile," "abusive," or even "offensive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (noting the "mere utterance of an epithet which engenders offensive feelings in a[n] employee does not … implicate Title VII" (cleaned up)). It is true that "derogatory comments … made in the presence of co-workers enhances

18

the level of humiliation suffered." *Fernandez*, 961 F.3d at 1155. But nothing in Subsection 3 bars Wood from using biologically incongruous titles or pronouns with co-workers. Thus, Wood's alleged self-harassment occurs only in the presence of students, diminishing any alleged humiliation.

Third, Wood provides no facts supporting the allegations that "[g]oing by Teacher" disrupted Wood's teaching and distracted students. Wood's conclusory allegations do not plausibly establish objective severity to support a hostile work environment claim. *See, e.g.*, *Torres v. Pasco Cnty. Bd. of Cnty. Comm'rs*, 2021 WL 3550369, at *4 (M.D. Fla. Aug. 11, 2021) (dismissing claim where plaintiff provided only "a conclusory statement" and no "sufficient facts to show that the conduct unreasonably interfered with her work performance"); *Maryam v. LSG Sky Chefs*, 2023 WL 11052639, at *5 (N.D. Ga. Sept. 7, 2023) (recommending dismissal where plaintiff's "sparse and conclusory" allegations left "unclear just how the[] alleged [harassing] comments interfered with her ability to do her job"), *adopted*, 2024 WL 1195535 (Mar. 20, 2024).

**2.** Even if Wood's hostile work environment claim was based on students not using Wood preferred title and pronouns, it still would not

satisfy the severe and pervasive element. Wood alleges that "some" students call Wood "Teacher" and "some" call Wood "Mr." SAC ¶105. Wood alleges that before this Court's preliminary injunction, in three years working as a Florida public school teacher, "approximately 10 students misgendered … Wood and continued to do so in a manner and context that … Wood understood was intentional," while "an estimated 30–40 additional students" did not use Wood's preferred title or pronouns unintentionally. *Id.* ¶¶92, 106. Wood's "vague, conclusory allegations do not satisfy [Wood's] obligation to allege facts concerning the who, what, where, when, how, and how often of the purported misgendering." *Washburn v. Kingsborough Cmty. Coll.*, 2023 WL 2682521, at *13 (E.D.N.Y. Mar. 29, 2023).

First, as to frequency, Wood's allegations are "extremely general and vague" without "a shred of detail"—failing to "identify any speaker or potential harasser," "provide an approximate date on which these unnamed speakers made their allegedly disparaging comments," or allege "how often they did so." *Barreth v. Reyes 1, Inc.*, 2020 WL 4370137, at *6–7 (M.D. Ga. July 29, 2020). Wood merely alleges that the "number

and frequency" of students not using Wood's preferred pronouns in-
creased after Subsection 3 took effect. SAC ¶106. But Wood's allegations
"do[] not reveal how often." PI Order 17. Without alleging such details,
Wood "do[es] not provide the Court with any basis to quantify whether
[the] conduct was frequent." *White v. Potter*, 2007 WL 1330378, at *15
(N.D. Ga. Apr. 30, 2007) (rejecting "general allegations that [plaintiff's]
co-workers called him gay and harassed him for 11 months"); *see also
Washburn*, 2023 WL 2682521, at *13 (rejecting hostile work environ-
ment claim based on not using plaintiff's preferred pronouns where com-
plaint was "devoid of allegations as to what was said, who made the
statements, when these statements were made, or the frequency").

Second, Wood's allegations do not establish severity because "the
circumstances surrounding the misgendering remain unclear." PI Order
18. Harassment is "more severe when it involves the participation of
supervisors rather than solely peers or subordinates" and "when it oc-
curs 'despite the employee's objections.'" *Copeland v. Ga. Dep't of Corr.*,
97 F.4th 766, 777 (11th Cir. 2024). Courts also consider "the social con-
text in which particular behavior occurs and is experienced by its tar-
get." *Id.* at 778.

Wood does not allege that supervisors or peers failed to use Wood's preferred pronouns—only that *students*, who are *minors*, did so. SAC ¶106; *cf. also id.* ¶93 (conceding school "was supportive" of Wood's "female gender identity and expression"). In addition, Wood now merely claims to be unable to "tell anyone," including "student[s]," who refers to Wood by "Mr." or "he/him" that they should use other titles or pronouns. *Id.* ¶¶107–08. But Subsection 3 prohibits only employees from "provid[ing] to a student" biologically incongruous titles and pronouns. Fla. Stat. §1000.071(3). Nothing stops Wood from providing Ms. and she/her pronouns to other *employees* or from objecting to students who refer to Wood with masculine titles and pronouns—for example, "I go by Teacher Wood, and that's how you should address me." And the context in which the alleged conduct occurred does not suggest severity because Wood provides no supporting details of that context. *See* PI Order 18; *Brookshire v. GMR Mktg. LLC*, 2022 WL 4124302, at *4 (S.D. Fla. Aug. 17, 2022), *report & recommendation adopted*, 2022 WL 4119729 (Sept. 9, 2022); *see also Milo v. CyberCore Techs., LLC* (*Milo II*), 2020 WL

134537, at *6 (D. Md. Jan. 13, 2020) (dismissing where complaint "provide[d] little insight into the nature … of the misgendering [plaintiff] alleges").

Third, Wood has not shown objective humiliation. Wood does not allege that students failed to use Wood's preferred pronouns "in the presence of co-workers." *Fernandez*, 961 F.3d at 1155; *cf. Copeland*, 97 F.4th at 779 (humiliation shown where "coworkers were listening" and "heard … laughing"). Wood does not say whether students directed the allegedly offensive pronouns at Wood or if Wood merely overheard them. *See Yelling v. St. Vincent's Health Sys.*, 82 F.4th 1329, 1336 (11th Cir. 2023) (per curiam) ("overhearing offensive comments is less … humiliating than being the intended target of direct harassment"); *see also Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1286 (11th Cir. 2018). In any event, courts have explained that the failure to use one's preferred pronouns is more offensive than it is humiliating. While it "may be considered upsetting," the failure to use one's preferred pronouns "is not profane." *Versace v. Starwood Hotels & Resorts Worldwide, Inc.*, 2015 WL 12820072, at *7 (M.D. Fla. Dec. 7, 2015); *see Milo v. CyberCore Techs., LLC (Milo I)*, 2019 WL 4447400, at *6 (D. Md. Sept. 17,

2019) (dismissing because, although plaintiff "was offended," "co-worker's references to 'him' or 'he' rather than 'her' or 'she'" were not "extremely serious"); *see also Faulkenberry v. U.S. Dep't of Def.*, 670 F. Supp. 3d 234, 255 (D. Md. 2023) (noting that the failure to use one's preferred pronouns "is not the stuff of which hostile work environment claims are made").[3]

Finally, again, Wood does not allege facts showing that students' failure to use Wood's preferred pronouns in any way disrupted Wood's

---

[3] In cases where not using the plaintiff's preferred pronouns has supported a hostile work environment claim, it was accompanied by severe and pervasive conduct that itself established a hostile work environment. *See, e.g.*, *Copeland*, 97 F.4th at 771-72 (plaintiff "encountered gossip and harassing remarks" like plaintiff "must have a 'dildo' in [plaintiff's] pants" and was "taunted" and called "baby girl" by supervisor; colleagues openly "joked about transgender people and their genitalia"; others "ma[de] inappropriate comments" about "gender identity" to plaintiff; and coworker threated to "fight" plaintiff, "pushed" plaintiff, and "circled" plaintiff while armed, causing plaintiff to "fear[] for [plaintiff's] life"); *Eller v. Prince George's Cnty. Pub. Schs.*, 580 F. Supp. 3d 154, 173 (D. Md. 2022) (plaintiff also was called "a wide range of derogatory terms … including 'tranny,' 'fag,' 'gay,' 'homo,' 'tranny,' and 'booty slayer,'" received "threats of physical violence, including a threat of rape" and a threat that plaintiff's "house would be burned down," and "was even subjected to multiple physical assaults," one of which caused plaintiff "to cry out in pain"); *Hester v. Bd. of Educ. of Prince George's Cnty.*, 2022 WL 7088293, at *6 (D. Md. Oct. 12, 2022) (plaintiff was also "frequently called a 'faggot'"; "students consistently taunted, bullied, and harassed [plaintiff] for being gay"; "parents participated in this harassment"; "the harassment from students also included physical attacks and threats"; and plaintiff's supervisor "mocked [plaintiff's] sexual orientation," "yelled at [plaintiff] within inches of [plaintiff's] face," "stalked [plaintiff] outside of school property, growled and bared his teeth at [plaintiff], whispered insults into [plaintiff's] ear, and used the word 'oral' in a sexually suggestive way").

job performance. Indeed, the only allegations of disruption concern using the title of "Teacher." *See* SAC ¶103.

*   *   *

Because Wood fails to satisfy the severe and pervasive element, regardless how Wood's claim is construed, Wood's hostile work environment claim should be dismissed. *E.g.*, *Travis v. Hosp. Housekeeping Sys., LLC*, 2020 WL 13680269, at *3 (N.D. Fla. Jan. 13, 2020).

### C. The State Defendants are not responsible for any students not using Wood's preferred pronouns in Wood's work environment.

For an employer to be responsible for a hostile work environment, the plaintiff "must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action." *Henson*, 682 F.2d at 905. A plaintiff can show actual knowledge of harassment if "she complained to management about it." *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1287 (11th Cir. 2018). A plaintiff can show that the employer "should have known about harassment that was so pervasive as to create an inference of constructive knowledge." *Id.*

Here, Wood does not allege that the State Defendants had actual knowledge of students not using Wood's preferred pronouns in the workplace. Nor does Wood allege such pervasive harassment to create an inference of constructive knowledge. Accordingly, Wood cannot satisfy the fifth element of a hostile work environment claim based on students not using Wood's preferred title or pronouns. *See, e.g.*, *Little v. CRSA*, 744 F. App'x 679, 682–83 (11th Cir. 2018) (per curiam).

## CONCLUSION

This Court should grant the motion and dismiss Counts 1 and 13 of Plaintiffs' second amended complaint.

Dated: May 28, 2024                    Respectfully submitted,

*/s/ Bryan Weir*
Bryan Weir*
Daniel Shapiro
Daniel M. Vitagliano*
CONSOVOY MCCARTHY PLLC
1600 Wilson Boulevard, Suite 700
Arlington, VA 22209
Telephone: 703.243.9423
bryan@consovoymccarthy.com
daniel@consovoymccarthy.com
dvitagliano@consovoymccarthy.com
*Counsel for the State Defendants*

*Admitted pro hac vice

26

**CERTIFICATE OF WORD COUNT**

Consistent with Local Rule 7.1(F), this memorandum contains 5,164 words.

*/s/ Bryan Weir*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of May, 2024, a true and correct copy of this memorandum was filed with the Court's CM/ECF system, which will provide service to all parties.

*/s/ Bryan Weir*