UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

Katie Wood, *et al.*,

                *Plaintiffs*,

v.                                No. 4:23-cv-00526-MW-MAF

Florida Department of Education, *et al.*,

                *Defendants*.

_____/

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT REGARDING OUT-OF-CLASSROOM SPEECH UNDER THE FIRST AMENDMENT**

The Eleventh Circuit's decision in this case addressed only Plaintiff Katie Wood's in-classroom speech—not her out-of-classroom speech—because it interpreted the Court's preliminary injunction to be limited to that context. *Wood v. Fla. Dep't of Educ.*, 142 F.4th 1286, 1290 (11th Cir. 2025). In the operative complaint, however, both Plaintiffs challenged all applications of subsection 3 to them. Defendants do not deny that subsection 3 applies to all their speech on school campuses that might be heard by a student. Therefore, resolving the parties' cross-motions for summary judgment on Plaintiffs' First Amendment claims requires determining if the application of subsection 3 to out-of-classroom, non-instructional speech violates the First Amendment.

1

The Supreme Court has made clear that not all speech by teachers that students may witness is automatically government speech. For example, a football coach may pray on the field or in the stands after an on-campus football game, even though this expressive conduct may communicate to students that he is a Christian as clearly as if he had said so aloud. Defendants nonetheless maintain that they may bar Ms. Wood from wearing a "she/her" pin or saying "I'm Ms. Wood," not only in the classroom, but everywhere else at school—even while at a football game. Holding that the First Amendment protects her speech in these non-instructional contexts would be consistent with the Eleventh Circuit's ruling. Plaintiffs therefore respect-fully request that the Court grant summary judgment on their First Amendment claims as to their non-instructional speech about their titles and pronouns and deny Defendants' cross-motions to the same extent.

## I.      Plaintiffs challenged the application of subsection 3 to out-of-classroom speech.

While Plaintiffs have previously acknowledged that they focused their argu-ment in this case on in-classroom speech, they did so simply because that is where Plaintiffs do the majority of their speaking to students. But their complaint addressed out-of-classroom speech as well. *See* § 1A, *infra*. This cannot come as a surprise to Defendants, who have advanced lines of argument that make sense only if they un-derstood Plaintiffs' claims to go beyond the classroom. *See* § 1B, *infra*. They spe-cifically questioned both Plaintiffs about the topic in their depositions. *Id.* Finally,

the uncontroverted summary judgment record shows that Plaintiffs do in fact use their titles and pronouns in situations on campus where they are otherwise free to engage in personal activities. *See* § 1C, *infra*.

### A. Plaintiffs' claims go beyond the classroom.

As Plaintiffs' Second Amended Complaint explained, subsection 3 states that "[a]n employee or contractor of a public K-12 educational institution may not provide to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex." Fla. Stat. § 1000.71(3). This law applies "to the actions of an employee or contractor acting within the scope of their employment duties with the public K-12 educational institution." Fla. Stat. § 1000.71(6). By its terms, its application is not restricted to the classroom. Defendants' own Rule 30(b)(6) witnesses agreed. Doc. 156-2 at 136:6-15 (State Defendants' witness, Senior Chancellor of the Florida Department of Education, testifying that subsection 3 "would apply wherever a teacher is" and that "[y]ou cannot provide that [pronoun] to students" when asked if subsection 3 applies outside the classroom); *id.* at 112:17-23 (State Defendants' witness, when asked directly whether prohibitions apply inside and outside of the classroom, response "[w]e do govern, again, what teachers say. That may be outside of the classroom."); Doc. 156-19 at 102:16-103:3 (Hillsborough policy incorporating subsection 3 applies "to all times that an instructional staff member is serving as an instructional

staff member in their employment" including "out of the classroom"); Doc. 196-1 at 26:2-29:10[1] (same).

Plaintiffs' Second Amended Complaint therefore sought to "enjoin [each] Defendant … from enforcing subsection 3" in all its applications—not just the classroom. Doc. No. 94 ¶¶ 216(C), 228(C), 240(C). The Second Amended Complaint also includes allegations that make clear that Plaintiffs' claims are not limited to in-classroom speech. Ms. Wood and Ms. Doe each alleged that they "had and ha[ve] free speech rights while at work, *including*, in the classroom and during work hours." *Id.* ¶¶ 208, 219, 231 (emphasis added). In addition, each Plaintiff alleged that her school had told her that she "may not tell anyone who misgenders her at work … that her title is Ms. and that her pronouns are she/her[.]" *Id.* ¶¶ 107, 121. These allegations sufficed to put Defendants on notice that Plaintiffs challenged application of subsection 3 applied to all their speech at work, not just speech in the classroom.[2]

---

[1] This deposition was not part of the summary judgment record because it was taken after the close of fact discovery after Plaintiffs successfully moved to compel Lee County School Board to provide a properly prepared witness on certain topics. Docs. 172, 173.

[2] If the Court concludes this was not adequately alleged in the Second Amended Complaint, the Court may constructively amend the complaint to conform with Plaintiffs' evidence of out-of-classroom use of their titles and pronouns. *See* Fed. R. Civ. 15(b)(2); *see also Affiliati Network, Inc. v. Wanamaker*, No. 1:16-CV-24097-UU, 2017 WL 8784851, at *6 (S.D. Fla. Aug. 22, 2017) ("at the summary judgment stage, courts may constructively amend the pleadings as to issues tried by the implied consent of the parties, even over the objection of another party, unless the objecting party can show that the introduction of evidence pertinent to issues not introduced in the pleadings would in some way prejudice his or her case.'" (quoting *Walton v. Jennings Cmty. Hosp., Inc.*, 875 F.2d 1317, 1320, n.2 (7th Cir. 1989))); *see also* Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1493 (3d ed. 1998) ("consent generally is found when evidence is

### B. Defendants have always understood the scope of Plaintiffs' claims.

The positions Defendants have taken in this case confirm the point. In their reply brief on appeal, for example, Defendants stated that "[t]he overwhelming weight of authority establishes that teachers speak as public employees when they are not only teaching the curriculum but also casually conversing with students at school" and that "a teacher's interactions *with* students *at* school," not in the classroom, "[are] part of that teacher's official duties[.]" Reply Br. of Appellants at 5-6, *Wood v. Florida*, No. 24-11239-D, 2024 WL 3925874 (11th Cir. Aug. 14, 2024) (emphasis added).

Prior briefing also establishes that Defendants understood Plaintiffs to be seeking the right to use their titles and pronouns outside the classroom. Plaintiffs' motion for a preliminary injunction argued that "subsection 3 … violates the First Amendment because it unconstitutionally restrains Ms. Wood's speech by requiring her to conceal or misrepresent who she is in all interactions with students inside and outside of school." Doc. 11 at 4. In response, Defendants clarified that subsection 3 does not apply outside of school because it applies only "in educational institutions," which would include areas of schools outside classrooms. Doc. 60 at 6 (quoting Fla. Admin. Code R. 6A-10.081(2)(a)14). Throughout this case, Defendants have

---

introduced without objection, or when the party opposing the motion to amend actually produced evidence bearing on the new issue or offered arguments directly contesting the issue").

5

maintained that such out-of-classroom, in-the-workplace speech is within Plaintiffs' job responsibilities. *See, e.g.*, Doc. 63-1 at 25 (arguing that all "[i]nteractions with students" and "[a] teacher's discussion with students" are within teachers' job duties); *id.* at 29 (arguing that teachers cannot "ignore pedagogical-based directives while inside the schoolhouse"). This understanding continued all the way to summary judgment, when Defendants argued that "teachers 'do not cease acting as teachers each time the bell rings[.]'" Doc. 148-1 at 32 (quoting *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 967-68 (9th Cir. 2011)).

Out-of-classroom applications of subsection 3 were also a recurring topic of discovery. Plaintiffs asked State Defendants to admit that "[a]side from Florida Statutes § 1000.071 (2023), Florida law does not explicitly specify the topics teachers may discuss with students in non-classroom settings such as hallways or lunchrooms." Doc. 196-2 at 27-28. Defendants did not object that this question was irrelevant. *Id.* Plaintiffs also asked Rule 30(b)(6) witnesses for both school districts about the topic without objection. Doc 156-19 at 47:12-48:3, 49:19-50:2, 55:6-10; Doc. 156-22 at 16:15-21, 17:4-10. Finally, State Defendants asked each Plaintiff in her deposition about out-of-classroom speech—something they would have had no reason to do if they believed Plaintiffs' claims were limited to in-classroom speech. Doc. 156-24 at 74:5-12, 76:16-77:14, 96:10-97:16; Doc. 156-8 at 101:4-16, 117:25-119:9.

### C.    Plaintiffs use their titles and pronouns outside the classroom.

Finally, the record shows that Plaintiffs do in fact use their title and pronouns in the workplace but outside the classroom. Ms. Wood declared:

> Outside the classroom I interact with students in the hallways, at lunch and at school activities. For example, I sometimes go to school sports games as a spectator to show my support for the school. If I meet a student there, I might introduce myself as Ms. Wood. I am also the club sponsor for the school Gender and Sexuality Alliance, and I share my title and pronouns in that context as well. I also tutor after school on campus and use my title and pronouns in that context as well.

Doc. 156-6 ¶ 6. She also declared that she wears a "she/her" pin on her lanyard every day, *id.* ¶ 4, something that would be visible whenever she was on campus. In response to Defendants' interrogatories, she wrote that she "uses her same title and pronouns outside of work, and *both inside and outside the classroom while at work.*" Doc. 156-27 at 11 (emphasis added).

Ms. Doe similarly declared:

> I use my Ms. title and she/her pronouns at all times when I am at my school, just as I do in the rest of my life. I use them outside the classroom when I talk to students in the hallway or lunchroom or when I meet with students in Prism, the youth group I advise. I also use them when I chaperone fieldtrips and when working on student theater productions.

Doc. 156-9 ¶ 7. She also discussed using her title and pronouns outside the classroom in response to Defendants' interrogatories. Doc. 196-3 at 2-3, 17.

7

II.     **Plaintiffs' out-of-classroom speech about their titles and pronouns is protected by the First Amendment.**

The Eleventh Circuit's decision in this case was explicitly limited to in-class-room speech. The Court explained:

> [W]e deal here with only a narrow swath of expression: Wood disputes the state's authority to prevent her from using her preferred honorific and pronouns—by verbally stating them, writing them on her whiteboard and syllabi, and wearing a "she/her" pin—when she (1) is interacting with students (2) in the classroom and (3) within the scope of her employment duties.

*Wood*, 142 F.4th at 1290. Its conclusions were based on its view that "[w]hen a public-school teacher addresses her students within the four walls of a classroom—whether orally or in writing—she is unquestionably acting 'pursuant to [her] official duties." *Id.* (internal citations omitted). Hence, it explicitly did not reach the question of whether Plaintiffs have a First Amendment right to use their titles and pronouns in other contexts. Nor did it address the interest-balancing step of the *Pickering/Garcetti* analysis.

    A.    **Plaintiffs' out-of-classroom, non-instructional speech is not part of their official job duties and hence they speak as private citizens in that context.**

Defendants' position that Plaintiffs' job duties extend to all times a teacher might be overheard by a student, and hence that their use of their titles and pronouns in all those contexts is government speech, is indistinguishable from the school district's position in *Kennedy*. There, the Court explained that "[i]t is not dispositive

that Coach Kennedy served as a role model and remained on duty after games," because "[t]o hold otherwise is to posit an 'excessively broad job descriptio[n]' by treating everything teachers and coaches say in the workplace as government speech subject to government control." *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 509 (2022). Indeed, Defendants' position appears to be that Plaintiffs would be prohibited from sharing their titles or pronouns or wearing a "she/her" pin on the 50-yard line of a football game or doing so in the stands after a game. But there is no basis for arguing that praying at the 50-yard line of a football game is private speech when the same person saying "I am Ms. Wood" in the very same place is not. Likewise, *Kennedy* rejected the view that "a school could fire … a Christian aide from praying quietly over her lunch in the cafeteria," an act that communicates information about the employee's religiosity to any student who witnesses it. *Id.* at 531. Yet Defendants argue they can fire Plaintiffs for communicating their titles and pronouns in the same context.

The Eleventh Circuit distinguished *Kennedy* on three grounds:

> *First*… when Kennedy 'uttered the three prayers that resulted in his suspension, he was not engaged in speech ordinarily within the scope of his duties as a coach.'

> *Second*, … when he prayed, Kennedy 'was not instructing players, discussing strategy, encouraging better on-field performance, or engaged in any other speech the District paid him to produce as a coach.'

9

> *Finally*… the 'timing and circumstances' of Kennedy's prayers confirmed that he offered them as a private citizen, rather than a government employee.

*Wood*, 142 F.4th at 1292-93 (quoting *Kennedy*, 597 U.S. at 529-30).

All of these factors point toward Plaintiffs' non-classroom speech being private. First, nothing in either Plaintiff's job description covers casual conversations with students in hallways, the lunchroom, or in the stands at a school sports game. *See* Docs. 196-4, 196-5. Plaintiffs explained that they wished to share their titles and pronouns with students outside of instructional time, such as in a casual conversation in the hallway or by wearing a "she/her" pin there. None of those non-classroom contexts involve activities that are within Plaintiffs' job descriptions, just as Coach Kennedy's job description did not require him to do anything specific after football games. Coach Kennedy "remained on duty after games," yet because his "actual job description left time for a private moment … [to] engage in any manner of secular activities," his speech in those times was private, regardless of a restriction his district sought to impose on it. *Kennedy*, 597 U.S. at 530-31. Likewise, Plaintiffs are present in schools and interact with students because of their jobs, but their job duties do not extend to providing specific instruction to students outside the classroom. For this reason, State Defendants' reliance in their summary judgment briefing, Doc. 148-1 at 33, on testimony from Plaintiffs that they are similarly operating in their capacity as teachers whenever they interact with students is unavailing. If that were

enough, Coach Kennedy, who was also interacting with students while "on the job," would have been unsuccessful on his First Amendment claim.

Second, Plaintiffs' speech in the hallways is likewise not speech teachers are paid to engage in. The Eleventh Circuit emphasized that "when a public-school teacher speaks 'in the course of performing [her] job'—*i.e.*, 'speaking to [her] class in [her] classroom during class hours,' ... she does so pursuant to her official duties[.]" *Wood*, 142 F.4th at 1291 (quoting *Johnson*, 658 F.3d at 967).[3] Out-of-classroom speech, in contrast, is speech that teachers are free to avoid entirely. Plaintiffs and other teachers could choose not to interact with students in the hallway, eat lunch in a public area, or attend school sports games. Hence, such speech is not the speech they are paid to engage in and thus is not government speech.

Finally, the "timing and circumstances" of Plaintiffs' speech also shows it is not within the scope of their employment. The Eleventh Circuit found this point

---

[3] *Johnson* held that "teachers *necessarily* act as teachers for purposes of a *Pickering* inquiry when at school or a school function, in the general presence of students, in a capacity one might reasonably view as official." 658 F.3d at 968 (9th Cir. 2011). But this decision was a primary basis of the Ninth Circuit's later holding that Coach Kennedy spoke as a government employee, not a private citizen, when he prayed—a conclusion the Supreme Court reversed. *See Kennedy v. Bremerton Sch. Dist.*, 869 F.3d 813, 824 (9th Cir. 2017) (affirming district court ruling that Kennedy was unlikely to succeed on the merits of his First Amendment Claim); *Kennedy v. Bremerton Sch. Dist.*, 991 F.3d 1004, 1015 (9th Cir. 2021) (affirming grant of summary judgment and relying on prior decision's government speech analysis), *rev'd*, 597 U.S. 507 (2022). Thus, the Eleventh Circuit's reliance on one aspect of *Johnson* cannot be read to require this court follow its conclusions about out-of-classroom speech and Defendants' heavy reliance on *Johnson* is misguided. Doc. 148-1 at 32-33.

critical to distinguishing *Kennedy*:

> [T]he Court emphasized that Kennedy said his prayers after the games had concluded, when (1) 'coaches were free to attend briefly to personal matters—everything from checking sports scores on their phones to greeting friends and family in the stands,' (2) other 'school employees were free to speak with a friend, call for a reservation at a restaurant, check email, or attend to other personal matters,' and (3) students were 'otherwise occupied' and 'engaged in other activities like singing the school fight song.'

*Id.* at 1293 (quoting *Kennedy*, 597 U.S. at 513, 514, 530). Similarly, Plaintiffs and other teachers may briefly check their phones, make personal calls, or talk to other teachers or students about non-work matters in the hallway, in the lunchroom, or in the stands at a football game. Like the students around Coach Kennedy when he prayed, students in these contexts are free to engage in other activities.

Section 1000.071(6)'s provision that "[t]he limitations of this section only apply to the actions of an employee or contractor acting within the scope of their employment duties with the public K-12 educational institution" does not render subsection 3 constitutional because Defendants concede that all it does is limit application of subsection 3 to school grounds. *See* § 1A, *infra.* It does not draw distinctions between the classroom, the lunchroom, and the football field. *Id.* Defendants cannot now disclaim the interpretation of this provision that they advanced previously in this litigation and that their own witnesses consistently adopted.

Defendants will likely, as they have before, raise the disingenuous fear that a

ruling in Plaintiffs' favor would leave schools powerless to forbid teachers from using racial slurs, wearing inappropriate clothing, or engaging in other unwanted behavior on school campuses but out of the classroom. This is wrong for two reasons. First, schools may presumably still adopt neutral rules for teacher conduct: the school district in *Kennedy* could presumably have banned teachers from engaging in any personal conduct on school grounds after games without a First Amendment issue—the problem arose because it was targeting specific conduct based on the message it sent. Here, likewise, a school could ban teachers from wearing jewelry on school campuses, but it may not target a "she/her" pin any more than it could ban only Stars of David or crosses; and it could ban teachers from talking to students outside the classroom at all but cannot ban them from mentioning their religion if other speech is allowed. Second, even if speech is private, the interest balancing prong of the *Pickering/Garcetti* test still allows prohibition of speech, even off-campus speech, if it disrupts the school environment.

> **B.    The remaining *Pickering/Garcetti* factors favor Plaintiffs equally or even more strongly out of the classroom than inside it.**

This Court has already explained why Plaintiffs' use of their titles and pronouns is speech on a matter of public concern. Doc. 82 at 33-39. This question has also already been briefed in the summary judgment context by both sides and those arguments are equally applicable inside and outside the classroom.

13

On the interest balancing prong, State Defendants previously advanced two arguments: that subsection 3 advances a policy interest in teaching a particular view of the relationship between sex and gender, and that it prevents disruption of classrooms due to student confusion. Doc. 148-1 at 37-42. Those arguments are incorrect for the reasons Plaintiffs have already explained. Doc. 158-1 at 29-32.[4] But they are also even weaker when applied to out-of-classroom speech than to in-classroom speech.

On the first interest, neither schools nor students expect teachers to teach subject matter outside the classroom and Defendants have pointed to no other curricular or policy interest Florida addresses through a regulation of teachers' out-of-classroom speech—teachers are not prohibited from ever using incorrect grammar in the hallway because it might conflict with English classes. Nor could Coach Kennedy be prohibited from praying despite the district's concern that prayer would interfere with its policy against advancing particular religious views. On the second purported interest, speech outside the classroom can hardly take up classroom teaching time or disrupt it.

## III.    Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary judgment on their First Amendment claim as to out-of-classroom speech

---

[4] Lee County School Board advanced similar arguments. Doc. 154 at 15-18.

14

and deny Defendants summary judgment motion to the same extent.

Respectfully submitted.

Date: September 25, 2025

/s/ Sam Boyd

Sam Boyd, Fla. Bar No. 1012141
Carli Raben, Fla. Bar No. 1036013
SOUTHERN POVERTY LAW CENTER
2 S. Biscayne Blvd. Ste. 3750
Miami, FL 33131
(786) 347-2056
(786) 237-2949 (fax)
sam.boyd@splcenter.org
carli.raben@splcenter.org

Aaron S. Fleisher[*][†]
SOUTHERN POVERTY LAW CENTER
1101 17th St NW Ste. 705
Washington, DC 20036
(202) 536-9719
(202) 971-9205 (fax)
aaron.fleisher@splcenter.org
[†] *Not admitted to practice law in DC*

Diego A. Soto[*]
Jessica L. Stone[*]
SOUTHERN POVERTY LAW CENTER
150 E. Ponce De Leon Ave. Ste. 340
Decatur, GA 30030
(404) 521-6700
(404) 377-0708 (fax)
diego.soto@splcenter.org
jessica.stone@splcenter.org

Simone Chriss, Fla. Bar No. 124062
Jodi Siegel, Fla. Bar No. 511617
SOUTHERN LEGAL COUNSEL, INC.
1229 NW 12th Ave.
Gainesville, FL 32601
(352) 271-8890
(352) 271-8347 (fax)
simone.chriss@southernlegal.org
jodi.siegel@southernlegal.org

James M. Finberg[*]
James Baltzer[*]
Jonathan Rosenthal[*]
ALTSHULER BERZON LLP
177 Post St., Ste. 300
San Francisco, CA 94108
(415) 421-7151
jfinberg@altshulerberzon.com
jbaltzer@altshulerberzon.com
jrosenthal@altshulerberzon.com

*Counsel for Plaintiffs*

[*] *Admitted* pro hac vice

16

## CERTIFICATE OF WORD COUNT

I certify that this document contains 3,569 words, inclusive of headings, foot-

notes, and quotations, according to the word-processing system used to prepare it.

September 25, 2025                                    */s/ Sam Boyd*
                                                     Sam Boyd